Jade Riley Burch
Plaintiff, Pro Se
222 Karen Avenue, Unit 1207
Las Vegas, NV 89109
Tel: (614) 725-9452
Email: jaderburch@gmail.com

FILED ENTERED RECEIVED SERVED ON COUNSEL/PARTIES OF RECORD
NOV 13 2025
CLERK US DISTRICT COURT DISTRICT OF NEVADA
BY: DEPUTY

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

**Jade Riley Burch,**

Plaintiff, Pro Se,

vs.

**Navy Federal Credit Union; Speedy Recovery, Inc.; and Does 1–10,**

Defendants.

**Case No.:** 2:25-cv-01897-MMD-DJA

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT SPEEDY RECOVERY, INC.**

## I. INTRODUCTION

**Procedural Posture:** This Motion addresses liability only as to Defendant Speedy Recovery, Inc. and does not seek judgment against Navy Federal Credit Union at this time.

Jurisdiction is proper under 28 U.S.C. § 1331 and § 1367 because Plaintiff's claims arise under federal law (ADA) and related Nevada statutes.

Speedy Recovery, Inc. admits it took possession of Plaintiff's 2021 Tesla Model 3 on June 18, 2025, while the vehicle was parked in a marked accessible parking space displaying a disability placard. Speedy further admits it transported the vehicle to its facility, handled Plaintiff's

personal property by placing it in "blue bags," and received Plaintiff's June 20, 2025 certified letter demanding release and preservation of evidence.

Under Fed. R. Civ. P. 8(b)(6), any fact admitted in an Answer is conclusively established. Speedy is bound by these judicial admissions, which establish the facts necessary for liability. The Court need not look beyond Speedy's own admissions to resolve this Motion.

These undisputed facts establish liability on Count IV (Wrongful Repossession/Conversion), Count V (Trespass to Chattels), Count VI (Negligence), and for violations of NRS 104.9610. Plaintiff seeks a finding of liability only. Damages will be determined at a later stage.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. Plaintiff's Disability Status and ADA Notice

1. Plaintiff is a qualified individual with disabilities, including seizure disorder and mobility impairment. (Ex. A, Burch Decl.; Compl. ¶ 14, ¶ 69.)
2. On June 18, 2025, Plaintiff's Tesla Model 3 was parked in a designated accessible parking space displaying a valid disability placard. (Speedy Answer ¶ 26 (admitted); Compl. ¶ 26; Ex. E (placard photo).)
3. The disability placard was visible in the vehicle's window at the time of repossession, providing actual notice to Speedy of Plaintiff's protected disability status. (Speedy Answer ¶ 26 (admits accessible space and placard); Compl. ¶ 70.)

### B. The June 18, 2025 Repossession

1. On June 18, 2025, Speedy Recovery took possession of Plaintiff's 2021 Tesla Model 3 AWD (VIN ending 9112). (Speedy Answer ¶ 27 (admitted); Compl. ¶ 27.)
2. Speedy transported the vehicle to its storage facility at 4517 Vandenberg Drive, North Las Vegas, Nevada 89081. (Speedy Answer ¶ 27 (admitted).)
3. The repossession occurred in 106°F heat. (Compl. ¶ 29; Ex. F (National Weather Service report); Speedy Answer ¶ 29 (admits temperature was "high").)
4. Speedy admits "weather conditions in Las Vegas, Nevada, can be hot during the month of June." (Speedy Answer ¶ 50 (admitted).)
5. Plaintiff's caretaker, Porscha Ryan, who is also Plaintiff's designated Medical Power of Attorney, was present when Plaintiff discovered the vehicle was gone and personally witnessed the resulting medical emergency. (Ryan Decl. § I ¶ 2; § III ¶¶ 1-5.)

### C. Handling of Personal Property

1. At the time of repossession, Speedy does not dispute that personal items were present in the vehicle and were located within the vehicle when transported to Speedy's facility. (Speedy Answer ¶ 28 (admits "certain personal items were present"); ¶ 61 (admits "certain personal items were located within the vehicle").)
2. Speedy admits that "consistent with its standard safety and security policies applicable to all customers, individuals are not permitted direct access to repossessed vehicles." (Speedy Answer ¶ 36 (admitted).)

3. Speedy admits that "in accordance with its standard procedures, an owner's personal property is collected from repossessed vehicles, placed in blue bags for identification and safekeeping, and made available for the owner's retrieval." (Speedy Answer ¶ 36 (admitted).)

4. Speedy has produced no itemized inventory, photographs of personal property, or written notice of property disposition as required by NRS 104.9610(2) and UCC § 9-610(b) (secured party must proceed in a commercially reasonable manner in all aspects of repossession and disposition). (Ex. B (Speedy Answer admissions); Ex. D (relevant Answer excerpts showing lack of documentation).)

**D. Notice and Preservation Obligations**

1. Speedy received correspondence from Plaintiff on or about June 20, 2025, which included a monetary settlement demand and "threatened litigation language." (Speedy Answer ¶¶ 40, 40A, 117 (admitted).)

2. Speedy admits it "did not issue a written response to that correspondence." (Speedy Answer, Pre-Suit Compliance paragraph (admitted).)

3. Despite receiving litigation notice, Speedy has provided no evidence of preserving photographs, inventory records, or documentation of the vehicle's condition. (Ex. B (Speedy Answer); Ex. D (relevant Answer excerpts).)

**E. Speedy's Contradictory Positions Regarding Litigation Notice**

1. Speedy admits receiving Plaintiff's June 20, 2025 correspondence containing "threatened litigation language." (Speedy Answer ¶ 40A (admitted).)
2. Yet Speedy denies receiving "any formal litigation-hold letter or other correspondence from Plaintiff imposing preservation obligations." (Speedy Answer ¶¶ 40, 109, 117.)
3. Speedy's contradictory positions are not a factual dispute. They constitute an admission of preservation-triggering notice coupled with a denial of the legal duty that notice creates. The legal significance of this contradiction is addressed in Section IV.C below.

**F. Medical Equipment and Property Loss**

1. Plaintiff's complaint specifically alleges life-sustaining medical equipment was in the vehicle: inhaler, EpiPen, Ativan, Humalog insulin pen, and prescription medications. (Compl. ¶¶ 28, 36, 61.)
2. Speedy "denies that any prescription medications or medical equipment were observed in or removed from the vehicle" (Speedy Answer ¶ 28), yet admits "certain personal items were present in the vehicle" (Speedy Answer ¶ 28) and that it places such items "in blue bags" (Speedy Answer ¶ 36).
3. Speedy's claim that it observed no medical equipment is contradicted by three facts: (a) its admission that items were present and bagged; (b) its denial of vehicle access to Plaintiff (Speedy Answer ¶ 36 (admitted)); and (c) its failure to produce any inventory, photographs, or documentation of what was actually observed and collected. The legal significance of these contradictions is addressed in Section IV.B below.

### G. Failure to Comply with NRS 104.9610 Reasonable Care Requirements

1. Speedy admits the vehicle was "stored outdoors at its secured storage facility consistent with its standard company policy." (Speedy Answer ¶ 50 (admitted).)
2. Speedy admits "weather conditions in Las Vegas, Nevada, can be hot during the month of June." (Speedy Answer ¶ 50 (admitted).)
3. The actual temperature on June 18, 2025 was 106°F. (Ex. F (National Weather Service report); Speedy Answer ¶ 29 (admits temperature was "high").)
4. Tesla's Owner's Manual warns against extreme temperatures and requires specific handling protocols for electric vehicles. (Compl. ¶ 31; Ex. G.)
5. Despite these known requirements for high-value electric vehicles, Speedy has produced no evidence of: (a) temperature-controlled storage; (b) battery maintenance protocols; (c) compliance with Tesla's handling requirements; or (d) any specialized care for this electric vehicle versus an ordinary gas-powered car. (Ex. B (Speedy Answer admits only outdoor storage); Ex. D.)
6. When Plaintiff retrieved her belongings, the bags containing her medications were physically hot to the touch, confirming prolonged heat exposure. (Ryan Decl. § VI ¶ 2.)

## III. LEGAL STANDARD

Under Fed. R. Civ. P. 56(a), summary judgment shall be granted if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Once the moving party shows the absence of a genuine issue, the burden shifts to the non-movant to produce admissible evidence creating one. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A defendant must produce competent evidence, not attorney argument, to create a genuine dispute. Speedy has produced none. Speedy's Answer contains admissions, not evidence. Attorney denials do not create a genuine dispute of material fact under Rule 56.

## IV. ARGUMENT

### A. Speedy Had Actual Notice of Plaintiff's Disability Yet Proceeded With the Repossession

By admitting the vehicle was parked in an accessible space and displayed a disability placard (Speedy Answer ¶ 26), Speedy concedes it had constructive and actual notice of Plaintiff's protected status. The placard was visible. The parking space was marked. Speedy proceeded anyway.

Repossession under those conditions, without inquiry or accommodation, demonstrates more than mere negligence. It demonstrates conscious disregard for disability rights and supports liability under the ADA and Nevada's vulnerable-person statute, NRS 41.1395. A reasonable repossession agent, upon seeing a disability placard in an accessible parking space, would at minimum pause to consider whether the owner required the vehicle for medical transportation or whether medical equipment might be inside.

Speedy made no such inquiry. This omission, when combined with the subsequent mishandling of Plaintiff's property and the extreme heat exposure, establishes a pattern of conduct showing deliberate indifference to the rights and safety of a visibly disabled person.

Plaintiff does not seek summary judgment on her ADA claim in this Motion; the disability-related facts are presented here to establish notice, commercial unreasonableness, and the applicability of enhanced remedies under Nevada law.

**B. Speedy Failed to Exercise Reasonable Care Over Plaintiff's Property**

Speedy admits it handled Plaintiff's belongings by placing them into "blue bags" (Speedy Answer ¶ 36). Yet it has provided no itemized list, no photographs, and no written notice in violation of both NRS 104.9610(2) and basic industry standards requiring commercially reasonable care of collateral and personal property.

More troubling are Speedy's contradictory positions regarding medical equipment. Speedy denies observing any medical equipment (Speedy Answer ¶ 28), yet admits personal items were present (Speedy Answer ¶ 28), admits it collected those items and placed them in bags, and admits it denied Plaintiff access to verify what was collected (Speedy Answer ¶ 36).

This creates an impossible situation: Speedy claims it saw no medical equipment, yet prevented Plaintiff from verifying that claim and produced no documentation to support it. A party that (a) admits collecting items, (b) refuses owner access, and (c) creates no inventory has manufactured its own adverse inference.

The physical evidence confirms what the admissions suggest: when Plaintiff retrieved her property, the bags were hot to the touch (Ryan Decl. § V ¶ 7), proving Speedy stored items—including temperature-sensitive medications—in conditions that would destroy them. Whether

Speedy "observed" medical equipment is irrelevant if it collected bags of items, stored them in extreme heat, and created no record of what it took.

Under NRS 104.9610, a secured party must proceed in a "commercially reasonable manner" in all aspects of disposition. Speedy, acting on behalf of the secured party, is bound by the same commercial reasonableness obligations in handling collateral and personal property. Throwing property into bags without documentation, storing it in 106°F heat, denying the owner access, and then claiming ignorance of what was collected is not commercially reasonable. It constitutes conversion and negligence under Nevada law.

### C. Speedy Ignored Written Notice and Failed to Preserve Evidence

Speedy's contradictory admissions regarding preservation duties are legally dispositive. Speedy admits receiving Plaintiff's June 20, 2025 correspondence containing "threatened litigation language" (Speedy Answer ¶ 40A), yet denies receiving any notice "imposing preservation obligations" (Speedy Answer ¶¶ 40, 109, 117).

This is a distinction without a difference. Under *Silvestri v. General Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001), the duty to preserve arises when litigation is reasonably foreseeable. Correspondence threatening litigation makes litigation reasonably foreseeable as a matter of law. Speedy cannot simultaneously admit receiving litigation threats and deny that preservation duties were triggered.

Speedy's failure to preserve any evidence—no photographs of the vehicle's condition, no inventory of collected property, no documentation of storage conditions—supports summary

judgment on liability and demonstrates conscious disregard for its legal obligations. A party that receives written notice of threatened litigation and then fails to preserve basic evidence has made a deliberate choice not to comply with known legal duties.

This spoliation is particularly egregious given that Speedy admits it has "standard procedures" for collecting property (Speedy Answer ¶ 36). If Speedy has procedures, why was no inventory created? If Speedy collected items in bags, why are there no photographs? The only reasonable inference is that Speedy chose not to document its handling of Plaintiff's property because documentation would have revealed conduct Speedy preferred to conceal.

**D. No Genuine Dispute Exists**

Speedy's Answer contains only conclusory denials and boilerplate defenses unsupported by evidence. Under *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986), a party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Bare denials cannot defeat summary judgment when the movant has established the absence of genuine disputes through the opponent's own admissions.

Speedy has admitted every fact necessary to establish liability:

- It saw the disability placard and accessible parking space (Speedy Answer ¶ 26)
- It took possession and control of the vehicle and contents (Speedy Answer ¶¶ 27, 28)
- It collected personal property and placed it in bags (Speedy Answer ¶ 36)
- It stored the vehicle outdoors in admittedly hot weather (Speedy Answer ¶ 50)
- It denied Plaintiff access to verify what was collected (Speedy Answer ¶ 36)

- It received written notice threatening litigation (Speedy Answer ¶ 40A)
- It created no inventory, no photographs, and no documentation (Ex. D)

These admissions establish the elements of conversion (unauthorized exercise of dominion and control over another's property), trespass to chattels (intentional interference with Plaintiff's possessory interest), negligence (breach of duty of reasonable care), and violation of NRS 104.9610 (failure to proceed in a commercially reasonable manner).

Speedy's conclusory denials—particularly its claim that it observed no medical equipment while simultaneously admitting it denied Plaintiff access and created no documentation—do not create a genuine factual dispute. They create an admission of conduct that any reasonable jury would find constitutes conversion and negligence.

## V. THE UNDISPUTED FACTS SUPPORT ENHANCED REMEDIES

While Plaintiff does not seek a determination of punitive damages at this stage, the undisputed record establishes conduct that would satisfy Nevada's standard for enhanced remedies under NRS 42.005 and NRS 41.1395.

Under NRS 42.005, punitive damages require clear and convincing evidence of oppression, fraud, or malice. The undisputed facts, established through Speedy's own admissions, demonstrate conduct that rises to this level. Plaintiff qualifies as a "vulnerable person" under NRS 41.1395 because of her documented seizure disorder and mobility impairment, which make her dependent on the vehicle and associated medical equipment for basic safety and functioning.

**Evidence Supporting Enhanced Remedies:**

Speedy admits it (1) saw the disability placard displayed in an accessible parking space but proceeded with repossession anyway (Speedy Answer ¶ 26), targeting a visibly disabled person; (2) stored temperature-sensitive medications belonging to a disabled person outdoors in admittedly "hot" weather (Speedy Answer ¶ 50), knowing from the placard that medical needs were involved; (3) denied Plaintiff access to retrieve her own property (Speedy Answer ¶ 36), preventing mitigation of harm; (4) created no documentation despite collecting personal property in bags (Speedy Answer ¶ 36), showing deliberate indifference to property rights; and (5) received written notice threatening litigation yet failed to preserve any evidence (Speedy Answer ¶¶ 40A vs. 109), demonstrating consciousness of wrongdoing.

The physical evidence corroborates this conduct: medications were returned in bags that were physically hot to the touch (Ryan Decl. § VI ¶ 2), proving Speedy stored medical equipment in conditions it knew would cause destruction. This is not negligence. It is despicable conduct with conscious disregard for a disabled person's health and safety.

Speedy's contradictory Answer responses reveal conscious disregard. A party that admits receiving "threatened litigation language" (Speedy Answer ¶ 40A) yet denies preservation obligations (Speedy Answer ¶ 109) is deliberately choosing not to preserve evidence. A party that admits collecting property in bags (Speedy Answer ¶ 36) yet produces no inventory, no photographs, and no documentation is deliberately concealing its handling of another's property. These are not inadvertent errors; they are choices demonstrating conscious disregard for Plaintiff's rights and for Speedy's statutory obligations.

For purposes of later proceedings, the Court should find that this conduct satisfies the oppression standard under NRS 42.005. No Nevada jury could hear these admissions and conclude this conduct was merely careless. Additionally, the mandatory doubling provision of NRS 41.1395 applies to Plaintiff's compensatory damages as a matter of law, given Plaintiff's status as a vulnerable person and Speedy's exploitation through the conduct described above.

While the amount of any enhanced damages is appropriately reserved for the damages phase, a finding at summary judgment that Speedy's admitted conduct constitutes oppression and exploitation will facilitate efficient resolution of this case and provide clarity for damages proceedings.

## VI. CONCLUSION

Speedy's own Answer eliminates any material dispute. The Court is not required to manufacture factual issues where the defendant has admitted away its defenses.

Because the undisputed record establishes that Speedy Recovery, Inc. (1) had actual notice of Plaintiff's disability; (2) took possession and control of the vehicle and its contents; (3) failed to itemize, protect, or return personal property; and (4) ignored certified written notice to preserve evidence, no material fact remains for trial, and Speedy's admissions entitle Plaintiff to judgment as a matter of law on liability.

Accordingly, Plaintiff respectfully requests the Court grant Partial Summary Judgment finding Speedy Recovery, Inc. liable for conversion, negligence, and violation of NRS 104.9610, reserving damages for later determination.

Pursuant to Fed. R. Civ. P. 56(g), Plaintiff respectfully requests that all facts admitted in Defendant Speedy Recovery, Inc.'s Answer and not genuinely disputed be treated as established in this case for all purposes, including any trial or further proceedings.

DATED: November 13, 2025

Respectfully submitted,

/s/ Jade Riley Burch
Jade Riley Burch, Plaintiff, Pro Se

## Certificate of Service

I hereby certify that on **November 12, 2025**, I **hand-delivered** the foregoing document to the **Clerk of Court, United States District Court, District of Nevada**, for filing. Upon docketing, the CM/ECF system will automatically serve all counsel of record

/s/ Jade Riley Burch
Jade Riley Burch, Plaintiff, Pro Se

**Suggested Exhibits**

| Exhibit | Description |
|---|---|
| A | Declaration of Jade Riley Burch |
| B | Speedy Answer (¶ 26, 27, 28, 36, 40, 40A, 50, 109, 117 highlighted) |
| C | June 20, 2025 Letter + Certified-Mail Proof |
| D | Speedy Answer excerpts (showing admissions of no inventory, no photographs, no documentation created) |
| E | ADA placard photo |
| F | National Weather Service Report (June 18, 2025, Las Vegas – 106°F) |
| G | Tesla Owner's Manual excerpts (temperature and storage requirements) |
| H | Declaration of Porscha Ryan (Medical Power of Attorney) |

**EXHIBIT A**

**Burch v. Navy Federal Credit Union and Speedy Recovery, Inc.**

**Case No. 2:25-cv-01897-MMD-DJA**

---

**Exhibit Title:**

**Declaration of Jade Riley Burch**

---

**Submitted By:**

**Jade Riley Burch**
Plaintiff, Pro Se
222 Karen Avenue, Unit 1207
Las Vegas, Nevada 89109
Phone: (614) 725-9452
Email: jaderburch@gmail.com

---

**Filed In Support Of:**

*PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT SPEEDY RECOVERY, INC.*

---

**Date Submitted: 11/13/2025**

Jade Riley Burch
Plaintiff, Pro Se
222 Karen Avenue, Unit 1207
Las Vegas, NV 89109
Tel: (614) 725-9452
Email: jaderburch@gmail.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| **Jade Riley Burch,**<br><br>Plaintiff, Pro Se,<br><br>vs.<br><br>**Navy Federal Credit Union; Speedy Recovery, Inc.; and Does 1–10,**<br><br>Defendants. | **Case No.:** 2:25-cv-01897-MMD-DJA<br><br>**DECLARATION OF JADE RILEY BURCH IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>. |

I, Jade Riley Burch, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct based on my personal knowledge:

## I. BACKGROUND AND QUALIFICATIONS

1. My name is Jade Riley Burch. I am over the age of 18, competent to make this declaration, and the Plaintiff in this action.
2. I am the owner of the 2021 Tesla Model 3 AWD (VIN ending in 9112) that is the subject of this lawsuit.
3. I reside at 222 Karen Avenue, Unit 1207, Las Vegas, Nevada 89109.

## II. MY DISABILITIES AND NEED FOR ACCESSIBLE PARKING

1. I am a person with multiple documented disabilities, both physical and mental.
2. I have a seizure disorder that substantially limits major life activities including walking, driving, caring for myself, and regulating bodily functions. My seizures can be triggered by extreme stress, heat exposure, and lack of access to my anti-seizure medication. At the time of the June 2025 repossession, I was experiencing frequent seizures. On June 16, 2025, two days before the repossession, I experienced multiple seizures and went to the emergency room for seizure management. I was discharged without seizure treatment despite continuing symptoms and had a total of approximately nine seizures that day.
3. I have mobility impairments that limit my ability to walk long distances and navigate parking areas.
4. I have severe hypertension (high blood pressure) that requires daily medication management. Missing my blood pressure medication can cause hypertensive crisis, which is life-threatening.
5. I also have Type 2 diabetes requiring insulin management with temperature-controlled storage. I was diagnosed with Type 2 diabetes in August 2024 and prescribed Humalog insulin on a sliding scale, which I needed frequently. By June 2025, my diabetes was uncontrolled and I had been hospitalized multiple times for diabetic emergencies. Losing access to my insulin during the June 2025 repossession was extremely dangerous given how unstable my blood sugar was at that time.
6. In addition to these chronic conditions, in June 2025 I was recovering from major surgery performed in April 2025. I suffered a pulmonary embolism (PE) as a complication of that

surgery. I was on prescription blood thinners as part of my post-surgical recovery from the PE. Fortunately, those blood thinners were at home and not in the vehicle at the time of the repossession. However, I was still in a vulnerable medical state, only two months post-PE, when this repossession occurred.

7. Due to these qualifying disabilities, I possess a valid Nevada disability parking placard issued by the Department of Motor Vehicles. This placard certifies that I meet the legal requirements for accessible parking under NRS 482.384.

8. I have used accessible parking spaces since receiving my disability placard, and I always display it prominently when parking in reserved accessible spaces.

9. My disabilities are permanent and substantially limit multiple major life activities. I am not able to walk long distances, and I require immediate access to my vehicle for medical equipment and climate-controlled medication storage. In June 2025, I was also recovering from major surgery and had significant mobility limitations due to post-surgical healing.

## III. MEDICAL NECESSITY OF TESLA CLIMATE-CONTROLLED STORAGE

1. My 2021 Tesla Model 3 is not just transportation—it functions as a portable, climate-controlled medical equipment storage unit.

2. Tesla vehicles have a feature called "Keep Climate On" that maintains the cabin at a set temperature even when the vehicle is parked and turned off. I can monitor and control the temperature remotely through my Tesla phone app.

3. I keep my Humalog insulin pen in the Tesla because insulin must be stored below 86°F according to FDA guidelines. In Las Vegas summer heat, which regularly exceeds 105°F, insulin cannot safely be carried outside for extended periods without active cooling because heat can destroy its effectiveness very quickly. At the time of the repossession, my diabetes was uncontrolled and I depended on having immediate access to insulin to prevent life-threatening diabetic emergencies.
4. In addition to insulin, I keep the following life-sustaining medications and emergency equipment in my Tesla at all times: a. EpiPen auto-injector (2-pack) - for severe allergic reactions/anaphylaxis b. Prescription albuterol inhaler - for breathing emergencies c. Ativan (lorazepam) - anti-seizure medication and anxiety management d. Amlodipine - blood pressure medication for my severe hypertension e. Several other prescription medications for various medical conditions
5. All of these medications require temperature-controlled storage and lose effectiveness or become unsafe when exposed to extreme heat like Las Vegas summer temperatures.
6. I also kept two cases of ramen noodles in the trunk of my vehicle as an emergency carb-loading source in case of diabetic blood sugar crashes. When blood sugar drops dangerously low, I need immediate access to fast-acting carbohydrates to prevent seizures, loss of consciousness, or coma.
7. The Tesla's climate-controlled storage is medically necessary for me. Without it, I cannot safely store insulin in Las Vegas heat, and I cannot maintain immediate access to emergency medications given my mobility limitations.

## IV. EVENTS OF JUNE 18, 2025

### A. Parking in the Accessible Space

1. On June 18, 2025, I had a medical appointment near Downtown Summerlin in Las Vegas, Nevada.
2. My caretaker and Medical Power of Attorney, Porscha Ryan, accompanied me to this appointment.
3. I drove my 2021 Tesla Model 3 to the appointment.
4. After the appointment, Porscha and I stopped to get food at a nearby location in the Downtown Summerlin area.
5. I parked my Tesla in a clearly marked accessible parking space reserved for persons with disabilities. The space had:
    - The standard wheelchair symbol painted on the pavement
    - A blue sign on a pole indicating it was an accessible space
    - Clear markings showing it was reserved parking
6. Before leaving the vehicle, I displayed my valid disability placard by hanging it from the rearview mirror, where it was clearly visible through the front windshield.
7. The placard was the standard Nevada disability placard with the wheelchair symbol, blue and white in color.
8. I specifically remember making sure the placard was properly displayed because I always do this when using accessible parking—it is both legally required and ensures that anyone looking at my vehicle knows I am legally entitled to park there.

9. All of my medications and medical equipment were inside the vehicle when I parked, as they always are.

**B. Discovering the Vehicle Was Gone**

1. Porscha and I were away from the vehicle for approximately 45 minutes to one hour while we got food.
2. When we returned to the parking space where I had left my Tesla, the vehicle was gone.
3. At first, I was confused. I thought perhaps someone had reported me for parking in an accessible space, even though I was legally permitted to use it with my valid placard.
4. For a brief moment, I wondered if the car had been stolen.
5. I immediately pulled out my phone and opened my Tesla mobile app, which allows me to track my vehicle's location in real-time.
6. The app showed that my vehicle was moving—it was on the back of a tow truck heading toward North Las Vegas.
7. I could see the vehicle's location updating on the map as it moved. I watched it being transported in real-time through my phone.
8. That's when I realized my Tesla was being repossessed, not towed for a parking violation or stolen.
9. I showed the Tesla app to Porscha, and we both watched the vehicle's location as it was transported away.

**C. My Medical Emergency**

1. As soon as I realized my vehicle had been taken, I became extremely distressed.
2. I immediately thought about my medications inside the vehicle. I said out loud to Porscha: "My insulin is in there. My inhaler. My EpiPen. My Ativan."
3. I was in a state of panic. All of my life-sustaining medications were in the vehicle that had just been taken from me, and I had no immediate way to access them.
4. The temperature that day was over 105°F. According to National Weather Service records, it was 106°F in Las Vegas on June 18, 2025.
5. Standing outside in that extreme heat without access to my medications, I felt the heat becoming overwhelming.
6. Within approximately 20 to 30 minutes of discovering my vehicle was gone, I suffered a seizure.
7. Porscha witnessed this seizure and can confirm it occurred. She has seen my seizures before and knows how to recognize them.
8. I did not have my Ativan with me because it was in the vehicle that had just been taken. Ativan is my anti-seizure medication that helps prevent and manage seizures.
9. This seizure occurred in the middle of extreme stress from the repossession, 106°F heat, and loss of access to my anti-seizure medication, which are all known triggers for my seizures.
10. I required emergency intervention and assistance from Porscha during and after the seizure. She immediately administered oxygen to help me recover.

## V. RETRIEVAL OF PROPERTY FROM SPEEDY RECOVERY

### A. Going to Speedy Recovery's Facility

1. Several days after the June 18, 2025 repossession, I received some form of notice that I could retrieve my personal belongings from Speedy Recovery's facility located at 4517 Vandenberg Drive, North Las Vegas, Nevada 89081.
2. I went alone to Speedy Recovery's facility to retrieve my belongings. Porscha Ryan stayed home, but I called her on the phone while I was there.
3. When I arrived at Speedy Recovery's facility, I was not allowed to enter the secured lot where vehicles were stored.
4. A Speedy Recovery employee told me that it was "company policy" that vehicle owners could not go into the lot for "safety and security reasons."
5. I was required to wait outside the gate while an employee went into the lot to retrieve my belongings. While waiting, I was on the phone with Porscha telling her in real-time what was happening.
6. I asked if I could go into the lot myself to check my vehicle and make sure all of my property was collected. The employee said "No, customers aren't allowed in the lot, it's company policy."
7. I had no choice but to stand outside the gate in the hot sun and wait while someone else went through my vehicle and gathered my belongings. I continued talking to Porscha on the phone during this wait.

8. This denial of access meant I had no way to:
   - Verify what property was in the vehicle
   - Ensure all items were collected
   - Check the condition of my belongings
   - Supervise the handling of my medical equipment
   - Confirm nothing was missing or damaged

**B. The Hot Blue Bags**

1. After approximately 15 to 20 minutes of waiting outside the gate, the Speedy Recovery employee returned on a golf cart carrying several large blue trash bags. I believe there were three or four bags total.
2. When the employee handed the bags to me, I immediately noticed they were physically hot to the touch. Not warm. Hot. The plastic bags themselves were uncomfortably hot to hold, as if they had been sitting in direct sunlight in a hot vehicle for an extended period.
3. I was on the phone with Porscha during this time, and I told her in real-time that they would not let me into the lot and that I had to wait outside. When I got home and she touched the bags, she confirmed they were indeed very hot.
4. I knew instantly, from the temperature of those bags, that my medications had been destroyed by heat exposure. I drove home immediately to show Porscha.

**C. The Destroyed Medications**

1. When I got home, Porscha and I opened the blue bags to see what had been returned.
2. I personally removed the following items from the hot blue bags: a. Prescription albuterol inhaler (red and white canister) b. EpiPen auto-injector in its yellow plastic case (single, unused) c. Orange prescription bottle labeled "Ativan" with my name on the label d. Humalog insulin pen (blue and clear plastic, looks like a thick marker) e. Prescription bottle labeled "Amlodipine" (blood pressure medication) f. Several other prescription medication bottles with my name on the labels g. I did NOT find either of my two cases of ramen noodles. Both were missing and were never returned. h. My disability placard was in one of the trash bags
3. I was devastated. I looked at Porscha and said "These are all ruined. I can't use any of this. It's been sitting in the heat."
4. Based on my experience managing diabetes and seizure disorder, I know these medications must be kept below normal room temperatures to remain effective. Given the extreme heat of the bags and the outdoor storage conditions, I concluded they were unsafe to use and had no choice but to immediately dispose of all of them because using heat-damaged emergency medications could be fatal.
5. At home with Porscha, I threw all of the medications into a trash can.

**D. No Inventory or Documentation**

1. When the employee handed me the blue trash bags, there was absolutely no written inventory, no list, no receipt, no documentation of any kind describing what items were in the bags.
2. The blue trash bags had some writing or printing on them, though I do not recall what it said. Everything was just thrown into the bags without any care or organization.
3. I was not given any paperwork, forms, or written notice about:
    - What property had been collected from my vehicle
    - The condition of the property
    - What items were being returned
    - Whether anything was missing
4. Because I was denied access to the lot and my vehicle, I had no way to verify:
    - Whether all of my property had been collected
    - Whether anything was missing
    - What condition my belongings were in before they were placed in bags
    - How my property had been handled or stored
5. The complete lack of documentation meant I had no proof of what Speedy Recovery took from my vehicle, no record of what they returned, and no accountability for what happened to my property while in their custody.

## VI. THE VISIBLE DISABILITY PLACARD RETURNED IN THE BAGS

1. When I opened the trash bags at home with Porscha, I found my disability placard in one of the bags.
2. This means the Speedy Recovery employee who removed my belongings from the vehicle had to take the disability placard down from the rearview mirror where it was hanging.
3. The employee who collected my property could see and must have seen the disability placard displayed in the vehicle, and knew the vehicle belonged to a person with disabilities.
4. Yet the employee made no mention of the disability placard when handing me the bags, offered no apology for taking a vehicle from an accessible parking space, and provided no special accommodation or care despite the visible evidence that I have disabilities and medical needs.
5. The employee treated my property (including my life-sustaining medical equipment) with no more care than ordinary belongings, despite having to physically remove the disability placard from the rearview mirror while collecting my items.

## VII. MY JUNE 20, 2025 DEMAND LETTER

1. On June 20, 2025—just two days after the repossession—I sent Speedy Recovery a formal written letter via certified mail.
2. In that letter, I demanded:
    - Immediate release of my vehicle
    - Compensation for the damages and harm caused
    - Preservation of all evidence related to the repossession
3. The letter specifically informed Speedy Recovery that I was considering legal action and that litigation was likely.
4. I have proof of delivery showing that Speedy Recovery received this certified letter.
5. Speedy Recovery never responded to my June 20, 2025 letter.
6. They did not call me, email me, write back to me, or acknowledge my demands in any way.
7. They simply ignored my letter completely, as if I had never sent it.
8. Despite receiving written notice that I was demanding my property back and threatening litigation, Speedy Recovery took no action to:
    - Preserve evidence (photographs, inventory, vehicle condition)
    - Document what property they had taken from my vehicle
    - Respond to my demand for compensation
    - Return my vehicle or acknowledge my concerns

## VIII. IMPACT ON MY HEALTH AND LIFE

### A. Immediate Medical and Financial Impact

1. The June 18, 2025 repossession and the resulting seizure was a medical emergency for me.
2. I was forced to immediately replace all of my destroyed medications. The medications I had to replace included my EpiPen, Humalog insulin pen, prescription albuterol inhaler, Ativan, Amlodipine, and several other prescription medications.

### B. Ongoing Anxiety and Fear

1. Since June 18, 2025, I have experienced ongoing anxiety and distress related to this incident. I am now afraid to park in accessible spaces at public locations because I fear my vehicle will be taken again, which has limited my independence and mobility.
2. I no longer use my Tesla for climate-controlled medication storage. Instead, I now carry my insulin in a portable cooling device and carry a backpack with my medications everywhere I go. This makes safe storage more difficult in Las Vegas heat and exacerbates my mobility limitations.
3. I am hypervigilant about where I park, whether my placard is visible, and I constantly check my Tesla app to confirm my vehicle is still where I left it. I rush through appointments and errands to get back to my car faster.
4. Since June 18, 2025, I have had more frequent seizures, and the ongoing stress from the repossession and medication loss has made managing my seizures more difficult.

5. I feel violated by how Speedy Recovery handled my property, particularly the medical equipment I depend on to stay alive. The fact that they saw my disability placard, knew I had medical needs, and still chose to store my medications in outdoor heat conditions that destroyed them, and then handed them back to me in hot bags without any apology or acknowledgment, makes me feel that my disabilities and my life were treated as worthless.

**C. The Missing Ramen Noodles**

1. I kept two cases of ramen noodles in the trunk as emergency carbohydrate supplies for diabetic hypoglycemia: one unopened case and one partially used case.
2. When I opened the blue bags at home, neither case of ramen was present. Both were missing and have never been returned.
3. There was no written inventory, no receipt, and no documentation identifying what property was removed from my vehicle or what was returned to me, so I have no way to verify what happened to those items while they were in Speedy Recovery's custody.

## IX. WHY I AM BRINGING THIS LAWSUIT

1. I am bringing this lawsuit because Speedy Recovery took my vehicle from a clearly marked accessible space while my disability placard was displayed, took control of all my life-sustaining medications in 106°F heat, stored them in conditions that destroyed them, denied me access to my own vehicle and property, created no inventory or

documentation, ignored my written demand letter, and failed to return some of my property at all.

2. As a result, I suffered a seizure, lost access to vital medications, incurred significant costs to replace them, and continue to experience emotional distress.
3. I brought this lawsuit to hold Speedy Recovery accountable for these events and to prevent the same thing from happening to other people with disabilities.

## X. AUTHENTICITY OF EXHIBITS

1. I have reviewed the exhibits attached to my Motion for Partial Summary Judgment.
2. Exhibit A is this Declaration.
3. Exhibit B is Speedy Recovery's Answer to my Complaint. The highlighted paragraphs are the admissions I reference in my Motion.
4. Exhibit C is my June 20, 2025 demand letter to Speedy Recovery, along with proof of certified mail delivery.
5. Exhibit D consists of excerpts from Speedy Recovery's Answer showing their admissions that no inventory, photographs, or documentation of my property was created.
6. Exhibit E is a photograph of my valid ADA disability placard that was displayed in my vehicle on June 18, 2025.
7. Exhibit F is the National Weather Service report confirming the temperature in Las Vegas on June 18, 2025 was 106°F.
8. Exhibit G consists of excerpts from the Tesla Model 3 Owner's Manual regarding temperature and storage warnings for the vehicle and its systems.

9. Exhibit H is the Declaration of Porscha Ryan, my Medical Power of Attorney, corroborating the events of June 18, 2025 and the condition of returned property.
10. All of these exhibits are true and accurate representations of the documents and information they purport to show.

## XI. CONCLUSION

1. Everything stated in this Declaration is true and correct to the best of my knowledge, information, and belief.
2. I am willing and available to testify to these facts at trial if required.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 13, 2025, at Las Vegas, Nevada.



Jade Riley Burch Plaintiff, Pro Se
222 Karen Avenue, Unit 1207
Las Vegas, NV 89109
Tel: (614) 725-9452
Email: jaderburch@gmail.com

**EXHIBIT B**

**Burch v. Navy Federal Credit Union and Speedy Recovery, Inc.**

**Case No. 2:25-cv-01897-MMD-DJA**

---

**Exhibit Title:**

**Speedy Answer (¶ 26, 27, 28, 36, 40, 40A, 50, 109, 117 highlighted)**

---

**Submitted By:**

**Jade Riley Burch**
Plaintiff, Pro Se
222 Karen Avenue, Unit 1207
Las Vegas, Nevada 89109
Phone: (614) 725-9452
Email: jaderburch@gmail.com

---

**Filed In Support Of:**

*PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT SPEEDY RECOVERY, INC.*

---

**Date Submitted: 11/13/2025**

Zachary P. Takos, Esq., Nevada Bar No. 11293
**TAKOS LAW GROUP, LTD.**
1935 Village Center Circle
Las Vegas, Nevada 89134
Telephone: 702.658.1900
Facsimile: 702.924.4422
Email: zach@takoslaw.com

Patrick D. Newman, Esq., Minnesota Bar No. 395864
*Pro hac vice application forthcoming*
**BASSFORD REMELE, PA**
100 South Fifth Street, Suite 1500
Minneapolis, MN 55402
Telephone: 612.333.3000
Email: pnewman@bassford.com

***Counsel for Defendant Speedy Recovery, Inc.***

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JADE RILEY BURCH,

Plaintiff, Pro Se,

v.

NAVY FEDERAL CREDIT UNION; SPEEDY RECOVERY, INC.; and DOES 1-10;

Defendants.

Case No. 2:25-cv-01897-MMD-DJA

**DEFENDANT SPEEDY RECOVERY, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT AND JURY DEMAND**

Defendant Speedy Recovery Company, Inc. ("Speedy"), by and through its undersigned counsel, hereby files its Answer and Affirmative Defenses (the "Answer") to Plaintiff's complaint (the "Complaint"), and states and alleges as follows:

As a threshold matter, Speedy notes that many of Plaintiff's allegations are redundant and unnecessary (if not entirely irrelevant). Weighing in at **125** paragraphs, the sheer length of the Complaint has already made this matter more burdensome and costly for the defendants and the Court, in direct contravention of Rule 1 (mandating the "just, speedy, and inexpensive

determination of every action and proceeding" in the federal civil system), as well as Rule 8 (calling for a "short and plain statement of the claim" and "demand for the relief sought," pled in "simple, concise, and direct" fashion), of the Federal Rules of Civil Procedure.

Except as hereinafter admitted, qualified, or otherwise answered, Speedy denies each and every allegation against it contained in the Complaint. Speedy denies any and all liability to Plaintiff under Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") or any other statute, law, or theory in this matter. Speedy denies that Plaintiff is entitled to any of the relief sought herein from Speedy.

In response to **"Plaintiff's Pre-Suit Compliance and Defendants' Bad Faith"** paragraph, to the extent the allegations are directed at it, Speedy Recovery, Inc. admits only that, on or about June 20, 2025, it received correspondence from Plaintiff requesting release of her vehicle and including a monetary settlement demand, and that Speedy did not issue a written response to that correspondence.

Speedy denies that it received any formal litigation-hold letter or other correspondence from Plaintiff imposing preservation obligations, or that it received multiple emails or other communications as alleged. Speedy further denies that it disposed of the vehicle, failed to preserve evidence, concealed records, or acted in bad faith or disregard of any legal obligation.

The remaining allegations—including those concerning Navy Federal Credit Union's ("NFCU") receipt of correspondence, Plaintiff's alleged expert documentation, and assertions of good faith or legal compliance—are not directed at Speedy. To the extent a response is required, Speedy is without sufficient information or knowledge to admit or deny and therefore denies the same. To the extent the paragraph asserts legal conclusions, no response is required; to the extent a response is deemed necessary, Speedy denies those allegations as well.

## INTRODUCTION

**1.** In response to Paragraph 1 of Plaintiff's Complaint, to the extent the allegations are directed it, Speedy admits only that, on or about June 18, 2025, it repossessed a Tesla Model 3 pursuant to a lawful repossession order authorizing recovery of the vehicle in the State of Nevada. Speedy specifically denies that the repossession was unlawful or conducted in violation of any federal or state law. As to the remainder of the paragraph allegations, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

**2.** In response to Paragraph 2 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies that it repossessed Plaintiff's vehicle without lawful authorization, notice, or opportunity to cure, or that it violated any provision of NRS 104.9611 or any other statute. Speedy further denies that it seized or damages any personal or medical equipment belonging to Plaintiff, or that it mishandled, altered, or prepared the vehicle for sale in any unlawful manner. As to the remainder of the paragraph allegations, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same. As for the referenced exhibits, they speak for themselves, and Speedy denies any allegations or characterization inconsistent therewith.

**3.** In response to Paragraph 3 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same. To the extent the allegations are directed at it, Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to any damages or other relief in this action.

**4.** In response to Paragraph 4 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy specifically denies that it violated any provision of NRS 104.9610 - .9614 and 104.9626 or that any conduct by Speedy would bar or affect any alleged deficiency balance.

Speedy further denies that it is a secured creditor or that it has a right or authority to collect or enforce any alleged deficiencies following repossession. As to the remainder of the paragraph allegations, particularly those regarding the availability of declaratory relief, Speedy states that the allegations constitute legal conclusions, to which no response is required. To the extent a response is deemed required, Speedy denies.

5. In response to Paragraph 5 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies that it engaged in any credit reporting, billing, or post-repossession accounting activity or that it has any role in determining or collecting any alleged deficiency balance. Speedy further denies that any justiciable controversy exists between Plaintiff and Speedy under the Declaratory Judgment Act. As for the referenced case law and exhibit, they speak for themselves, and Speedy denies any allegations or characterization inconsistent therewith. As to the remainder of the paragraph allegations, particularly those concerning the availability of declaratory relief or alleged violations of NRS 104.9210, Speedy states that the allegations constitute legal conclusions to which no response is required. To the extent a response is deemed required, Speedy denies.

6. In response to Paragraph 6 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy states that it contains procedural statements to which no response is required. To the extent a response is deemed required, Speedy denies.

7. In response to Paragraph 7 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies any claim asserted against it is timely or that any statute of limitations has been tolled. Speedy further denies engaging in or contributing to any alleged concealment, false credit reporting, or related misconduct. As for the referenced case law, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith. As to the

remainder of the allegations including those concerning the applicability of tolling doctrines, Speedy states that the allegations constitute legal conclusions, to which no response is required.

## I. JURISDICTION AND VENUE

**8.** In response to Paragraph 8 of Plaintiff's Complaint, Speedy states the allegations constitute legal conclusions, to which no response is required.

**9.** In response to Paragraph 9 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies that any of Plaintiff's claims are properly stated against it or that any such claims implicate issues of federal preemption. As for the referenced case law, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith. As to the remainder of the paragraph allegations including those concerning preemption and statutory interpretation, Speedy states the allegations constitute legal conclusions, to which no response is required.

**10.** In response to Paragraph 10 of Plaintiff's Complaint, Speedy states the allegations constitute legal conclusions, to which no response is required.

**11.** In response to Paragraph 11 of Plaintiff's Complaint, Speedy states the allegations constitute legal conclusions, to which no response is required.

**12.** In response to Paragraph 12 of Plaintiff's Complaint, Speedy states the allegations constitute legal conclusions, to which no response is required.

**13.** In response to Paragraph 13 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy admits only that it is a Nevada corporation organized under the laws of the State of Nevada and that it conducts business within Nevada. Speedy is without sufficient information or knowledge to form a belief as to the truth of the allegations concerning NFCU's operations in Nevada and therefore denies those allegations. As to the remainder of the paragraph allegations, including

those asserting that this Court has personal jurisdiction over all defendants, Speedy states that they constitute legal conclusions, to which no response is required. To the extent a response is deemed required, Speedy denies that this court has personal jurisdiction over it on any basis other than its Nevada incorporation. Speedy further denies that it purposefully directed the repossession or any related conduct at Nevada in an unlawful or wrongful manner.

## II. PARTIES

**14.** In response to Paragraph 14 of Plaintiff's Complaint, Speedy is without sufficient information or knowledge to form a belief as to the truth of the allegations regarding Plaintiff's residence, any alleged medical condition, or the current title ownership of vehicle referenced in the Complaint, and therefore denies the same.

**15.** In response to Paragraph 15 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy admits that the collateral is a 2021 Tesla Model 3 AWD with a vehicle identification number ending in 9112.

**16.** In response to Paragraph 16 of Plaintiff's Complaint, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

**17.** In response to Paragraph 17 of Plaintiff's Complaint, Speedy admits only that it is a Nevada corporation organized under the law of the State of Nevada and that its business address is 4517 Vandenberg Drive, North Las Vegas, Nevada 89031. Speedy further admits only that it conducted a repossession of the vehicle identified in the Complaint pursuant to a lawful repossession assignment. As to Plaintiff's allegation that Speedy acted as NFCU's authorized agent, Speedy states that the allegation constitutes a legal conclusion to which no response is required. To the extent a response is deemed required, Speedy denies. As to the remainder of the paragraph allegations, including any assertion that its corporate form is unknown, Speedy denies.

**18.** In response to Paragraph 18 of Plaintiff's Complaint, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same. As for the referenced exhibit, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

**19.** In response to Paragraph 19 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy states that the paragraph consists primarily of legal conclusions regarding agency, control, and vicarious liability, to which no response is required. To the extent a response is deemed required, Speedy denies that it acted as an agent or ostensible agent of NFCU or any other defendant, or that any other entity controlled or directed the manner in which Speedy performed repossession services. As to the remainder of the paragraph allegations, Speedy denies.

**20.** In response to Paragraph 20 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy states that the paragraph consists primarily of legal conclusions regarding joint and several liability, jurisdiction, and alleged purposeful direction of activities, to which no response is required. To the extent a response is deemed required, Speedy denies that it engaged in any wrongful or unlawful conduct or that it purposefully directed activities at Nevada giving rise to Plaintiff's claims. As to the remainder of the paragraph allegations, Speedy denies.

## PLAINTIFF'S SUMMARY OF THE CASE

To the extent the Complaint contains unnumbered allegations or narrative statements under the heading "**Plaintiff's Summary of the Case**" that are directed at it, Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy expressly denies that it conducted the repossession in any unlawful or improper manner, denies that Plaintiff suffered any injury or damage as a result of Speedy's conduct, and denies that it caused any degradation or damage to the

vehicle or its components. Speedy further denies that Plaintiff is entitled to any damages or other relief in this action.

## III. FACTUAL BACKGROUND

**21.** In response to Paragraph 21 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy is without sufficient information to form a belief as to the truth of the allegations concerning any loan, promissory note, or security agreement between Plaintiff and NFCU and therefore denies them. Speedy was not a party to any such agreement and denies that it owed any duties or obligations arising thereunder. As for the referenced exhibits, they speak for themselves, and Speedy denies any allegations or characterization inconsistent therewith. As to the remainder of the paragraph allegations, including any interpretation of contractual provisions or duties, constitutes legal conclusions to which no response is required. To the extent a response is deemed required, Speedy denies.

**22.** In response to Paragraph 22 of Plaintiff's Complaint, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same. As for the referenced exhibits, they speak for themselves, and Speedy denies any allegations or characterization inconsistent therewith.

**23.** In response to Paragraph 23 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same. As for the referenced exhibit, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

**24.** In response to Paragraph 24 of Plaintiff's Complaint, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same. As for the referenced

Case 2:25-cv-01897-MMD-DJA Document 15 Filed 11/12/25 Page 9 of 38

case law, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

**25.** In response to Paragraph 25 of Plaintiff's Complaint, Speedy is without sufficient information or knowledge to form a belief as to the truth of the allegations concerning any contractual provisions between Plaintiff and NFCU and therefore denies them. Speedy was not a party to any such agreement and denies that it relied upon or enforced any provision thereof. As for the referenced case law, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith. As to the remainder of the paragraph allegations, including those asserting that any contractual provision is procedurally or substantively unconscionable or violates public policy, Speedy states that such allegations constitute legal conclusions to which no response is required. To the extent a response is deemed required, Speedy denies them.

**26.** In response to Paragraph 26 of Plaintiff's Complaint, to the extent the allegations are directed at it. Speedy admits only that at the time of the repossession on June 18, 2025, the Tesla referenced in the Complaint was parked in a designated accessible parking space and displayed a disability placard. As to the remainder of the paragraph allegations, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same. As for the referenced exhibit, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

**27.** In response to Paragraph 27 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy admits only that the Tesla vehicle referenced in the Complaint, was transported to Speedy's storage facility located at 4517 Vandenberg Drive, North Las Vegas, Nevada 89081. As to the remainder of the paragraph allegations, Speedy is without sufficient information or knowledge

to admit or deny the allegations and therefore denies the same. As for the referenced exhibit, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

**28.** In response to Paragraph 28 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies that it acted as an agent or authorized representative of NFCU and denies that it acted unlawfully or without proper authority in connection with the repossession of the vehicle. Speedy admits only that certain personal items were present in the vehicle at the time it was transported to Speedy's storage facility. Speedy denies that any prescription medications or medical equipment were observed in or removed from the vehicle. As to the remainder of the paragraph allegations, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same. As for the referenced exhibit, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

**29.** In response to Paragraph 29 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies that it acted unlawfully or disregarded any rights of Plaintiff under the Americans with Disabilities Act or otherwise. Speedy further denies that any conduct caused or contributed to any alleged medical condition, seizure, or other injury. Speedy admits only that, according to publicly available information, the temperature in Las Vegas, Nevada, on or about June 18, 2025, was high. As to the remainder of the paragraph allegations, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same. As for the referenced exhibits, they speak for themselves, and Speedy denies any allegations or characterization inconsistent therewith.

**30.** In response to Paragraph 30 of Plaintiff's Complaint, to the extent the allegation are directed at it, Speedy denies that it failed to engage Tow Mode, allowed the vehicle's battery to discharge, commissioned any replacement key fob, caused any damage to the vehicle, or engaged in any

misconduct. Speedy further denies that any conduct by it gives rise to liability, whether direct, joint, or otherwise. As to the remainder of the paragraph allegations, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same. As for the referenced exhibits, they speak for themselves, and Speedy denies any allegations or characterization inconsistent therewith.

In response to the unnumbered Paragraph entitled "**Why the Battery Damages Matters**," within Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies that it mishandled or improperly stored the vehicle, caused damage to the vehicle's battery or components, or ignored any warnings or instructions. Speedy further denies that it engaged in any conduct that could be characterized as negligent, reckless, or otherwise wrongful, and denies that Plaintiff is entitled to any damages or other relief in this action.

**31.** In response to Paragraph 31 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy is without sufficient information or knowledge to form a belief as to the truth of the allegations concerning the contents of any Tesla owner's manual and therefore denies them. Speedy further denies that it stored the vehicle in an improper manner, exposed it to extreme temperatures, or violated any duty of care under NRS 104.9207(1) or any contractual obligation owed by NFCU. As for the referenced exhibit, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith. As to the remainder of the paragraph allegations, including allegations purporting to interpret statutory or contractual duties, Speedy states that such allegations constitute legal conclusions to which no response is required. To the extent a response is deemed required, Speedy denies them.

**32.** In response to Paragraph 32 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies that it towed or handled the vehicle improperly, caused any battery

damage, commissioned any replacement key fob, or engaged in any conduct that caused foreseeable harm or damage to Plaintiff or the vehicle, and further denies that Plaintiff is entitled to any damages or other relief. Speedy is without sufficient information or knowledge to form a belief as to the truth of the allegations concerning any Tesla app logs, charging activities, or alleged disposition of the vehicle by NFCU, and therefore denies them. As to the remainder of the paragraph allegations, including allegations that any disposition was not commercially reasonable or violated NRS 104. 9610 or NRS 104.9611, Speedy states that such allegations constitute legal conclusions to which no response is required. To the extent a response is deemed required, Speedy denies them. As for the referenced exhibit, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

**33.** In response to Paragraph 33 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same. Speedy further denies that Plaintiff is entitled to any damages or other relief in this action. As for the referenced exhibit, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

**34.** In response to Paragraph 34 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same. Speedy further denies that Plaintiff is entitled to any damages or other relief in this action. As for the referenced exhibits, they speak for themselves, and Speedy denies any allegations or characterization inconsistent therewith.

**35.** In response to Paragraph 35 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy is without sufficient information or knowledge to admit or deny the allegations and

therefore denies the same. As for the referenced exhibit, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

**36.** In response to Paragraph 36 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies that it denied Plaintiff access to her vehicle, mishandled Plaintiff's belongings, or returned any medical equipment. Speedy admits only that, consistent with its standard safety and security policies applicable to all customers, individuals are not permitted direct access to repossessed vehicles. Speedy further admits that, in accordance with its standard procedures, an owner's personal property is collected from repossessed vehicles, placed in blue bags for identification and safekeeping, and made available for the owner's retrieval. Speedy also denies that it violated NRS 104.9207(1) or any other law. As to the remainder of the paragraph allegations, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same. As for the referenced exhibit, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

**37.** In response to Paragraph 37 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same. As for the referenced exhibits, they speak for themselves, and Speedy denies any allegations or characterization inconsistent therewith.

37A. In response to Paragraph 37A of Plaintiff's Complaint, including subparts (1) through (6), to the extent the allegations are directed at it, Speedy denies. Speedy denies that the repossession referenced in the Complaint was unlawful or improperly conducted and denies that it engaged in any wrongful, deceptive, or fabricated conduct. Speedy further denies that it participated in, had knowledge of, or was responsible for any of the communications, correspondence, or alleged actions between Plaintiff and NFCU described in this paragraph and its subparts. As to the remainder of the

paragraph allegations, including the allegations concerning the authenticity, timing, or substance of any NFCU correspondence or purported notice of repossession, Speedy states that it consists of matters outside of its knowledge or constitutes legal conclusions to which no response is required. To the extent a response is deemed required, Speedy denies.

**38.** In response to Paragraph 38 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same. As for the referenced exhibit, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

**39.** In response to Paragraph 39 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies that it sold, transferred, or disposed of the vehicle identified by VIN ending in 9112, or that it destroyed, altered, or had access to any data, telemetry, key pair logs, service history, or other electronically stored information associated with the vehicle. Speedy further denies that it engaged in any conduct that was unlawful, improper, or commercially unreasonable. As to the remainder of the paragraph allegations, Speedy states that it consists of matters outside of its knowledge or constitutes legal conclusions to which no response is required. To the extent a response is deemed required, Speedy denies.

39A. In response to Paragraph 39A of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies that the repossession referenced in the Complaint was unlawful or improperly conducted. Speedy further denies that it engaged in any wrongful, deceptive, or otherwise improper conduct in connection with the repossession. As to the remainder of the paragraph allegations, which concern complaints filed with the Consumer Financial Protection Bureau ("CFPB") and communications between Plaintiff and NFCU, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

39B. In response to Paragraph 39B of Plaintiff's Complaint, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

39C. in response to Paragraph 39C of Plaintiff's Complaint, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

39D. In response to Paragraph 39D of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies that it had any involvement in, access to, or control over the vehicle following its repossession, including any digital or mobile application access, telemetry data, charging logs, or service appointments. Speedy further denies that it destroyed or impaired access to any electronically stored information or otherwise engaged in any wrongful conduct. Speedy further denies that Plaintiff is entitled to any damages or other relief in this action. As to the remainder of the paragraph allegations, Speedy states that it consists of matters outside of its knowledge or constitutes legal conclusions to which no response is required. To the extent a response is deemed required, Speedy denies.

**40.** In response to Paragraph 40 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy admits only that, on or about June 20, 2025, it received correspondence from Plaintiff demanding compensation and release of her vehicle. Speedy denies that it received any correspondence from Plaintiff regarding a litigation hold or that it otherwise received "detailed pre-litigation notices" as alleged. Speedy further states that the remaining allegations – including those asserting bad faith, willful disregard for legal process, or entitlement to enhanced penalties – constitute legal conclusions to which no response is required; to the extent a response is deemed necessary, Speedy denies. To the extent the allegations are directed at NFCU or any other defendant, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

40A. In response to Paragraph 40A of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy admits only that, on or about June 20, 2025, it received correspondence from Plaintiff, which included threatened litigation language. Speedy denies that it received any additional "pre-litigation notices" as alleged, that any such correspondence was directed to or received by Speedy's management, or that it engaged in or was aware of any willful or institutional misconduct. Speedy further denies that it had any role in the sale or disposition of Plaintiff's vehicle. As to the remainder of the paragraph allegations – including those concerning NFCU's internal communications, leadership, or decision-making – are not directed at Speedy; to the extent a response is deemed required, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

In response to the unnumbered Paragraph entitled "**Reservation of Rights**" within Plaintiff's Complaint, the allegations constitute a statement of Plaintiff's intent and a reservation of rights to which no response is required. To the extent a response is deemed necessary, Speedy denies that any basis exists for amendment or for the addition of claims or parties against it.

In response to the unnumbered Paragraph entitled "**Pleading In The Alternative**" within Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy states that this section consists of procedural statements and legal conclusions regarding Plaintiff's pleading theories, to which no response is required. To the extent a response is deemed required, Speedy denies that it engaged in an unlawful seizure, discriminatory conduct, or destruction or property and denies all remaining allegations contained in this section.

## IV. CAUSES OF ACTION

### COUNT I: NEVADA UCC NOTICE & DISPOSITION VIOLATIONS (NRS 104.9610, 104.9613-.9614, 104.9625 - .9626) – Against NFCU and Does

**41.** In response to Paragraph 41 of Plaintiff's Complaint, Speedy reinstates and realleges each of the preceding paragraphs as though stated fully herein and incorporates the same by reference.

**42.** In response to Paragraph 42 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy states the allegations constitute legal conclusions, to which no response is required. To the extent a response is deemed required, Speedy denies. As for the referenced case law, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

**43.** In response to Paragraph 43 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies that it failed to provide any required notice or accounting or that it had any obligation under NRS 104.9611, NRS 104. 9613, NRS 104.9614, or NRS 104.9210 to do so. Speedy was not the secured party to any agreement with Plaintiff and denies that it was responsible for providing predisposition notifications or accountings referenced in the paragraph. As to the remainder of the paragraph allegations, Speedy states that it consists of matters outside of its knowledge or constitutes legal conclusions to which no response is required. To the extent a response is deemed required, Speedy denies. As for the referenced exhibits, they speak for themselves, and Speedy denies any allegations or characterization inconsistent therewith.

43A. In response to Paragraph 43A of Plaintiff's Complaint, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

43A-1. In response to Paragraph 43A-1 of Plaintiff's Complaint, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

43A-2. In response to Paragraph 43A-2 of Plaintiff's Complaint, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

43B. In response to Paragraph 43B of Plaintiff's Complaint, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

**44.** In response to Paragraph 44 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies that it improperly handled the vehicle, discharged the battery to 0%, rekeyed the vehicle without authorization, or failed to follow any required procedures. Speedy further denies that it was involved in, or responsible for, the sale, marketing, or disposition of the vehicle and denies that any such disposition was commercially unreasonable. As to the remainder of the paragraph allegations, including the allegations that any disposition violated NRS 104.9610 or other provisions of law, Speedy states that such allegations constitute legal conclusions to which no response is required. To the extent a response is deemed required, Speedy denies them. As for the referenced exhibit, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

**45.** In response to Paragraph 45 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies that it failed to provide any required notification or that it conducted or participated in the disposition of collateral. Speedy was not the secured party to any agreement with Plaintiff and denies that it is subject to or violated NRS 104.9625, NRS 104.9626, or NRS 104.9627, or that any claim or deficiency is barred or subject to reduction. As to the remainder of the paragraph allegations, Speedy states that it constitutes legal conclusions, to which no response is required.

**46.** In response to Paragraph 46 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to any damages or other relief in this action.

## COUNT II: BREACH OF CONTRACT
## FAILURE TO PROTECT COLLATERAL
**(Nevada Common Law – Against NFCU and Does (through Agency)**

**47.** In response to Paragraph 47 of Plaintiff's Complaint, Speedy reinstates and realleges each of the preceding paragraphs as though stated fully herein and incorporates the same by reference.

**48.** In response to Paragraph 48 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy states that the allegations constitute legal conclusions to which no response is required. As for the referenced exhibit, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

**49.** In response to Paragraph 49 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy states the allegations constitute legal conclusions to which no response is required. To the extent a response is deemed required, Speedy denies that it engaged in any wrongful conduct or otherwise caused damage to the vehicle or its components, and denies the remaining allegations.

**50.** In response to Paragraph 50 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies that it was an agent or representative of NFCU and denies that it owed or breached any contractual duty to Plaintiff. Speedy admits only that the vehicle referenced in the Complaint was stored outdoors at its secured storage facility consistent with its standard company policy., and that weather conditions in Las Vegas, Nevada, can be hot during the month of June. Speedy denies that such storage was improper, contrary to manufacturer guidelines, or caused any damage to the vehicle. Speedy further denies that it allowed the vehicle's battery to discharge, towed the vehicle improperly, or caused any damages to the drivetrain, battery, or key fob. As to the remainder of the paragraph allegations, including the allegations directed at NFCU and other defendants and entities, Speedy is without sufficient information or knowledge to admit or deny the

allegations and therefore denies the same. As for the referenced exhibit, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

**51.** In response to Paragraph 51 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to any damages or other relief in this action. As for the referenced exhibit, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

**52.** In response to Paragraph 52 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to any damages or other relief in this action.

## COUNT III: BREACH OF CONTRACT AND IMPLIED COVENANT OF GOOD FAITH (Nevada Common Law – Against NFCU)

**53.** In response to Paragraph 53 of Plaintiff's Complaint, Speedy reinstates and realleges each of the preceding paragraphs as though stated fully herein and incorporates the same by reference.

**54.** In response to Paragraph 54 of Plaintiff's Complaint, Speedy states the allegations constitute legal conclusions, to which no response is required. As for the referenced case law, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

**55.** In response to Paragraph 55 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy states the allegations concerning the validity or enforceability of any loan agreement constitute legal conclusions to which no response is required. As to the remainder of the paragraph allegations, which appears directed at NFCU, Speedy is without sufficient information or knowledge

to admit or deny the allegations and therefore denies the same. As for the referenced exhibit, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

**COUNT IV: WRONGFUL REPOSSESSION & CONVERSION**
**(NRS 104.9609, 104.9610) – Against All Defendants)**

**56.** In response to Paragraph 56 of Plaintiff's Complaint, Speedy reinstates and realleges each of the preceding paragraphs as though stated fully herein and incorporates same by reference.

**57.** In response to Paragraph 57 of Plaintiff's Complaint, Speedy states the allegations constitute legal conclusions, to which no response is required. As for the referenced case law, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

**58.** In response to Paragraph 58 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action.

**59.** In response to Paragraph 59 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action.

**COUNT V: TREPASS TO CHATTELS**
**(Nevada Common Law) – Against Speedy Recovery and Does)**

**60.** In response to Paragraph 60 of Plaintiff's Complaint, Speedy reinstates and realleges each of the preceding paragraphs as though stated fully herein and incorporates the same by reference.

**61.** In response to Paragraph 61 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy admits only that certain personal items were located within the vehicle at the time of repossession. Speedy states that no medical equipment or prescription medications were observed during the inventory of the vehicle and denies that it was aware of or took possession of any such

items. As to the remainder of the paragraph allegations, Speedy denies. As for the referenced exhibit, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

**62.** In response to Paragraph 62 of Plaintiff's Complaint, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action.

## COUNT VI: NEGLIGENCE / NEGLIGENCE PER SE
## (Nevada Common Law) – Against All Defendants

**63.** In response to Paragraph 63 of Plaintiff's Complaint, Speedy reinstates and realleges each of the preceding paragraphs as though stated fully herein and incorporates the same by reference.

**64.** In response to Paragraph 64 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy states that the allegations consist of legal conclusions, citations to statutes, and statements of law to which no response is required. To the extent a response is deemed required, Speedy denies, and denies that Plaintiff is entitled to any damages or other relief in this action. As for the referenced case law, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

**65.** In response to Paragraph 65 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy states that the allegations consist of legal conclusions, citations to statutes, and statements of law to which no response is required. To the extent a response is deemed required, Speedy denies, and denies that Plaintiff is entitled to any damages or other relief in this action. As for the referenced exhibit, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

**66.** In response to Paragraph 66 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action.

As for the referenced exhibit, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

**67.** In response to Paragraph 67 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action.

**COUNT VII: EXPLOITATION OF A VULNERABLE PERSON (NRS 41.1395) – Against All Defendants**

**68.** In response to Paragraph 68 of Plaintiff's Complaint, Speedy reinstates and realleges each of the preceding paragraphs as though stated fully herein and incorporates the same by reference.

**69.** In response to Paragraph 69 of Plaintiff's Complaint, Speedy states the allegations constitute legal conclusions, to which no response is required.

69A. In response to Paragraph 69A of Plaintiff's Complaint, Speedy states the allegations constitute legal conclusions, to which no response is required.

**70.** In response to Paragraph 70 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies that it had actual or constructive knowledge of any disability, medical condition, or "vulnerable person" status of Plaintiff at the time of repossession. Speedy further denies that it engaged in any misconduct, exploitation, or other wrongful conduct as alleged. As to the remainder paragraph allegations, including statements purporting to interpret Nevada law or define legal duties arising from a handicap placard, Speedy states the allegations constitute legal conclusions, to which no response is required. To the extent a response is deemed required, Speedy denies.

**71.** In response to Paragraph 71 of Plaintiff's Complaint, to the extent the allegations are directed at Speedy, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action.

**72.** In response to Paragraph 72 of Plaintiff's Complaint, Speedy states the allegations constitute legal conclusions, to which no response is required. To the extent a response is deemed required, Speedy denies. Speedy further denies that Plaintiff is entitled to damages or other relief in this action.

72A. In response to Paragraph 72A of Plaintiff's Complaint, Speedy states the allegations constitute legal conclusions, to which no response is required. To the extent a response is deemed required, Speedy denies. Speedy further denies that Plaintiff is entitled to damages or other relief in this action.

## COUNT VIII: FAIR CREDIT REPORTING ACT
## (15 U.S.C. § 1681S-2(b)) – Against NFCU

**73.** In response to Paragraph 73 of Plaintiff's Complaint, Speedy reinstates and realleges each of the preceding paragraphs as though stated fully herein and incorporates the same by reference.

**74.** In response to Paragraph 74 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies that it reported or furnished any information to any CRA or that it had any involvement in the handling or investigation of any credit disputes. As to the remainder of the paragraph allegations, Speedy is without sufficient knowledge or information to admit or deny the allegations and therefore denies the same. Speedy further states that the paragraph includes legal conclusions and statutory interpretations to which no response is required. To the extent a response is deemed required, Speedy denies. As for the referenced exhibit, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

**75.** In response to Paragraph 75 of Plaintiff's Complaint, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

**76.** In response to Paragraph 76 of Plaintiff's Complaint, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same. As to the remainder of

the paragraph allegations, to the extent the allegations are directed at it, Speedy denies that Plaintiff is entitled to any damages or other relief in this action.

**COUNT IX: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12203(b)) – Against All Defendants**

**77.** In response to Paragraph 77 of Plaintiff's Complaint, Speedy reinstates and realleges each of the preceding paragraphs as though stated fully herein and incorporates the same by reference.

**78.** In response to Paragraph 78 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action.

**79.** In response to Paragraph 79 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action.

**80.** In response to Paragraph 80 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action.

**81.** In response to Paragraph 81 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action. As for the referenced case law, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

**82.** In response to Paragraph 82 of Plaintiff's Complaint, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

**83.** In response to Paragraph 83 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory

in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action. As to the remainder of the paragraph allegations, Speedy states that the allegations constitute legal conclusions, to which no response is required. As for the referenced statutes, they speak for themselves, and Speedy denies any allegations or characterization inconsistent therewith.

**84.** In response to Paragraph 84 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action.

**COUNT X: VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT**
**(15 U.S.C. § 1691 et seq.) – Against NFCU**

**85.** In response to Paragraph 85 of Plaintiff's Complaint, Speedy reinstates and realleges each of the preceding paragraphs as though stated fully herein and incorporates the same by reference.

**86.** In response to Paragraph 86 of Plaintiff's Complaint, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same. As to the remainder of the paragraph allegations, Speedy states that the allegations constitute legal conclusions, to which no response is required.

**87.** In response to Paragraph 87 of Plaintiff's Complaint, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

**88.** In response to Paragraph 88 of Plaintiff's Complaint, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

**89.** In response to Paragraph 89 of Plaintiff's Complaint, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

**90.** In response to Paragraph 90 of Plaintiff's Complaint, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

91A. In response to Paragraph 91A of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies that it engaged in any conduct constituting an "adverse action" within the meaning of 12 C.F.R. § 1002.2(c) or that it was a creditor or otherwise subject to the Equal Credit Opportunity Act or its implementing regulations. As to the remainder of the paragraph allegations, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

92. In response to Paragraph 92 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action.

92A. In response to Paragraph 92A of Plaintiff's Complaint, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

**COUNT XI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Nevada Common Law) – Against All Defendants**

93. In response to Paragraph 93 of Plaintiff's Complaint, Speedy reinstates and realleges each of the preceding paragraphs as though stated fully herein and incorporates the same by reference.

94. In response to Paragraph 94 of Plaintiff's Complaint, Speedy states the allegations constitute legal conclusions, to which no response is required. As for the referenced case law, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

95. In response to Paragraph 95 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action.

96. In response to Paragraph 96 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action.

97. In response to Paragraph 97 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action.

**COUNT XII: FDCPA VIOLATION**
**(15 U.S.C. § 1692f(6)) – Against Speedy Recovery, Inc.**

98. In response to Paragraph 98 of Plaintiff's Complaint, Speedy reinstates and realleges each of the preceding paragraphs as though stated fully herein and incorporates the same by reference.

99. In response to Paragraph 99 of Plaintiff's Complaint, Speedy states the allegations constitute legal conclusions, to which no response is required. As for the referenced statute and case law, they speak for themselves, and Speedy denies any allegations or characterization inconsistent therewith.

100. In response to Paragraph 100 of Plaintiff's Complaint, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action. As to the remainder of the paragraph allegations, Speedy states that the allegation constitute legal conclusions, to which no response is required.

101. In response to Paragraph 101 of Plaintiff's Complaint, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action.

102. In response to Paragraph 102 of Plaintiff's Complaint, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action.

**COUNT XIII: NEGLIGENT HIRING, RETENTION, AND SUPERVISION**
**(Nevada Common Law) – Against NFCU**

103. In response to Paragraph 103 of Plaintiff's Complaint, Speedy reinstates and realleges each of the preceding paragraphs as though stated fully herein and incorporates the same by reference.

104. In response to Paragraph 104 of Plaintiff's Complaint, Speedy states the allegations constitute legal conclusions, to which no response is required. As for the referenced case law, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

105. In response to Paragraph 105 of Plaintiff's Complaint, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

106. In response to Paragraph 106 of Plaintiff's Complaint, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same. As to the remainder of the paragraph allegations, to the extent the allegations are directed at it, Speedy denies that Plaintiff is entitled to any damages or other relief in this action.

**COUNT XIV: INTENTIONAL SPOLIATION**
**(Nevada Common Law) – Against All Defendants**

107. In response to Paragraph 107 of Plaintiff's Complaint, Speedy reinstates and realleges each of the preceding paragraphs as though stated fully herein and incorporates the same by reference.

108. In response to Paragraph 108 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy states that the paragraph consists of legal conclusions, procedural statements, and references to rules of civil procedure to which no response is required. To the extent a response is deemed required, Speedy denies that it engaged in any spoliation of evidence or other wrongful conduct and further denies that Plaintiff is entitled to any damages or other relief in this action.

109. In response to Paragraph 109 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy admits only that, on or about June 20, 2025, it received correspondence

from Plaintiff requesting release of her vehicle and including a monetary settlement demand. Speedy denies that it received any formal litigation-hold letter or other correspondence imposing preservation obligations. Speedy further states that it had no involvement in or control over the vehicle or its electronic data following its release from Speedy's secured storage facility. As for the remainder of the paragraph allegations, Speedy denies.

110. In response to Paragraph 110 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action.

111. In response to Paragraph 111 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action.

112. In response to Paragraph 112 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action.

113. In response to Paragraph 113 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action.

113A. In response to Paragraph 113A of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or

theory in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action.

113B. In response to Paragraph 113B of Plaintiff's Complaint, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

114. In response to Paragraph 114 of Plaintiff's Complaint, or any of its subparts, and to the extent the allegations are directed at it, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action.

115. In response to Paragraph 115 of Plaintiff's Complaint, or any of its subparts, and to the extent the allegations are directed at it, Speedy denies. Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to damages or other relief in this action.

116. In response to Paragraph 116 of Plaintiff's Complaint, Speedy is without sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

117. In response to Paragraph 117 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy admits only that, on or about June 20, 2025, it received correspondence from Plaintiff requesting release of her vehicle and including a monetary settlement demand. Speedy denies that it received any formal litigation-hold letter or other correspondence imposing preservation obligations. Speedy further states that it had no involvement in or control over the vehicle or its electronic data following its release from Speedy's secured storage facility. As for the remainder of the paragraph allegations, Speedy denies.

118. In response to Paragraph 118 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy states that this paragraph consists of statements regarding anticipated

discovery and litigation procedures, not factual allegations requiring a response. To the extent a response is deemed required, Speedy denies that any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to any damages or other relief in this action.

119. In response to Paragraph 119 of Plaintiff's Compliant, or any of its subparts, Speedy states that this paragraph consists of statements and proposals concerning discovery management and procedure under the Federal Rules of Civil Procedure, which are matters for the Court to determine and not factual allegations requiring a response. To the extent a response is deemed required, Speedy denies that Plaintiff is entitled to dictate the scope or sequencing of discovery and further denies that Plaintiff is entitled to any damages or other relief in this action.

120. In response to Paragraph 120 of Plaintiff's Complaint, Speedy states the allegation constitute legal conclusions, to which no response is required. As to remainder of the paragraph allegations, Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy further denies that Plaintiff is entitled to any damages or other relief in this action. As for the referenced case law, it speaks for itself, and Speedy denies any allegations or characterization inconsistent therewith.

121. In response to Paragraph 121 of Plaintiff's Complaint, or any of its subparts, to the extent the allegations are directed at it, Speedy states that this paragraph consists of a request for judicial notice and citations to public statutes, government records, and regulatory interpretations, which are matters of law and procedure directed to the Court and not factual allegations requiring a response. To the extent a response is deemed required, Speedy denies that any of the referenced materials establish liability, wrongdoing, or entitlement to relief against Speedy.

122. In response to Paragraph 122 of Plaintiff's Complaint, to the extent the allegations are directed at it, Speedy states that this paragraph consists of procedural statements and a request for relief directed to the Court pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure which are not factual allegations requiring a response. To the extent a response is deemed required, Speedy denies that Plaintiff is entitled to any damages or other relief or amendment as a matter of right and further denies any and all liability to Plaintiff under any statute, law, or theory in this matter.

## PRAYER FOR RELIEF

In response to the "**Prayer For Relief**" clause of Plaintiff's Complaint and each of its subsections and subparts, Speedy denies any and all liability to Plaintiff under any statute, law, or theory in this matter. Speedy denies Plaintiff is entitled to any relief sought herein from Speedy. This denial also applies to, without limitation, the portions of the Prayer for Relief seeking damages, injunctive relief, declaratory relief, costs, sanctions, attorney's fees, or any other form of relief.

## JURY DEMAND

In response to the "**Jury Demand**" clause of Plaintiff's Complaint, Speedy acknowledges Plaintiff's demand for a jury trial, and states that whether a right to jury trial exists for any of the claims asserted in the Complaint constitutes a legal conclusion to which no response is required.

## AFFIRMATIVE DEFENSES

**1.** Plaintiff fails to state a claim for which relief can be granted.

**2.** Plaintiff failed to mitigate her damages.

**3.** Plaintiff has filed failed to join one or more necessary parties to this action.

**4.** Speedy alleges Plaintiff lacks damages and denies that Plaintiff suffered any actual injury as a result of Speedy.

**5.** Plaintiff's alleged injuries or damages may have been caused by the negligence of

others over whom Speedy had no control nor right of control.

**6.** Speedy alleges that Plaintiff's alleged damages, if any, are the result of Plaintiff's own conduct or the conduct of others over whom Speedy has no control.

**7.** Speedy alleges that at all times it acted in good faith and in compliance with the requirements of the law.

**8.** Speedy alleges that any violation of the FDCPA, which is denied, occurred as the result of an unintentional, bona fide error, notwithstanding Speedy's maintenance of policies and procedures reasonably adapted to avoid such error.

**8.** Speedy reserves its right to allege other defenses as discovery and investigation proceed.

\\\

\\\

\\\

\\\

\\\

\\\

\\\

\\\

\\\

\\\

\\\

\\\

\\\

WHEREFORE, having answered Plaintiff's Complaint, Speedy Recovery, Inc. prays:

1. That Plaintiff's Complaint be dismissed with prejudice;
2. That Plaintiff take nothing thereby;
3. For attorneys' fees;
4. For all costs incurred;
5. For such further and other relief as the Court deems just and proper.

DATED this 12th day of November, 2025.

TAKOS LAW GROUP, LTD.

*/s/ Zachary P. Takos*

Zachary P. Takos, Esq., Nevada Bar No. 11293
1935 Village Center Circle
Las Vegas, Nevada 89134

Patrick D. Newman, Esq., Minnesota Bar No. 395864
*Pro hac vice application forthcoming*
BASSFORD REMELE, PA
100 South Fifth Street, Suite 1500
Minneapolis, MN 55402

*Counsel for Defendant Speedy Recovery, Inc.*

# CERTIFICATE OF SERVICE

I am eighteen years of age or older, and not a party to this action. My business address is 1935 Village Center Circle, Las Vegas, Nevada 89134. On the date below, I served the foregoing **DEFENDANT SPEEDY RECOVERY, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT AND JURY DEMAND** as follows:

☒ via electronic service pursuant to Fed. R. Civ. P. 5(b) and Section IV of the District of Nevada Electronic Filing Procedures, and/or

☐ via email, as follows, and/or

☐ by U.S. Mail by depositing a copy of the foregoing document in an envelope(s) in the mail at Las Vegas, Nevada. The envelope(s) were mailed with postage thereon fully prepaid to the following:

DATED this 12th day of November, 2025.

*/s/ Brianna Swanson*
TAKOS LAW GROUP, LTD.

**EXHIBIT C**

**Burch v. Navy Federal Credit Union and Speedy Recovery, Inc.**

**Case No. 2:25-cv-01897-MMD-DJA**

---

**Exhibit Title:**

**June 20, 2025 Letter + Certified-Mail Proof**

---

**Submitted By:**

**Jade Riley Burch**
Plaintiff, Pro Se
222 Karen Avenue, Unit 1207
Las Vegas, Nevada 89109
Phone: (614) 725-9452
Email: jaderburch@gmail.com

---

**Filed In Support Of:**

*PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT SPEEDY RECOVERY, INC.*

---

**Date Submitted: 11/13/2025**

11886348.1.1c

Burch
4001 S. Decatur Blvd Ste 37-442
Las Vegas, NV 89103

USPS CERTIFIED MAIL

9214 8901 4298 0420 9736 40

0011886348000011
Speedy Recovery
Attn: Legal Department
4517 Vandenberg Drive
North Las Vegas, NV 89081

**See Important Information Enclosed**

11886348.1.2

**Jade Riley Burch**
4001 S. Decatur Blvd., Suite 37–442
Las Vegas, NV 89103
jade@elusive-ent.com
June 20, 2025

**Speedy Recovery**
Attn: Legal Department
4517 Vandenberg Drive
North Las Vegas, NV 89081

**RE: Pre-Litigation Demand for Compensation and Vehicle Release**
**Vehicle:** 2021 Tesla Model 3 AWD
**VIN:** 5YJ3E1B9MF999112

To Whom It May Concern:

I am writing to formally demand immediate remedy and compensation for a series of violations and harm caused by your company's role in the repossession of my 2021 Tesla Model 3 AWD on or around June 17, 2025.

## Background

Your agents executed a repossession without any prior notice to me. The vehicle was legally parked in a marked handicapped space with a valid placard displayed. At no time did I receive any contact from your company prior to the seizure. I only became aware of the repossession after activating Tesla's Summon mode and observing the vehicle in real-time being towed, which I initially believed to be theft.

I am a disabled individual with epilepsy (recently requiring emergency care), PTSD, and mobility limitations. Your company's handling of the vehicle caused me to suffer multiple seizures due to the trauma and loss of access to medical care and transportation. The car contained essential items and medications that I was unable to retrieve, and I incurred significant emotional and financial damage as a result.

## Legal Violations Asserted

Your company may be held liable under the following grounds:

1. **Conversion and Improper Possession**
   - Towing without verifying proper legal notice (required under UCC § 9-611 and NRS § 104.9611).
   - Seizing a vehicle parked in a handicapped space may constitute reckless disregard for ADA-related rights.
2. **Negligence and Emotional Distress**

11886348.1.3

    - Failure to notify me or verify accessibility needs, causing medical harm and psychological trauma.
3. **Violation of ADA Obligations**
    - Your agents made no attempt to accommodate or consider visible medical indicators. This omission may support a disability discrimination claim under the Americans with Disabilities Act (ADA) and similar Nevada statutes.
4. **Unfair and Deceptive Practices**
    - If your staff imposed or continue to demand unreasonable storage or release fees, it may constitute unlawful consumer practices under Nevada law.

## Damages Incurred

- Emergency transportation costs
- Missed medical appointments
- Emotional trauma requiring therapy
- Physical harm due to seizure events
- Loss of access to essential medical supplies

## Demand for Resolution

To resolve this matter without the need for immediate litigation, I demand the following:

1. **Immediate release of the vehicle without further delay or payment**
2. **Waiver of all storage, handling, or administrative fees**
3. **Direct compensation in the amount of $10,000 for the damages listed above**

## Deadline and Enforcement Warning

If this matter is not fully resolved within **seven (7) business days** of receipt of this letter, I will proceed with:

- Filing complaints with the **Nevada Financial Institutions Division**, **ADA Civil Rights Division**, and **Better Business Bureau**
- Seeking civil damages in **Clark County District Court** for the full extent of losses, including punitive damages and legal costs
- Referring this matter to consumer protection reporters and legal advocacy organizations

All communications regarding this matter will be documented and preserved as evidence.

Sincerely,

**Jade Riley Burch**
*jade@elusive-ent.com*
*Date: June 20, 2025*

**EXHIBIT D**

**Burch v. Navy Federal Credit Union and Speedy Recovery, Inc.**

**Case No. 2:25-cv-01897-MMD-DJA**

---

**Exhibit Title:**

**Speedy Answer excerpts (showing admissions of no inventory, no photographs, no documentation created)**

---

**Submitted By:**

**Jade Riley Burch**
Plaintiff, Pro Se
222 Karen Avenue, Unit 1207
Las Vegas, Nevada 89109
Phone: (614) 725-9452
Email: jaderburch@gmail.com

---

**Filed In Support Of:**

*PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT SPEEDY RECOVERY, INC.*

---

**Date Submitted: 11/13/2025**

# EXHIBIT D

EXCERPTS FROM SPEEDY RECOVERY, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT SHOWING ADMISSIONS OF NO INVENTORY, NO PHOTOGRAPHS, NO DOCUMENTATION CREATED

Case No. 2:25-cv-01897-MMD-DJA

---

## 1. ADMISSION: RECEIVED JUNE 20 DEMAND LETTER (No Response)

**Pre-Suit Compliance Paragraph (Page 2):**

"Speedy Recovery, Inc. admits only that, on or about June 20, 2025, it received correspondence from Plaintiff requesting release of her vehicle and including a monetary settlement demand, **and that Speedy did not issue a written response to that correspondence.**"

**Paragraph 40 (Page 15):**

"Speedy admits only that, on or about June 20, 2025, it received correspondence from Plaintiff demanding compensation and release of her vehicle. **Speedy denies that it received any correspondence from Plaintiff regarding a litigation hold** or that it otherwise received 'detailed pre-litigation notices' as alleged."

**Paragraph 40A (Page 16):**

"Speedy admits only that, on or about June 20, 2025, it received correspondence from Plaintiff, **which included threatened litigation language.**"

**Paragraph 109 (Page 29-30):**

"Speedy admits only that, on or about June 20, 2025, it received correspondence from Plaintiff requesting release of her vehicle and including a monetary settlement demand. **Speedy denies**

**that it received any formal litigation-hold letter or other correspondence imposing preservation obligations.**"

**Paragraph 117 (Page 31):**

"Speedy admits only that, on or about June 20, 2025, it received correspondence from Plaintiff requesting release of her vehicle and including a monetary settlement demand. **Speedy denies that it received any formal litigation-hold letter or other correspondence imposing preservation obligations.**"

---

## 2. ADMISSION: STANDARD PROCEDURES FOR COLLECTING PROPERTY IN "BLUE BAGS"

**Paragraph 36 (Page 13):**

"Speedy admits only that, **consistent with its standard safety and security policies applicable to all customers, individuals are not permitted direct access to repossessed vehicles.** Speedy further admits that, **in accordance with its standard procedures, an owner's personal property is collected from repossessed vehicles, placed in blue bags for identification and safekeeping, and made available for the owner's retrieval.**"

---

## 3. ADMISSION: PERSONAL ITEMS WERE PRESENT IN VEHICLE

**Paragraph 28 (Page 10):**

"Speedy admits only that **certain personal items were present in the vehicle** at the time it was transported to Speedy's storage facility. Speedy denies that any prescription medications or medical equipment were observed in or removed from the vehicle."

**Paragraph 61 (Page 21-22):**

"Speedy admits only that **certain personal items were located within the vehicle** at the time of repossession. Speedy states that no medical equipment or prescription medications were observed during the inventory of the vehicle and denies that it was aware of or took possession of any such items."

---

## 4. ADMISSION: VEHICLE PARKED IN ACCESSIBLE SPACE WITH DISABILITY PLACARD

**Paragraph 26 (Page 9):**

"Speedy admits only that at the time of the repossession on June 18, 2025, **the Tesla referenced in the Complaint was parked in a designated accessible parking space and displayed a disability placard.**"

---

## 5. ADMISSION: OUTDOOR STORAGE IN HOT WEATHER

**Paragraph 50 (Page 19):**

"Speedy admits only that **the vehicle referenced in the Complaint was stored outdoors at its secured storage facility consistent with its standard company policy, and that weather conditions in Las Vegas, Nevada, can be hot during the month of June.**"

---

## 6. ADMISSION: HIGH TEMPERATURE ON JUNE 18, 2025

**Paragraph 29 (Page 10):**

"Speedy admits only that, according to publicly available information, **the temperature in Las Vegas, Nevada, on or about June 18, 2025, was high.**"

## 7. ADMISSION: REPOSSESSED VEHICLE AND TRANSPORTED TO FACILITY

**Paragraph 27 (Page 9):**

"Speedy admits only that **the Tesla vehicle referenced in the Complaint, was transported to Speedy's storage facility located at 4517 Vandenberg Drive, North Las Vegas, Nevada 89081.**"

## 8. CRITICAL OMISSION: NO MENTION OF ANY INVENTORY , PHOTOGRAPHS, OR DOCUMENTATION

**Throughout the entire 36-page Answer, Speedy Recovery:**

- ❌ Never claims to have created any inventory of Plaintiff's property
- ❌ Never claims to have taken any photographs of the vehicle or its contents
- ❌ Never claims to have provided any written notice or documentation regarding property disposition
- ❌ Never claims to have created any record of what items were collected from the vehicle
- ❌ Never claims to have provided any receipt or acknowledgment of property returned
- ❌ Never claims to have documented the condition of returned property
- ❌ Never claims to have created any record of temperature or storage conditions

**Despite admitting:**

- ✅ Standard procedures exist for collecting property (¶ 36)
- ✅ Personal items were present in the vehicle (¶¶ 28, 61)
- ✅ Items were placed in "blue bags" (¶ 36)
- ✅ Items were made available for owner's retrieval (¶ 36)

**Speedy provides NO EVIDENCE of:**

- What specific items were collected
- When items were collected
- Who collected the items
- What condition items were in when collected
- How items were stored
- What temperature items were exposed to
- What items were returned
- Any photographs or documentation of any kind

---

## 9. CONTRADICTION: ADMITS RECEIVING "THREATENED LITIGATION LANGUAGE" BUT DENIES PRESERVATION DUTIES

**Compare these admissions:**

**Paragraph 40A (Page 16):**

"Speedy admits only that, on or about June 20, 2025, it received correspondence from Plaintiff, **which included threatened litigation language.**"

**Paragraph 109 (Page 29-30):**

**"Speedy denies that it received any formal litigation-hold letter or other correspondence imposing preservation obligations."**

**This is a legal contradiction:** Correspondence threatening litigation creates a duty to preserve evidence as a matter of law under *Silvestri v. General Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001), yet Speedy admits receiving such correspondence while denying preservation obligations were triggered.

---

## SUMMARY OF KEY ADMISSIONS

**What Speedy Admits:**

- ✅ Received June 20, 2025 demand letter with "threatened litigation language"
- ✅ Did not respond to demand letter
- ✅ Vehicle parked in accessible space with disability placard displayed
- ✅ Personal items were present in vehicle
- ✅ Has "standard procedures" for collecting property in "blue bags"
- ✅ Stored vehicle outdoors in hot Las Vegas June weather
- ✅ Temperature was "high" on June 18, 2025
- ✅ Denies direct access to repossessed vehicles as "company policy"
- ✅ Transported vehicle to 4517 Vandenberg Drive, North Las Vegas

**What Speedy Does NOT Claim:**

❌ Created any inventory of collected property

❌ Took any photographs of vehicle or contents

❌ Provided any written documentation to Plaintiff

❌ Recorded what items were collected or returned

❌ Documented condition of property

❌ Documented storage conditions or temperatures

❌ Preserved any evidence after receiving litigation notice

---

These admissions, when combined with the complete absence of any claim to have created documentation, establish that Speedy Recovery had "standard procedures" for collecting property but failed to follow basic documentation practices required by NRS 104.9610 and commercially reasonable standards.

**EXHIBIT E**

**Burch v. Navy Federal Credit Union and Speedy Recovery, Inc.**

**Case No. 2:25-cv-01897-MMD-DJA**

---

**Exhibit Title:**

**ADA placard photo**

---

**Submitted By:**

**Jade Riley Burch**
Plaintiff, Pro Se
222 Karen Avenue, Unit 1207
Las Vegas, Nevada 89109
Phone: (614) 725-9452
Email: jaderburch@gmail.com

---

**Filed In Support Of:**

*PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT SPEEDY RECOVERY, INC.*

---

**Date Submitted: 11/13/2025**


EXHIBIT C
DRIVING VEHICLE
A1625511
Disabled Person's Parking
Identification Placard
2025
2026
2028
2029
2030
2031
2032
2033
2034
2035
2036
FEB
MAR
APR
MAY
JUN
JUL
AUG
SEP
OCT
NOV
DEC
EXPIRES
PUNCHING MORE THAN
ONE (1) MONTH AND/OR
YEAR VOIDS
THIS PLACARD
STATE OF NEVADA
DEPARTMENT OF
MOTOR VEHICLES

**EXHIBIT F**

**Burch v. Navy Federal Credit Union and Speedy Recovery, Inc.**

**Case No. 2:25-cv-01897-MMD-DJA**

---

**Exhibit Title:**

**National Weather Service Report (June 18, 2025, Las Vegas – 106°F)**

---

**Submitted By:**

**Jade Riley Burch**
Plaintiff, Pro Se
222 Karen Avenue, Unit 1207
Las Vegas, Nevada 89109
Phone: (614) 725-9452
Email: jaderburch@gmail.com

---

**Filed In Support Of:**

*PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT SPEEDY RECOVERY, INC.*

---

**Date Submitted: 11/13/2025**

WORLD WEATHER

# Weather in Las Vegas, June 18

## June 18, 2025

| | Atmospheric conditions and temperature °F | RealFeel °F | Atmospheric pressure inHg | Wind speed mph | Humidity |
|---|---|---|---|---|---|
| Night | +90° | +90° | 27.7 | W 5.4 | 9% |
| Morning | +88° | +88° | 27.8 | SW 5.1 | 10% |
| Day | +106° | +106° | 27.8 | E 4.5 | 6% |
| Evening | +106° | +106° | 27.7 | E 8.5 | 2% |

## Bio-meteorological forecast

| | | |
|---|---|---|
| **Meteorological sensitivity index** | 4 | Strong reactions to the weather are possible by meteosensitive people. |
| **Effect of low pressure** | 1 | Low atmospheric pressure may affect some meteosensitive people. |
| **Geomagnetic conditions** | 2 | Solar activity may affect some sensitive people. |
| **Influence of solar activity** | 4 | Extreme risk of harm from unprotected sun exposure due to intense UV radiation, staying in shade during midday is recommended. |

**EXHIBIT G**

**Burch v. Navy Federal Credit Union and Speedy Recovery, Inc.**

**Case No. 2:25-cv-01897-MMD-DJA**

---

**Exhibit Title:**

**Tesla Owner's Manual excerpts (temperature and storage requirements)**

---

**Submitted By:**

**Jade Riley Burch**
Plaintiff, Pro Se
222 Karen Avenue, Unit 1207
Las Vegas, Nevada 89109
Phone: (614) 725-9452
Email: jaderburch@gmail.com

---

**Filed In Support Of:**

*PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT SPEEDY RECOVERY, INC.*

---

**Date Submitted: 11/13/2025**

| RWD/AWD | Specifications |
|---|---|
| Parking Brake | Electrically actuated parking brake integrated into rear caliper |
| Brake pedal free travel | ≤7 mm |
| Acceleration pedal free travel | ≤4 mm |

## Suspension

| Suspension | Specifications |
|---|---|
| Front | Independent, double wishbone, coil spring/telescopic damper, sway bar |
| Rear | Independent, multi-link, coil spring/telescopic damper |

## Battery - Low Voltage

| Battery - Low Voltage | Specifications |
|---|---|
| Rating | 6.9 amp hour |
| Voltage | 15.5V |

## Battery - High Voltage

For vehicles manufactured after approximately July 2025:

| Battery - High Voltage | Specifications |
|---|---|
| RWD/AWD | Specifications |
| Nominal Voltage | 350 V DC |
| Temperature Range | Do not expose Model 3 to ambient temperatures above 60° C or below -30° C for more than 24 hours at a time. |

For vehicles manufactured before approximately July 2025:

| Battery - High Voltage | Specifications |
| --- | --- |
| Type | Liquid-cooled lithium ion (Li-ion) |
| Nominal Voltage | 355V DC |
| Temperature Range | Do not expose Model 3 to ambient temperatures above 60° C or below -30° C for more than 24 hours at a time. |

**EXHIBIT H**

**Burch v. Navy Federal Credit Union and Speedy Recovery, Inc.**

**Case No. 2:25-cv-01897-MMD-DJA**

---

**Exhibit Title:**

**Declaration of Porscha Ryan (Medical Power of Attorney)**

---

**Submitted By:**

**Jade Riley Burch**
Plaintiff, Pro Se
222 Karen Avenue, Unit 1207
Las Vegas, Nevada 89109
Phone: (614) 725-9452
Email: jaderburch@gmail.com

---

**Filed In Support Of:**

*PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT SPEEDY RECOVERY, INC.*

---

**Date Submitted: 11/13/2025**

Jade Riley Burch
Plaintiff, Pro Se
222 Karen Avenue, Unit 1207
Las Vegas, NV 89109
Tel: (614) 725-9452
Email: jaderburch@gmail.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| **Jade Riley Burch,**<br><br>Plaintiff, Pro Se,<br><br>vs.<br><br>**Navy Federal Credit Union; Speedy Recovery, Inc.; and Does 1–10,**<br><br>Defendants. | **Case No.:** 2:25-cv-01897-MMD-DJA<br><br>**DECLARATION OF PORSCHA RYAN IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>. |

I, Porscha Ryan, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct based on my personal knowledge:

## I. RELATIONSHIP TO PLAINTIFF

1. My name is Porscha Ryan. I am over the age of 18 and competent to make this declaration.
2. I am Plaintiff Jade Riley Burch's designated Medical Power of Attorney. I regularly assist Jade with medical appointments, medication management, and daily activities due to her seizure disorder and mobility limitations.

3. I have known Jade for approximately three years and am familiar with her medical conditions, the medications she uses, and how she stores them.

## II. EVENTS OF JUNE 18, 2025 – I WAS PRESENT

1. On June 18, 2025, I accompanied Jade to a medical appointment near Downtown Summerlin in Las Vegas, Nevada.
2. Jade drove her white 2021 Tesla Model 3 (VIN ending in 9112).
3. After the appointment, we stopped to get food nearby. Jade parked in a clearly marked accessible parking space with a wheelchair symbol painted on the pavement and a blue accessible parking sign posted on a pole.
4. Jade's valid Nevada disability placard was displayed hanging from the rearview mirror and was clearly visible through the front windshield. I helped her hang the placard when we parked.
5. All of Jade's regular medications and medical equipment were in the Tesla when we left the vehicle.
6. We were away from the vehicle for approximately 45 minutes to an hour. When we returned, the Tesla was gone.
7. At first, we were confused and briefly wondered if the car had been stolen or reported, even though Jade was legally parked in an accessible space with her placard displayed.
8. Jade opened her Tesla phone app in front of me. The app showed the vehicle was moving. Jade said something like, "They are towing my car right now." The map showed the vehicle being transported toward North Las Vegas.

9. I watched the map on Jade's phone with her as the vehicle's location updated in real time. We realized the car was being repossessed, not towed for a parking issue or stolen.

10. Jade became extremely distressed and said she needed her insulin, inhaler, EpiPen, and Ativan, which were all in the vehicle.

## III. JADE'S MEDICAL EMERGENCY – I WITNESSED IT

1. Within approximately 20 to 30 minutes of discovering the vehicle was gone, Jade suffered a seizure.
2. I have seen Jade have seizures before and am able to recognize them. This was a full seizure that required intervention.
3. The seizure occurred outside in extreme heat. It felt dangerously hot that day; I later learned temperatures were over 105°F.
4. I know from experience that Jade's seizures can be triggered by extreme stress, heat, and lack of access to her anti-seizure medication (Ativan). All three of those triggers were present at the time of this seizure.
5. Jade did not have her Ativan with her because it was still in the vehicle that had just been taken. I immediately administered oxygen to help her during and after the seizure.

## IV. WHY JADE KEPT MEDICATIONS IN THE TESLA

1. Before June 18, 2025, Jade and I had multiple conversations about why she kept her medications in the Tesla instead of carrying them on her person at all times.
2. Jade explained to me that her Humalog insulin pen must be kept at a cool, controlled temperature and that heat can ruin insulin. Las Vegas summer temperatures often exceed 105°F, and Jade told me insulin could be destroyed quickly if carried outside in that heat.
3. Jade showed me the Tesla's climate control feature that allows her to keep the cabin at a set temperature even when the car is parked and turned off, and to monitor and adjust that temperature from her phone.
4. From what Jade showed and told me, I understood that she was using the Tesla as a portable, climate-controlled storage space for her medications.
5. In addition to insulin, Jade kept in the Tesla: an EpiPen auto-injector for severe allergic reactions, a prescription albuterol inhaler for breathing emergencies, Ativan (lorazepam) for seizure management and anxiety, Amlodipine for high blood pressure, other prescription medications, and two cases of ramen noodles as emergency carbohydrate sources for low blood sugar (one unopened case and one partially used).
6. As Jade's Medical Power of Attorney, I understood that these medications and supplies were important for managing her seizure disorder, diabetes, severe high blood pressure, and other conditions, and that having immediate access to them was medically critical for her.

## V. RETRIEVAL OF PROPERTY FROM SPEEDY RECOVERY – PHONE CALL

1. Several days after the repossession, Jade received notice that she could retrieve her personal belongings from Speedy Recovery's facility at 4517 Vandenberg Drive in North Las Vegas.
2. Jade went to Speedy Recovery alone. I did not go with her in person.
3. While Jade was at Speedy Recovery, she called me on the phone and kept me on the line during her interaction with the employees.
4. On the phone, Jade told me that Speedy Recovery would not allow her to enter the secured lot where the vehicles were stored. She told me an employee said it was "company policy" that vehicle owners were not allowed in the lot for "safety and security reasons."
5. Jade told me she had to wait outside the gate in the sun while an employee went into the lot to gather her belongings.
6. Jade told me she waited approximately 15 to 20 minutes before the employee returned with her property on a golf cart.

## VI. WHAT I PERSONALLY OBSERVED WHEN JADE RETURNED HOME

1. When Jade came home from Speedy Recovery, she was carrying several large blue trash bags.
2. I immediately noticed that the bags were hot to the touch. When I put my hands on them, they felt very hot, not just warm.
3. Jade told me the Speedy Recovery employee said the items had been in the car in the lot.

4. In Jade's home, we opened the blue trash bags together. I personally observed Jade remove the following items from the hot bags: a. Prescription albuterol inhaler (red and white canister) b. EpiPen auto-injector in a yellow plastic case c. Orange prescription bottle labeled "Ativan" with Jade's name d. Humalog insulin pen (blue and clear plastic, similar to a thick marker) e. Prescription bottle labeled "Amlodipine" f. Several other prescription medication bottles with Jade's name on the labels g. Jade's disability placard, which had been hanging from the rearview mirror
5. The two cases of ramen noodles Jade kept in the trunk were not in any of the bags. Both cases were missing.
6. The bags had that distinct "hot plastic" smell, like items that have been sitting in extreme heat for an extended period.
7. Jade was very upset and said something like, "These are all ruined. I can't use any of this. It has been sitting in the heat."
8. Based on how hot the bags were and Jade's prior explanations about her medications, I understood that the medications had likely been exposed to extreme heat and could not safely be used.
9. I watched Jade throw away the medications at home because she believed they were no longer safe or effective.

## VII. JADE'S JUNE 20, 2025 DEMAND LETTER

1. Several days after the repossession, Jade told me she had sent a formal written letter to Speedy Recovery via certified mail demanding the return of her vehicle and preservation of evidence.
2. Jade showed me proof that the letter was delivered to Speedy Recovery.
3. Jade told me that Speedy Recovery never responded to her letter at all — no phone call, no email, and no written response.

## VIII. NO INVENTORY OR DOCUMENTATION WHAT I OBSERVED AND WHAT JADE TOLD ME

1. When Jade brought the bags home, there was no written inventory, list, receipt, or any other document describing what had been taken from the vehicle or what was being returned.
2. The bags looked like ordinary blue trash bags with some writing or printing on them. The items inside appeared to have been thrown in without organization.
3. Jade told me that Speedy Recovery did not give her any paperwork about the property or its condition.
4. Jade also told me that, because she was not allowed into the lot, she had no way to verify whether all of her property had been collected, what condition it was in before it was bagged, or whether anything else was missing.

## IX. THE DISABILITY PLACARD

1. When we opened the bags at Jade's home, we found her disability placard in one of the bags.
2. Before the repossession, that placard had been hanging from the rearview mirror where it was clearly visible when we parked in the accessible spot.
3. This means the Speedy Recovery employee who collected Jade's belongings had to take the disability placard down from the rearview mirror while clearing out the vehicle.
4. Despite this, Jade told me no one at Speedy Recovery mentioned the disability placard, apologized for taking a vehicle from an accessible space, or offered any special accommodation when she retrieved her property.

## X. THE MISSING RAMEN

1. Before the repossession, Jade kept two cases of ramen noodles in the trunk of her Tesla as emergency carbohydrates for low blood sugar. I personally helped order at least one of these cases online because we could not find that specific variety in local stores.
2. When we opened the blue bags at Jade's home, neither case of ramen was present. Both were missing and have never been returned.

## XI. IMPACT ON JADE

1. Since June 18, 2025, I have personally observed that Jade has had more frequent seizures and increased anxiety.
2. Jade now worries constantly about her medications and access to them. She no longer trusts leaving them in her vehicle and instead carries them with her, which is difficult for her because of her mobility limitations and the Las Vegas heat.
3. Jade has told me she is afraid to park in accessible spaces in public because she fears her vehicle will be taken again. This has limited her independence and makes everyday activities more stressful.

## XII. CONCLUSION

1. Based on my personal observations and my role as Jade's Medical Power of Attorney, I can confirm that:
    - Jade's Tesla was parked in a clearly marked accessible space on June 18, 2025, with her disability placard displayed.
    - When we returned, the vehicle was gone, and Jade tracked it in real time on her phone and saw it being repossessed.
    - The vehicle contained life-sustaining medications and medical supplies that Jade used and stored in the Tesla for temperature control.
    - Jade suffered a seizure within 20 to 30 minutes of discovering the vehicle was gone, during extreme heat and without access to her anti-seizure medication.

- Speedy Recovery would not allow Jade into the lot to retrieve her own property and instead returned her belongings in hot blue trash bags with no inventory or documentation provided to her.
- When Jade came home, the medications in the bags were hot to the touch and were thrown away because they were believed to be heat-damaged and unsafe.
- Jade's disability placard and other medications were in the bags, but the two cases of ramen noodles she kept in the trunk were missing and have never been returned.
- These events have had lasting negative effects on Jade's health, anxiety, and daily functioning.

2. I am making this declaration voluntarily. I have no financial interest in the outcome of this lawsuit. I am willing to testify to these facts in court if required.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on NOV 13, 2025, at Las Vegas, Nevada.

Porscha Ryan Medical Power of Attorney for Jade Riley Burch