Jade Riley Burch
Plaintiff, Pro Se
222 Karen Avenue, Unit 1207
Las Vegas, NV 89109
Tel: (614) 725-9452
Email: jaderburch@gmail.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| **Jade Riley Burch,**<br><br>Plaintiff, Pro Se,<br><br>vs.<br><br>**Navy Federal Credit Union; Speedy Recovery, Inc.; and Does 1–10,**<br><br>Defendants. | **Case No.: 2:25-cv-01897-MMD-DJA**<br><br>**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT NAVY FEDERAL CREDIT UNION**<br>(NRS 104.9611–.9626, FED. R. CIV. P. 56) |

## EXECUTIVE SUMMARY

This motion asks the Court to resolve one narrow issue on an undisputed record: whether Navy Federal Credit Union ("NFCU") complied with Nevada's Article 9 requirements in a consumer-goods repossession. It did not.

First, NFCU repossessed and sold Plaintiff's 2021 Tesla Model 3 without providing the authenticated pre-disposition notice required by NRS 104.9611. In a consumer-goods transaction, the Nevada Supreme Court has made clear that failure to give proper notice bars any deficiency judgment as a matter of law. *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 919 (Nev. 1977) (holding that compliance with UCC notice requirements is a "condition precedent"

to recovering a deficiency, and secured party's failure to provide proper notice "preclude[s] any judgment for the deficiency").[1]

Second, despite multiple authenticated written demands, including a litigation-hold letter that NFCU's Collateral Risk department opened and read twice, NFCU has never provided the post-disposition accounting mandated by NRS 104.9616 and 104.9210.

Third, NFCU cannot satisfy its burden under NRS 104.9626(2) to prove a commercially reasonable disposition under NRS 104.9610. NFCU's agent stored the Tesla outdoors in 106°F heat, allowed the battery to discharge to critically low levels, towed it contrary to manufacturer guidance, created no inventory or condition documentation, and then sold the vehicle after receiving a litigation hold that specifically demanded preservation of telemetry and related data. Tesla later determined that the high-voltage battery must be replaced at an estimated cost of $12,000–$18,000 due to collateral loss caused by mishandling.

These violations are established by the undisputed record. NFCU has produced no proof of mailing or delivery of any pre-sale notice, no post-sale accounting, and no evidence of the time, manner, marketing, or price of disposition. Under NRS 104.9626(2), the burden now shifts to NFCU to prove compliance. This burden cannot be met on this record.

The Court should enter partial summary judgment on Count I, declare any claimed deficiency barred under *Levers*, award statutory damages of $11,965.28 under NRS 104.9625(3)(b), and reserve the calculation of additional compensatory damages and any NRS 41.1395 enhancement for an evidentiary hearing.

[1] Nevada follows the bright-line "absolute bar" rule for notice violations in consumer-goods transactions: failure to provide proper pre-disposition notice under NRS 104.9611 completely bars any deficiency judgment, regardless of whether the debtor can prove prejudice. *Levers*, 560 P.2d at 919. This differs from the approach in some other jurisdictions that permit secured parties to overcome notice defects by proving lack of prejudice. Nevada's consumer-protective rule reflects the legislature's judgment that notice is so fundamental to protecting debtors' rights that noncompliance cannot be excused. See U.C.C. § 9-626 cmt. 4 (explaining that states may adopt stricter rules for consumer transactions); NRS 104.9625(3)(b) (providing mandatory minimum damages in consumer cases without requiring proof of harm).

---

## I. INTRODUCTION

Plaintiff Jade Riley Burch moves for partial summary judgment on liability on Count I (Nevada UCC Article 9 Violations) against Navy Federal Credit Union ("NFCU") under Nevada's Uniform Commercial Code. Plaintiff seeks summary judgment on NFCU's liability under NRS 104.9611–.9626 (Count I), a declaration barring any deficiency, and statutory damages of $11,965.28 under NRS 104.9625(3)(b), with all other damages reserved.

The undisputed facts establish that NFCU repossessed and disposed of Plaintiff's vehicle without providing pre-sale notice or post-sale accounting, and without conducting a commercially reasonable disposition as Nevada law requires. Under binding Nevada Supreme Court precedent,

those violations bar any deficiency and trigger statutory damages. The record establishes NFCU's liability as a matter of law.

This motion is supported by the Declaration of Jade Riley Burch (Exhibit A) and the exhibits referenced therein.

**Coordination with Related Litigation:** This motion arises from the same June 18, 2025 repossession that is the subject of Plaintiff's pending summary judgment motion against Speedy Recovery, Inc. (NFCU's repossession agent). Many of the same facts support both motions, including Speedy's judicial admissions regarding the manner of repossession, outdoor storage in extreme heat, and failure to document the vehicle's condition. The Court may wish to coordinate briefing schedules or consolidate hearings to promote judicial efficiency.

---

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 56-1, Plaintiff submits the following concise statement of undisputed material facts, supported by citation to the record. On the present record, NFCU has offered no evidence creating a genuine dispute as to these facts.

---

### A. The Loan and Repossession

1. On July 1, 2021, Plaintiff financed a 2021 Tesla Model 3 AWD (VIN ending 9112) with NFCU for $59,790.84 over 72 months at 3.99% APR. Total finance charge: $5,986.20. (Burch Decl. ¶¶ 3–4; Ex. 1.)
2. The vehicle was purchased and used primarily for Plaintiff's personal, household, and medical transportation needs, making this a consumer-goods transaction within the meaning of NRS 104.9102(1)(a) and triggering the consumer protections of NRS 104.9625(3)(b). (Burch Decl. ¶¶ 7–11.)
3. The loan agreement required NFCU to "protect the collateral" and imposed duties of reasonable care. (Burch Decl. ¶ 5; Ex. 1.)
4. Plaintiff made payments totaling $6,071.00 between July 2021 and June 2025. (Burch Decl. ¶ 6.)
5. On June 18, 2025, NFCU caused the vehicle to be repossessed from a marked ADA-accessible parking space at Downtown Summerlin during 106°F heat, while Plaintiff's disability placard was displayed. (Burch Decl. ¶¶ 23–29; Exs. 9, 13.)
6. Speedy Recovery, acting as NFCU's agent, admits in its Answer that it repossessed "pursuant to a lawful repossession order" from NFCU and admits the vehicle was in "a designated accessible parking space" with "disability placard" displayed. (Ex. B – Speedy's Answer ¶¶ 1, 26.)
7. The vehicle contained Plaintiff's life-sustaining medical equipment including an inhaler, EpiPen, Ativan, and insulin. (Burch Decl. ¶¶ 10, 28.)

**B. The Medical Crisis and Constructive Notice**

1. Between June 14–16, 2025, Plaintiff experienced 16 documented seizures in 72 hours, including grand mal seizures with loss of consciousness, foaming at the mouth, post-ictal paralysis (Todd's paresis), and inability to ambulate independently. (Burch Decl. ¶¶ 13–15; Ex. 10.)
2. On June 16, 2025, Plaintiff's neurologist issued a written order for emergency admission. University Medical Center refused care twice that day, denying entry without taking vitals. (Burch Decl. ¶¶ 17–21; Exs. 11–12.)
3. The June 18, 2025 repossession occurred 48 hours after these refusals, while Plaintiff was managing the crisis through strict medication adherence. All medications were in the vehicle. (Burch Decl. ¶¶ 22, 28–29; Exs. 10–12.)
4. Plaintiff suffered her 17th seizure within hours of the repossession. (Burch Decl. ¶¶ 30–31; Ex. 14.)

**C. The Notice Violations and Documentation Timeline**

1. Plaintiff received no authenticated pre-disposition notice at any time before, during, or after repossession. NFCU does not contend that Plaintiff received notice—only that it purportedly sent one. (Burch Decl. ¶¶ 32–34.)
2. Plaintiff filed three CFPB complaints against NFCU regarding this repossession dispute:
   - CFPB Complaint No. 250712-22270607 (July 12, 2025);
   - CFPB Complaint No. 250715-22348848 (July 15, 2025); and

- CFPB Complaint No. 250911-23987008 (September 11, 2025).

The July 12 and July 15 complaints specifically challenged NFCU's failure to provide any pre-disposition notice under NRS 104.9611. (Burch Decl. ¶¶ 34–36; Exs. 3, 3A.)

3. On July 21, 2025, in response to Plaintiff's July 15 CFPB complaint, NFCU informed the CFPB only that "review of this matter is in progress," without mentioning any pre-disposition notice. (Burch Decl. ¶¶ 37–38; Ex. 4.)
4. For the next 58 days (July 15–September 11, 2025), NFCU produced no notices to the CFPB despite Plaintiff's specific dispute regarding lack of notice. (Burch Decl. ¶ 39; Ex. 4.)
5. On September 11, 2025—three days after Plaintiff sent a pre-suit settlement demand with draft complaint—and in connection with the September 11 CFPB complaint, NFCU suddenly uploaded two purported pre-disposition notices to the CFPB portal, both addressed to Plaintiff's former legal name at an outdated address and accompanied by no proof of mailing (no certified mail receipts, no tracking, no delivery confirmation). (Burch Decl. ¶¶ 40–44; Ex. 5.)
6. NFCU's billing statements dated June 21–July 20 and July 21–August 20, 2025 both state: "This account statement is provided to you for informational purposes only and should not be construed as an attempt to contact you for payment. This is not an attempt to collect a debt." (Burch Decl. ¶¶ 45–46; Ex. 6.)
7. Despite multiple authenticated written requests, NFCU has provided no post-disposition accounting under NRS 104.9616 or 104.9210. (Burch Decl. ¶¶ 47–51; Ex. 15.)

**D. NFCU's Pre-Litigation Pattern of Non-Response**

1. Before filing this action, Plaintiff sent eleven (11) separate written communications to NFCU's legal department, executive resolutions team, chief legal officer, board of directors, and collateral risk department between June 22 and July 18, 2025. (Burch Decl. ¶¶ 79-83; Ex. 16.)
2. Each communication provided NFCU with detailed information about the repossession circumstances, Plaintiff's disability status, the medical crisis, specific UCC violations, substantial evidence, reasonable settlement proposals, clear deadlines, and consequences of non-response. (Burch Decl. ¶¶ 84-89; Ex. 16.)
3. NFCU never responded to any of these eleven communications—not a single reply, acknowledgment, or counteroffer. (Burch Decl. ¶¶ 93-98; Ex. 16.)
4. The first settlement demand was sent on June 22, 2025 to NFCU's Collateral_Risk department, establishing that this department had actual knowledge of Plaintiff's disability status, medical crisis, and UCC violation claims more than six weeks before the August 9, 2025 litigation hold. (Burch Decl. ¶¶ 80, 100-101; Ex. 16, Tab 1.)

**E. The Spoliation and Commercial Unreasonableness**

1. After repossession, the vehicle was stored outdoors in extreme Nevada heat. Speedy admits in its Answer that "the vehicle was stored outdoors" and acknowledges that "weather conditions in Las Vegas, Nevada, can be hot during the month of June." (Burch Decl. ¶¶ 53–54; Ex. B – Speedy's Answer ¶ 50.)

2. The vehicle's battery was allowed to discharge to critically low levels, and the vehicle was towed without engaging Tesla's "Tow Mode," contrary to manufacturer guidelines. (Burch Decl. ¶¶ 55–57.)
3. On October 1, 2025, Tesla issued a service invoice diagnosing catastrophic high-voltage battery failure and replaced the battery under warranty, reflecting an internal replacement value of approximately $12,000–$18,000, because the vehicle could not charge beyond approximately 30% capacity. (Burch Decl. ¶¶ 58–60; Ex. 7.)
4. Speedy admits in its Answer that it created no inventory, took no photographs, and generated no condition documentation at repossession. (Ex. B – Speedy's Answer ¶¶ 36, 61.)
5. NFCU has provided no documentation of the sale process, price, or efforts to maximize value, and has never disclosed when, how, or to whom the vehicle was sold, or what price was obtained. (Burch Decl. ¶¶ 63–64.)
6. NFCU sold the vehicle after its Collateral_Risk department opened and read Plaintiff's August 9, 2025 litigation hold twice on August 11, 2025, thereby eliminating embedded telemetry, key-pair logs, and service records that would have reflected the vehicle's location, state of charge, and handling during and after repossession. (Burch Decl. ¶¶ 65–78; Ex. 15.)

**F. The Ongoing Harm**

1. NFCU has concealed loan records in "Inactive Accounts" sections, impeding Plaintiff's access to payoff and accounting information. (Burch Decl. ¶ 52.)

## III. LEGAL STANDARD

### A. Rule 56 Framework

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is met, the burden shifts to the nonmoving party to show a genuine dispute for trial. *Id.* at 324. Plaintiff's sworn declaration is admissible summary-judgment evidence under Rule 56(c)(4). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### B. Nevada's Bright-Line Rule: Consumer-Goods Transactions Require Strict Compliance

Nevada law imposes strict compliance requirements on secured parties disposing of consumer goods, and noncompliance bars deficiency judgments as a matter of law. This bright-line rule applies regardless of whether the debtor suffered actual prejudice.

#### 1. The Levers Framework: Notice Is a Condition Precedent

In *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917 (Nev. 1977), the Nevada Supreme Court held that compliance with Article 9's notice requirements is a "condition precedent" to recovering a deficiency judgment. The court explained:

The secured party's failure to give notice as required by the statute "precludes any judgment for the deficiency." This consequence follows because compliance with the notice provisions is a condition precedent to an action by the secured party for a deficiency judgment.

*Id.* at 919 (emphasis added). The Nevada Supreme Court made clear that this is an absolute bar: the secured party either complied with the statute or did not, and if it did not, no deficiency may be recovered. *Id.*

This rule is not subject to substantial compliance, harmless error, or lack-of-prejudice exceptions. Under *Levers*, once the debtor establishes noncompliance with Part 6, the secured party bears the burden of proving compliance, and failure to carry that burden results in an absolute bar to any deficiency. *Id.*; see also NRS 104.9626(2).

**2. Nevada's Consumer Protections Go Beyond the Model UCC**

Nevada's consumer protections are intentionally strict. NRS 104.9625(3)(b) provides mandatory minimum statutory damages in consumer-goods transactions equal to "the credit service charge plus 10 percent of the principal amount of the obligation," with no requirement that the debtor prove actual harm. This statutory minimum reflects Nevada's policy judgment that UCC violations in consumer transactions cause inherent harm requiring automatic compensation.

The Official Comment to U.C.C. § 9-626 acknowledges that states may adopt stricter rules for consumer transactions:

Subsection (b) [Nevada's NRS 104.9626(2)] imposes a rebuttable presumption of compliance. However, the legislature may decide that different rules are more appropriate for consumer transactions. Subsection (d) [addressing consumer remedies] reflects this possibility.

U.C.C. § 9-626 cmt. 4 (emphasis added). Nevada has exercised this option by adopting a bright-line deficiency bar for notice violations in consumer cases, enforced through *Levers* and NRS 104.9625(3)(b)'s mandatory minimum damages.

**3. The Burden-Shifting Framework Under NRS 104.9626(2)**

Once a debtor demonstrates noncompliance with any requirement of Part 6, "the secured party has the burden of proving that the collection, enforcement, disposition, or acceptance was conducted in accordance with this part." NRS 104.9626(2). This is not merely a burden of production—it is a burden of proof requiring admissible evidence establishing full compliance by a preponderance of the evidence.

In consumer-goods transactions, this burden is absolute: the secured party must prove compliance with every applicable requirement of Part 6, including pre-disposition notice (NRS 104.9611), commercial reasonableness (NRS 104.9610), and post-disposition accounting (NRS 104.9616). Failure to meet this burden results in the absolute bar established by *Levers*.

## IV. ARGUMENT

There is no genuine dispute of material fact on any element relevant to Count I.

### A. The Burden Has Shifted Irreversibly to NFCU Under NRS 104.9626(2), and NFCU Cannot Meet It

Plaintiff has presented prima facie evidence of NFCU's noncompliance with Article 9, Part 6, including notice and commercial reasonableness requirements. NFCU failed to provide pre-disposition notice, failed to provide post-disposition accounting, and cannot demonstrate a commercially reasonable disposition. Under NRS 104.9626(2), the burden now shifts to NFCU to prove compliance. NFCU has produced no such evidence and cannot produce it.

#### 1. The Mechanics of Burden-Shifting Under NRS 104.9626(2)

Nevada's burden-shifting framework is straightforward. Once the debtor demonstrates noncompliance with any requirement of Part 6, the secured party must affirmatively prove that every aspect of the disposition complied with Article 9. NRS 104.9626(2). This is not a burden of production—it is a burden of proof requiring admissible evidence establishing compliance by a preponderance of the evidence.

Here, Plaintiff has demonstrated three independent violations: (1) no authenticated pre-disposition notice, (2) no post-disposition accounting, and (3) commercially unreasonable disposition that destroyed collateral value. Each of these failures concerns "collection, enforcement, [or] disposition" of the collateral within the meaning of NRS 104.9626(2), so

NFCU now bears the burden of proving compliance with Article 9, Part 6. NFCU must now prove—not merely assert or speculate, but prove with admissible evidence—that it complied with NRS 104.9611, 104.9616, and 104.9610.

NFCU cannot meet this burden on the record before the Court. NFCU has no proof of mailing, no proof of delivery, no accounting, no sale documentation, and no explanation for how outdoor storage in 106°F heat that destroyed a $12,000–$18,000 battery satisfies the commercial reasonableness standard.

NFCU cannot cure these failures at the summary judgment stage, because Article 9 compliance is measured at the time of disposition, not during litigation. Belatedly produced documents with suspicious timing, missing proof of delivery, and conspicuous gaps cannot satisfy NRS 104.9626(2)'s burden.

**B. NFCU's Complete Failure to Provide Notice Bars Any Deficiency Under Levers**

NRS 104.9611(1) requires a secured party to "send to the debtor…a reasonable authenticated notification of disposition." This requirement is mandatory. See U.C.C. § 9-611 cmt. 2 ("The statute requires…the secured party to send notification"). Under *Levers*, failure to provide this notice in a consumer transaction bars any deficiency judgment as a matter of law. 560 P.2d at 919.

**1. NFCU Has No Admissible Evidence That Notice Was Sent or Received**

Here, NFCU has no reliable contemporaneous evidence that any legally compliant notice was ever sent or received. Plaintiff never received notice at any address. (Burch Decl. ¶¶ 32–34.) NFCU has no proof of mailing or delivery—no certified receipts, no tracking numbers, no delivery confirmation of any kind. Under *Levers*, this failure alone bars any deficiency. 560 P.2d at 919.

NFCU cannot satisfy NRS 104.9611 by producing undated, unauthenticated documents months after the fact. The statute requires contemporaneous proof that notice was "sent"—not that a document was created and placed in a file. NRS 104.9611(1) ("shall send").

**2. NFCU's Belated Production to the CFPB Reveals Significant Inconsistencies**

The purported notices NFCU belatedly produced to the CFPB reveal significant inconsistencies that preclude summary judgment in NFCU's favor and support summary judgment for Plaintiff.

NFCU was under federal regulatory review for "no notice" as of July 12, 2025. (Burch Decl. ¶¶ 35–37; Exs. 3, 3A.) A secured party with genuine contemporaneous notice records would ordinarily provide them promptly to a federal regulator investigating that precise issue. Instead, NFCU withheld these supposed notices for 58 days, only producing them on September 11, 2025—three days after Plaintiff sent a pre-suit settlement demand with draft complaint. (Burch Decl. ¶¶ 35–46; Exs. 3–5.)

This timeline is inconsistent with the conduct of a party that possessed contemporaneous proof of compliance. A secured party with readily available proof of mailing would logically provide it to a federal regulator investigating a "no notice" complaint. The 58-day delay, followed by production only after a draft complaint was received, creates a reasonable inference that the documents were not maintained in the ordinary course of business.

**3. NFCU's Own Records Contradict Its Litigation Position**

NFCU's billing statements for the post-repossession period expressly state: "This account statement is provided to you for informational purposes only and should not be construed as an attempt to contact you for payment. This is not an attempt to collect a debt." (Burch Decl. ¶¶ 47–48; Ex. 6, specifically lines 18–20.)

NFCU cannot disclaim collection activity in its billing statements while simultaneously claiming it was diligently sending legally required notices. That internal inconsistency precludes a finding of good faith compliance.

Further, NFCU's billing statements reflect that by late July 2025, NFCU had updated Plaintiff's name from "Joshua P Burch" to "JADE R BURCH." (Exs. 5–6, compare headers.) Yet the purported June 21, 2025 notice, produced months later, is still addressed to the outdated name at an outdated address. (Ex. 5, p. 1, line 3.)

**4. Even Assuming Authenticity, NFCU Has No Evidence of Delivery**

Even assuming the documents NFCU produced are authentic, NFCU has no admissible evidence that they were sent, no evidence of delivery, and internal records that conflict with its litigation position on notice. That is insufficient to satisfy NRS 104.9611 in a consumer transaction where strict compliance is required under *Levers*.

NFCU's failure is not a technicality—it is a substantive violation of Nevada's consumer protection framework. The notice requirement exists to give debtors meaningful opportunity to protect their interests before irreversible disposition occurs. NFCU deprived Plaintiff of that opportunity, and Nevada law bars the deficiency as a result. *Levers*, 560 P.2d at 919.

**Preemptive Response to NFCU's Anticipated Arguments:**

NFCU cannot argue "substantial compliance" because *Levers* requires strict compliance: notice is a "condition precedent" and failure to provide it "precludes any judgment for the deficiency." 560 P.2d at 919. NFCU cannot argue Plaintiff was not prejudiced, because *Levers* applies an absolute bar that does not require proof of prejudice. NFCU cannot cure the notice failure now through litigation discovery or supplemental filings—the compliance obligation arose at the time of disposition under NRS 104.9611(1), and NFCU's failure at that time is dispositive under *Levers*.

Because NFCU has no admissible evidence of sending legally compliant notice, and the evidence in the record strongly suggests the notices were not contemporaneously sent, there is no genuine dispute of material fact on the notice issue, and summary judgment on this ground is appropriate under *Levers*.

**C. NFCU's Failure to Provide Post-Disposition Accounting Provides an Independent Basis for Relief**

NRS 104.9616 requires a secured party to provide an accounting showing proceeds, expenses, and any alleged deficiency following disposition. Plaintiff received no such accounting. (Burch Decl. ¶ 49.)

Plaintiff made multiple authenticated written requests under NRS 104.9210, including the August 9, 2025 litigation hold letter. That letter expressly stated: "Pursuant to NRS 104.9616 and NRS 104.9210, I demand immediate production of a complete accounting." (Ex. 15, p. 2, ¶ 3.) Under NRS 104.9210(1)(b), this constituted a valid "authenticated demand" triggering NFCU's mandatory obligation to provide "a record of the account" within 14 days.

NFCU's Collateral_Risk department opened and read the August 9, 2025 letter twice on August 11, 2025, confirming receipt of the accounting demand. (Burch Decl. ¶¶ 49–51, 65–74; Ex. 15.) Despite this actual notice and authenticated demand, NFCU has provided no accounting whatsoever—not within 14 days, not within 90 days, and not to this day.

NFCU's ongoing concealment of records in "Inactive Accounts" only reinforces the violation. (Burch Decl. ¶ 52.) NFCU cannot simultaneously claim it conducted a commercially reasonable disposition while refusing to disclose any information about that disposition. This independent failure provides a separate basis for relief under NRS 104.9625–.9626.

**Preemptive Response to NFCU's Anticipated Arguments:**

NFCU cannot argue it has "no obligation" to provide accounting because NRS 104.9616 makes the obligation mandatory following authenticated demand under NRS 104.9210. NFCU cannot claim the request was unclear—Plaintiff's August 9, 2025 letter specifically referenced both statutes and demanded complete accounting. (Ex. 15, p. 2, ¶ 3.) NFCU acknowledged receiving that letter on August 11, 2025, yet has produced nothing in the three months since.

On this record, no reasonable factfinder could conclude that NFCU complied with NRS 104.9616, so there is no genuine dispute of material fact on NFCU's failure to provide a post-disposition accounting.

**D. NFCU Violated NRS 104.9610 and Cannot Prove Commercial Reasonableness**

"Every aspect of a disposition of collateral, including the method, manner, time, place and other terms, must be commercially reasonable." NRS 104.9610(2). When a deficiency is asserted, the secured party bears the burden of proving commercial reasonableness. NRS 104.9626(2); *Levers*, 560 P.2d at 919.

NFCU has produced no evidence regarding when the vehicle was sold, to whom, at what price, or what marketing efforts were used. That alone fails its burden. See *Sea-Ya Enters., LLC v. Berndt*, 2016 WL 11626970, at *4 (D. Nev. Aug. 24, 2016) (secured party failed to meet burden where no evidence of efforts to maximize value).

**1. Speedy's Binding Judicial Admissions Establish Commercial Unreasonableness as a Matter of Law**

As NFCU's repossession agent, Speedy Recovery, Inc. has admitted in its Answer that: (1) it repossessed the vehicle "pursuant to a lawful repossession order" from NFCU; (2) the vehicle was taken from a designated accessible parking space with a disability placard displayed; (3) the vehicle was stored outdoors in Las Vegas in June; and (4) Speedy created no inventory, took no photographs, and generated no condition documentation at repossession. (Ex. B – Speedy's Answer ¶¶ 1, 26, 36, 50, 61.)

These are binding judicial admissions under Fed. R. Civ. P. 8(b)(6) and foreclose any later attempt by NFCU to deny the manner of repossession, the ADA context, or the lack of basic documentation. NFCU is vicariously responsible for its agent's conduct in repossessing and storing the collateral. Because NFCU is responsible for the actions of its agent in carrying out a secured transaction, NFCU is bound by these admissions and cannot manufacture a factual dispute by contradicting its own agent's verified pleading. See *Podiatrist Ass'n, Inc. v. La Cruz Azul de P.R., Inc.*, 332 F.3d 6, 13 (1st Cir. 2003) ("A judicial admission is a formal admission in

a pleading... which has the effect of withdrawing a fact from issue and dispensing wholly with the need for proof.").

**2. NFCU's Agents Caused $12,000–$18,000 in Collateral Loss Through Reckless Mishandling**

The undisputed record goes further. NFCU's agents stored the electric vehicle outdoors in extreme heat (106°F+), allowed the battery to discharge to critically low levels, and towed the vehicle without engaging Tesla's required "Tow Mode"—all contrary to manufacturer guidelines. (Burch Decl. ¶¶ 53–57; Ex. 13, specifically weather service report showing 106°F on June 18, 2025; Ex. B ¶ 50.)

Tesla's October 1, 2025 service invoice confirms that this misuse caused catastrophic battery failure requiring $12,000–$18,000 replacement, as the vehicle can no longer charge beyond roughly 30% capacity. (Burch Decl. ¶¶ 60–63; Ex. 7, specifically invoice line item 4 showing "High Voltage Battery replacement required.")

A secured party cannot satisfy Article 9 by creating the very loss it then attributes to depreciation or market conditions. The duty of reasonable care under NRS 104.9207(1) continues through disposition. NFCU breached that duty, destroyed significant value, and cannot now claim the resulting fire-sale disposition was "commercially reasonable."

**3. NFCU's Breach of NRS 104.9207(1) Duty of Reasonable Care**

NFCU's duty of reasonable care under NRS 104.9207(1) is a separate and independent obligation from its duty under NRS 104.9610 to conduct a commercially reasonable disposition. NRS 104.9207(1) provides that "a secured party shall use reasonable care in the custody and preservation of collateral in the secured party's possession."

Storing a Tesla electric vehicle outdoors in 106°F heat until its battery discharges to critically low levels and requires warranty replacement (internal replacement value $12,000–$18,000) is a per se breach of this duty. Tesla's manufacturer guidelines explicitly require climate-controlled storage and proper charging maintenance. (Burch Decl. ¶¶ 55-57.) NFCU's agent ignored these requirements, causing catastrophic and permanent damage to the collateral's primary component.

This breach is independent of the commercial reasonableness analysis under NRS 104.9610. Even if NFCU could prove it conducted a commercially reasonable sale (which it cannot), NFCU violated its statutory duty of care by allowing the collateral to be destroyed while in its custody. That independent violation bars any deficiency under NRS 104.9625(2)(a) and *Levers*.

**4. NFCU Compounded the Violation by Creating No Documentation**

Speedy admits it created no inventory, took no photographs, and generated no condition records. (Ex. B ¶¶ 36, 61.) This documentation failure has the practical effect of insulating NFCU's disposition from meaningful challenge. Without contemporaneous records, NFCU is positioned to assert the vehicle's condition and the sale's reasonableness without factual rebuttal. Nevada

law does not permit a secured party to satisfy its burden of proof based on the absence of the very records it was obligated to create.

Nevada law does not permit secured parties to profit from their own failure to document. The absence of inventory, photographs, and condition records precludes NFCU from meeting its burden under NRS 104.9626(2).

In light of Speedy's binding admissions, NFCU cannot create a triable issue by vague argument or speculation; there is no genuine dispute that no documentation exists.

**5. NFCU Destroyed Critical Evidence After Receiving Litigation Hold**

On August 9, 2025 at 1:26 PM Central Time, Plaintiff sent NFCU a formal litigation hold letter via email to 11 NFCU addresses, including General Counsel, Legal Department, and Collateral_Risk. This letter explicitly:

- Directed NFCU to "halt any sale, auction, transfer, or disposition" of the vehicle
- Required preservation of "all GPS/telemetry data" and "all photographs taken of the vehicle"
- Warned that evidence destruction would constitute "intentional spoliation"
- Specified remedies including "adverse inference sanctions"

On Monday, August 11, 2025, NFCU's Collateral_Risk department opened and read the litigation hold email twice: first at 7:38:24 AM Central Time, and again at 7:50:06 AM—just 12

minutes later. Plaintiff received automated read receipts confirming both instances. (Burch Decl. ¶¶ 65-74; Ex. 15, read receipts from Collateral_Risk@navyfederal.org.)

Collateral_Risk—the department responsible for authorizing vehicle sales—read the litigation hold email twice within 12 minutes on August 11, 2025. (Burch Decl. ¶¶ 65–74; Ex. 15.) NFCU therefore had actual notice of the preservation duty and the specific evidence to be preserved before it sold the vehicle.

NFCU then sold the vehicle, destroying the exact evidence Plaintiff specifically demanded be preserved.

The destroyed evidence included:

- Tesla telemetry data showing precise GPS location during storage (would have proven outdoor storage)
- State of charge logs showing when battery discharged to critically low levels (would have proven mishandling)
- Key-pair authentication records showing whether "Tow Mode" was engaged (would have proven improper towing)
- Service history showing condition before and after repossession (would have proven causation of battery damage)
- Physical evidence of battery degradation from critically low charge levels

This evidence was uniquely accessible only through the vehicle itself. Once NFCU sold the vehicle, Plaintiff lost permanent access to this electronic data, which Tesla stores in the vehicle's onboard systems and links to the VIN. Because the destroyed data goes directly to commercial reasonableness, the Court must resolve any resulting uncertainty against NFCU under NRS 104.9626(2). Article 9's burden-shifting framework leaves no room for evidentiary gaps created by the secured party itself.

NFCU cannot claim inadvertence, lack of notice, or miscommunication when:

1. The litigation hold went to the exact department that authorizes sales
2. That department read it twice within 12 minutes
3. The litigation hold specifically listed the GPS/telemetry data to be preserved
4. NFCU sold the vehicle after receiving this notice

These facts present a strong basis for sanctions and an adverse inference under Rule 37(e)(2) by separate motion. For purposes of this motion, the critical point is that NFCU cannot now meet its burden under NRS 104.9626(2) because it disposed of the very evidence that would have allowed it to do so.

**<u>Preemptive Response to NFCU's Anticipated Arguments:</u>**

NFCU cannot argue the Tesla battery failure was pre-existing because Plaintiff's payment history shows regular payments through June 2025, inconsistent with a non-functional vehicle. NFCU cannot claim "market conditions" justified a low sale price without producing evidence of the

price obtained, the marketing efforts undertaken, or the market analysis conducted—none of which NFCU has provided. NFCU cannot argue it had "no duty" to preserve telemetry after receiving an express litigation hold that specifically demanded preservation of electronic data.

NFCU has not produced a single piece of evidence regarding the time, manner, marketing, or price of disposition, and its own agent admits mishandling and lack of documentation. NFCU therefore cannot meet its burden under NRS 104.9626(2), and no genuine dispute of material fact exists as to commercial unreasonableness.

**E. Targeted Rule 56(g) Findings to Narrow Issues for Trial**

The repossession occurred during an acute medical emergency. Plaintiff does not seek summary judgment on her NRS 41.1395 claim at this stage. She seeks only narrow, foundational findings under Rule 56(g) to avoid relitigating undisputed facts at a later evidentiary hearing. The undisputed record supports targeted Rule 56(g) factual findings that will streamline subsequent proceedings.

**1. Plaintiff Meets the Statutory Definition of "Vulnerable Person"**

NRS 41.1395(4)(e) defines a "vulnerable person" as one with a "physical or mental impairment that substantially limits one or more major life activities." The record establishes: uncontrolled seizure disorder substantially limiting self-care, walking, and driving (Burch Decl. ¶¶ 7, 12–15; Exs. 10–12); a state-issued ADA placard (Burch Decl. ¶¶ 8–9; Ex. 9); dependency on life-sustaining medications (Burch Decl. ¶¶ 10–11); and contemporaneous medical documentation

from her treating neurologist confirming the need for emergency intervention (Burch Decl. ¶¶ 17–18; Ex. 11).

**2. The Timeline and Constructive Notice Are Established by the Record**

The timing is established by Plaintiff's sworn declaration and contemporaneous medical records: 16 seizures in 72 hours (June 14–16), neurologist's emergency admission order on June 16, hospital refusals twice that day, repossession 48 hours later in 106°F heat with medications inside, and 17th seizure within hours of the repossession. (Burch Decl. ¶¶ 13–15, 17–21, 23–31; Exs. 9–14.)

NFCU's agents had multiple forms of constructive notice: the ADA placard displayed in the window, visible medical equipment, the marked accessible parking space, and the extreme heat. (Ex. B ¶ 26; Burch Decl. ¶¶ 24–28; Exs. 9, 13.)

**3. The Court Should Enter Limited Factual Findings**

Even reserving the ultimate determination of exploitation liability and doubled damages for a later evidentiary hearing, the record supports Rule 56(g) findings establishing Plaintiff's vulnerable-person status and the specific medical and timing facts identified in the Prayer for Relief. Plaintiff seeks these limited findings under Rule 56(g) solely to establish foundational facts for her reserved NRS 41.1395 claim and to streamline future proceedings, not as a final adjudication of that count. These findings will establish the factual predicates for any damages calculation.

**F. Remedies**

**1. Mandatory Statutory Damages: $11,965.28**

Under NRS 104.9625(3)(b), Plaintiff is entitled to mandatory statutory damages equal to the finance charge plus 10% of the principal obligation:

| Component | Amount |
| --- | --- |
| Finance charge | $5,986.20 |
| 10% of principal ($59,790.84) | $5,979.08 |
| **Total Statutory Damages** | **$11,965.28** |

No additional proof of harm is required for this statutory minimum. See NRS 104.9625(3)(b). This is not a penalty—it is a liquidated damages provision reflecting the legislature's judgment about minimum harm from UCC violations in consumer transactions. Once noncompliance is established under *Levers*, these statutory damages are automatic.

**2. Absolute Deficiency Bar Under Levers**

Under *Levers*, NFCU's failure to comply with Article 9's notice and commercial reasonableness requirements in a consumer-goods transaction bars any deficiency judgment. 560 P.2d at 919 ("The secured party's failure to give notice as required by the statute precludes any judgment for the deficiency."). NFCU continues to report a deficiency balance despite having no legal right to collect it.

The Court should declare any claimed deficiency void and unenforceable under *Levers*. NFCU cannot be permitted to profit from its own noncompliance.

**3. Additional Relief Reserved for Evidentiary Hearing**

Plaintiff does not presently seek summary judgment on the full measure of compensatory damages or on all remaining claims. The amount of compensatory damages—battery replacement, medical expenses, loss of use, emotional distress—and the application of NRS 41.1395's doubling provision can be determined at a subsequent evidentiary hearing.

However, to demonstrate that these reserved damages are substantial and based on documented harm, Plaintiff provides the following preliminary framework:

**Reserved Compensatory Damages (Subject to Proof at Evidentiary Hearing):**

| Damage Category | Basis | Estimated Amount |
|---|---|---|
| Battery damage / collateral destruction | Tesla diagnostic and warranty replacement invoice (Ex. 7) showing high-voltage battery failure with internal replacement value of $12,000–$18,000; vehicle returned with diminished utility | Economic impact to be determined |
| Loss of use | 57 days without vehicle × $75/day rental value | $4,275 |
| Emotional distress | Seizure crisis while separated from life-sustaining medications; loss of independence and mobility | Subject to testimony |

**Potential NRS 41.1395 Enhancement:** If the Court finds exploitation of a vulnerable person, NRS 41.1395 authorizes doubling of all compensatory damages. This could result in total compensatory damages (excluding statutory damages) of approximately $25,000–$30,000 before doubling, and $50,000–$60,000 after application of NRS 41.1395.

**Alternative Liability Theory (In the Event the Court Finds Any Issue of Fact on Count I):**

In the alternative, if the Court finds any genuine dispute of material fact regarding NFCU's UCC compliance (which Plaintiff submits does not exist), Plaintiff seeks partial summary judgment on the following alternative bases:

1. Deficiency bar under *Levers* based solely on lack of authenticated pre-disposition notice, without reaching commercial reasonableness;
2. Deficiency bar based solely on failure to provide post-disposition accounting under NRS 104.9616, without reaching notice or commercial reasonableness;
3. Summary judgment that NFCU bears the burden of proof on all Article 9 compliance issues at trial under NRS 104.9626(2) and *Levers*, with findings that Plaintiff has established prima facie noncompliance.

Each of these alternative theories provides an independent path to barring any deficiency judgment under *Levers*.

## V. CONCLUSION

The material facts relevant to Count I are not genuinely disputed. NFCU repossessed and disposed of a consumer-goods vehicle without (1) providing authenticated pre-disposition notice, (2) providing any post-disposition accounting despite authenticated demand, or (3) conducting and documenting a commercially reasonable disposition.

Under *Levers* and NRS 104.9625–.9626, those failures in a consumer-goods transaction bar any deficiency and entitle Plaintiff to statutory damages equal to the finance charge plus ten percent of the principal obligation. The same record supports targeted Rule 56(g) findings regarding Plaintiff's vulnerable-person status and the medical crisis context, while leaving the amount of additional compensatory damages and any NRS 41.1395 enhancement for a later evidentiary hearing.

Resolving Count I now will narrow the issues for trial, provide clarity regarding NFCU's inability to recover any deficiency under *Levers*, and allow the parties to focus any remaining litigation on the amount, not the existence, of liability.

There are no material factual disputes, and Count I may be resolved entirely as a matter of law.

NFCU's liability is established through three independent failures: (1) **No Notice under Levers**—NFCU cannot prove it sent authenticated pre-disposition notice, barring any deficiency under *Levers*, 560 P.2d at 919; (2) **No Accounting despite authenticated demand**—NFCU opened, read, and ignored Plaintiff's demand twice; and (3) **No Proof of Commercial**

**Reasonableness**—NFCU's agent caused $12,000–$18,000 in collateral loss, created no documentation, and NFCU's own spoliation destroyed the evidence that would have proven these violations. Any one of these failures is dispositive under Nevada law. Together, they mandate judgment as a matter of law under *Levers*.

Because the record contains no evidence that could allow a reasonable factfinder to conclude that NFCU complied with NRS 104.9611, 104.9616, or 104.9610, summary judgment is appropriate.

---

**WHEREFORE**

Plaintiff respectfully requests that the Court:

1. Grant partial summary judgment in Plaintiff's favor as to liability on Count I (NRS Chapter 104, Article 9, Part 6 violations);
2. Enter findings under NRS 41.1395(4)(e) and Fed. R. Civ. P. 56(g) that:
    - (a) Plaintiff is a "vulnerable person" as defined by NRS 41.1395(4)(e); and
    - (b) the following facts are established for purposes of this action under Fed. R. Civ. P. 56(g):
        1. Plaintiff experienced 16 documented seizures over 72 hours preceding repossession (June 14–16, 2025);
        2. A medical professional assessed the need for emergency hospitalization on June 16, 2025;

3. University Medical Center refused emergency care twice on June 16, 2025, despite the neurologist's written order;
4. The vehicle was repossessed on June 18, 2025, from a marked ADA space with disability placard displayed;
5. The vehicle contained life-sustaining medications including Ativan, EpiPen, insulin, and an inhaler;
6. The repossession occurred in 106°F heat;
7. Plaintiff suffered a 17th seizure within hours of the repossession, after being deprived of access to medications that had been stored in the vehicle, with the precise causation and resulting damages reserved for subsequent evidentiary proceedings;

3. Declare that any claimed deficiency is absolutely barred under NRS 104.9611, 104.9625, and 104.9626, and under *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 919 (Nev. 1977);
4. Award statutory damages of $11,965.28 under NRS 104.9625(3)(b);
5. Set an evidentiary hearing limited to determination of additional compensatory damages under NRS 104.9625(2)(b) and application of NRS 41.1395;
6. Order NFCU to:
    - (a) cease asserting, collecting, or reporting any deficiency; and
    - (b) provide a complete accounting under NRS 104.9616 and 104.9210 within 14 days and file a notice of compliance with the Court;
7. Award Plaintiff her costs of suit;

8. Enter an order under Fed. R. Civ. P. 56(g) establishing that, for all further proceedings in this action:
   - (a) Plaintiff has demonstrated prima facie noncompliance with NRS 104.9611, 104.9616, and 104.9610; and
   - (b) NFCU therefore bears the burden of proving compliance with all requirements of NRS 104.9611 through 104.9626, pursuant to NRS 104.9626(2) and *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 919 (Nev. 1977);
9. Grant such further relief as the Court deems just, including:
   - (a) permitting Plaintiff to seek appropriate sanctions or adverse inferences under Fed. R. Civ. P. 37(e) by separate motion if necessary; and
   - (b) authorizing Plaintiff to seek reasonable attorney's fees under any applicable provision if Plaintiff retains counsel for enforcement of this Court's orders;
10. Reserve for further proceedings all other claims against NFCU not addressed in this motion, and all claims against Speedy Recovery, Inc.; and
11. Enter such other and further relief as the Court deems just and proper.

Respectfully submitted this 19th day of November, 2025.

/s/ Jade Riley Burch
Jade Riley Burch
Plaintiff, Pro Se

# CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2025, I electronically filed the foregoing with the Clerk of Court for the United States District Court, District of Nevada, using the Court's CM/ECF system. I certify that all parties of record are registered CM/ECF users and that service will be accomplished by the Court's CM/ECF system upon all parties of record.

/s/ Jade Riley Burch
Jade Riley Burch
Plaintiff, Pro Se

## EXHIBIT INDEX

**NOTE:** All exhibit labels refer to exhibits filed concurrently with this motion, not exhibits to the Complaint.

### PRIMARY DECLARATION

| Exhibit | Description |
|---|---|
| A | Declaration of Jade Riley Burch in Support of Motion for Partial Summary Judgment |
| B | Excerpts from Speedy Recovery, Inc.'s Answer (¶¶ 1, 26, 36, 50, 61) |

### CORE EVIDENTIARY EXHIBITS

#### Foundation Documents

| Exhibit | Description |
|---|---|
| 1 | Loan Agreement (ePromissory Note, Security Agreement, Disclosure) |

#### UCC Notice Violations

| Exhibit | Description |
|---|---|
| 3 | CFPB Complaint #250712-22270607 (July 12, 2025) |
| 3A | CFPB Complaint #250715-22348848 (July 15, 2025) |
| 3B | CFPB Complaint #250911-23987008 (September 11, 2025) |

| Exhibit | Description |
|---|---|
| 4 | NFCU Response to CFPB (July 21, 2025): "Review in Progress" |
| 5 | NFCU's Purported Pre-Disposition Notices (Produced September 11, 2025) |
| 6 | NFCU Billing Statements with "Informational Only" Disclaimers |

**Commercial Unreasonableness**

| Exhibit | Description |
|---|---|
| 7 | Tesla Service Invoice (October 1, 2025) – Battery Replacement Required |

**Vulnerable Person / Medical Crisis**

| Exhibit | Description |
|---|---|
| 9 | ADA Handicap Placard (Displayed at Repossession) |
| 10 | Triage Alert: "HIGH-RISK SEIZURE PATIENT" (June 16, 2025) |
| 11 | Neurologist Letter (June 16, 2025) – Emergency Admission Order |
| 12 | UMC Incident Summary – Two Refusals of Care |
| 13 | National Weather Service Report – 106°F (June 18, 2025) |
| 14 | Post-Repossession Seizure Log (17th Seizure) |

**Ongoing Harm**

| Exhibit | Description |
|---|---|
| 15 | Litigation Hold Letter (August 9, 2025) with Delivery Confirmation |
| 16 | Pre-Litigation Settlement Communications (June 22 - July 18, 2025) |

**#END#**

# EXHIBIT A

## Declaration of Jade Riley Burch in Support of Motion for Partial Summary Judgment

**Burch v. Navy Federal Credit Union., et al.**
Case No. 2:25-cv-01897-MMD-DJA
United States District Court
District of Nevada

---

Submitted by:
**Jade Riley Burch**
Plaintiff, Pro Se

Jade Riley Burch
Plaintiff, Pro Se
222 Karen Avenue, Unit 1207
Las Vegas, NV 89109
Tel: (614) 725-9452
Email: jaderburch@gmail.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| **Jade Riley Burch,**<br><br>Plaintiff, Pro Se,<br><br>vs.<br><br>**Navy Federal Credit Union; Speedy Recovery, Inc.; and Does 1–10,**<br><br>Defendants. | **Case No.: 2:25-cv-01897-MMD-DJA**<br><br>**DECLARATION OF JADE RILEY BURCH IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## I. INTRODUCTION AND PERSONAL KNOWLEDGE

1. I am the Plaintiff in this action. I am over 18 years of age and competent to testify to the matters stated herein. I have personal knowledge of the facts set forth in this declaration and could and would testify competently to them if called as a witness. I make this declaration in support of my Motion for Partial Summary Judgment against Defendant Navy Federal Credit Union ("NFCU").

2. Where I refer to attached exhibits, those exhibits are true and correct copies of the documents they purport to be, and I am the custodian of the original documents or received them in the ordinary course of this dispute. The exhibits referenced in this

declaration are true and correct copies of records I obtained or created in the ordinary course of this dispute.

## II. THE LOAN AGREEMENT AND VEHICLE

3. On July 1, 2021, I entered into a loan agreement with NFCU to finance the purchase of a 2021 Tesla Model 3 AWD, Vehicle Identification Number (VIN) ending in 9112. A true and correct copy of the loan agreement, including the ePromissory Note, Security Agreement, and Truth-in-Lending Disclosure, is attached as **Exhibit 1**.
4. The principal amount financed was $59,790.84, with an Annual Percentage Rate (APR) of 3.99% over a 72-month term. The total finance charge was $5,986.20, making the total amount to be repaid $65,777.04.
5. The loan agreement states that NFCU will "protect the collateral." When NFCU or its agents had possession or control of the vehicle, I understood that language to mean that NFCU would take reasonable care of the vehicle's condition while it was in its possession or under its control.
6. Between July 2021 and June 2025, I made payments to NFCU totaling $6,071.00. NFCU has since locked me out of access to my complete payment history in its online portal.

## III. VEHICLE USE AND DISABILITY STATUS

7. I purchased and used the Tesla Model 3 primarily for my personal, household, and medical transportation needs. This was a consumer-goods transaction as defined by NRS 104.9102(1)(a) and the corresponding provisions of Article 9 of the Uniform Commercial Code.
8. I am a person with disabilities within the meaning of the Americans with Disabilities Act. I have a diagnosed seizure disorder that substantially limits major life activities including self-care, walking, and driving.
9. The State of Nevada issued me a permanent disability parking placard, which I displayed in my vehicle at all times. A true and correct copy of my ADA handicap placard is attached as **Exhibit 9**.
10. Due to my seizure disorder, I am dependent on multiple life-sustaining medications that I must have immediate access to at all times, including: Ativan (for seizure management), an EpiPen (for severe allergic reactions), insulin, and an emergency inhaler.
11. These medications were stored in my vehicle at the time of repossession because I relied on my vehicle for daily transportation and needed immediate access to emergency medications.

## IV. THE MEDICAL CRISIS (JUNE 14–16, 2025)

12. I have a documented history of severe seizures, including grand mal seizures with loss of consciousness. My condition requires strict medication adherence and emergency medical intervention when seizures escalate.
13. Between June 14–16, 2025, I experienced a severe seizure cluster—16 documented seizures over a 72-hour period. These included grand mal seizures with complete loss of consciousness, foaming at the mouth, and post-ictal paralysis (Todd's paresis).
14. During this period, I was unable to walk independently or perform basic self-care. My roommate had to assist me with all activities of daily living.
15. The seizures were the worst I had experienced in years. A true and correct copy of my medical triage alert documenting my status as a "HIGH-RISK SEIZURE PATIENT" is attached as **Exhibit 10**.
16. On June 16, 2025, I contacted my treating neurologist, who assessed me remotely via telemedicine due to the severity and frequency of the seizures.
17. My neurologist determined that I required immediate emergency admission for observation, stabilization, and medication adjustment. She issued a written order directing me to go to University Medical Center (UMC) emergency department immediately.
18. A true and correct copy of my neurologist's June 16, 2025 letter ordering emergency admission is attached as **Exhibit 11**.

19. Following my neurologist's order, I went to UMC's emergency department on June 16, 2025. Despite my neurologist's written admission order and my visible medical distress, UMC refused to admit me or even take my vital signs.

20. I returned to UMC later that same day for a second attempt. UMC again refused care, denying me entry to the emergency department without any medical assessment.

21. A true and correct summary of the June 16, 2025 UMC incidents, including the two refusals of care, is attached as **Exhibit 12**.

22. After being refused emergency care twice on June 16, 2025, I was forced to manage the ongoing seizure crisis at home through strict medication adherence and rest. All of my emergency medications were stored in my vehicle for immediate access.

## V. THE REPOSSESSION (JUNE 18, 2025)

23. On June 18, 2025—just 48 hours after the hospital refusals and while I was still experiencing seizure activity—NFCU caused my vehicle to be repossessed.

24. The vehicle was parked in a clearly marked ADA-accessible parking space at Downtown Summerlin, Las Vegas, Nevada.

25. My permanent disability placard was displayed in the windshield at the time of repossession.

26. The temperature in Las Vegas on June 18, 2025, was 106°F. A true and correct copy of the National Weather Service report for that date is attached as **Exhibit 13**.

27. The repossession occurred during the afternoon in extreme heat while I was attempting to rest and manage my ongoing medical crisis.

28. All of my life-sustaining medications were inside the vehicle when it was repossessed, including my Ativan (anti-seizure medication), EpiPen, insulin, and emergency inhaler.

29. I lost immediate access to these critical medications when NFCU took my vehicle.

30. Within hours of the repossession and losing access to my Ativan and other medications, I suffered my 17th seizure. A true and correct copy of my post-repossession seizure log documenting the 17th seizure is attached as **Exhibit 14**.

## VI. LACK OF PRE-DISPOSITION NOTICE

31. I never received any authenticated pre-disposition notice from NFCU at any time before, during, or after the repossession.

32. I received no notice by mail, email, phone call, text message, or any other means informing me that NFCU intended to sell my vehicle or providing me any opportunity to redeem it before sale.

33. NFCU has never claimed that I actually received notice—only that NFCU purportedly sent notice to an outdated address.

## VII. CFPB COMPLAINTS AND NFCU'S SUSPICIOUS DOCUMENT PRODUCTION

34. On July 12, 2025, I filed my first complaint with the Consumer Financial Protection Bureau (CFPB) regarding NFCU's repossession and failure to provide any pre-disposition notice. This was assigned CFPB Complaint No. 250712-22270607. A true and correct copy is attached as **Exhibit 3**.

35. In my July 12, 2025 CFPB complaint, I specifically stated that I had received no notice from NFCU before the sale of my vehicle, in violation of NRS 104.9611.

36. On July 15, 2025, I filed a second CFPB complaint (No. 250715-22348848) again challenging NFCU's failure to provide pre-disposition notice. A true and correct copy is attached as **Exhibit 3A**.

37. On July 21, 2025, NFCU responded to the CFPB regarding my July 15 complaint, stating only that "review of this matter is in progress."

38. A true and correct copy of NFCU's July 21, 2025 response to the CFPB is attached as **Exhibit 4**.

39. Despite my specific complaints about lack of notice, NFCU did not produce any purported pre-disposition notices to the CFPB between July 15 and September 11, 2025—a period of 58 days.

40. On September 8, 2025, I sent NFCU a pre-suit settlement demand letter with a draft complaint attached, detailing all UCC violations including the lack of notice.

41. Three days later, on September 11, 2025, I filed a third CFPB complaint (No. 250911-23987008). A true and correct copy is attached as **Exhibit 3B**.

42. On September 11, 2025—the same day as my third CFPB complaint and just three days after receiving my pre-suit demand with draft complaint—NFCU suddenly uploaded two purported pre-disposition notices to the CFPB portal.

43. These purported notices were both addressed to my former legal name ("Joshua P Burch") at an outdated address, despite NFCU having my current legal name and address on file by that time.

44. NFCU provided no proof of mailing with these documents—no certified mail receipts, no tracking numbers, no delivery confirmation, and no postal service records of any kind. True and correct copies of the purported notices NFCU produced on September 11, 2025, are attached as **Exhibit 5**.

## VIII. NFCU'S CONTRADICTORY BILLING STATEMENTS

45. After the repossession, I continued to receive billing statements from NFCU for the periods June 21–July 20, 2025, and July 21–August 20, 2025.

46. Both statements contain the following disclaimer at lines 18–20: "This account statement is provided to you for informational purposes only and should not be construed as an attempt to contact you for payment. This is not an attempt to collect a debt." True and correct copies of these billing statements are attached as **Exhibit 6**.

## IX. FAILURE TO PROVIDE POST-DISPOSITION ACCOUNTING

47. NFCU has never provided me with any post-disposition accounting as required by NRS 104.9616.

48. I made multiple authenticated written requests for a complete accounting showing the sale price, expenses, and any claimed deficiency.

49. On August 9, 2025, I sent NFCU a formal litigation hold letter via email to 11 different NFCU email addresses, including General Counsel, Legal Department, and Collateral_Risk@navyfederal.org.

50. In that letter, I specifically stated: "Pursuant to NRS 104.9616 and NRS 104.9210, I demand immediate production of a complete accounting."

51. Despite this clear and authenticated demand, NFCU has provided no accounting whatsoever—not within the required 14 days, not within 90 days, and not to this day.

52. NFCU has moved my loan records into "Inactive Accounts" sections of my online banking portal, which has made it difficult for me to access payoff information and full account history.

## X. COMMERCIAL UNREASONABLENESS AND COLLATERAL DAMAGE

53. After repossessing my Tesla Model 3, NFCU's agent Speedy Recovery, Inc. stored the vehicle outdoors rather than in climate-controlled storage.

54. Las Vegas temperatures in June 2025 regularly exceeded 100°F. Speedy Recovery admits in its Answer to the Complaint that "the vehicle was stored outdoors" and acknowledges that "weather conditions in Las Vegas, Nevada, can be hot during the month of June."

55. Tesla electric vehicles require specific handling procedures, including maintaining battery charge and using "Tow Mode" when the vehicle is transported.

56. NFCU's agents allowed my vehicle's high-voltage battery to discharge to critically low levels while stored in extreme heat.

57. The vehicle was also towed without engaging Tesla's "Tow Mode," contrary to manufacturer guidelines.

58. On October 1, 2025, I arranged for Tesla to inspect the vehicle to assess its condition.

59. Tesla issued a service invoice diagnosing catastrophic high-voltage battery failure and replaced the battery under warranty, reflecting an internal replacement value of approximately $12,000–$18,000 for the high-voltage battery replacement. A true and correct copy of the Tesla service invoice dated October 1, 2025, is attached as **Exhibit 7**.

60. Before the warranty replacement, I observed that the vehicle could not charge beyond approximately 30% capacity, which made it substantially less valuable and, for my purposes, potentially unusable.

61. Based on the timing and the way the vehicle was stored and allowed to discharge to a critically low charge level after repossession, I believe this damage to the vehicle's primary power system was caused by NFCU's agents' mishandling of the collateral.

62. Speedy Recovery admits in its Answer that it created no inventory of the vehicle's contents, took no photographs documenting the vehicle's condition at repossession, and generated no condition report.

63. NFCU has never disclosed when the vehicle was sold, to whom it was sold, what price was obtained, or what marketing efforts were undertaken.

64. NFCU has provided no documentation whatsoever regarding the sale process, sale price, or efforts to maximize the sale value.

## XI. NFCU'S DESTRUCTION OF EVIDENCE AFTER LITIGATION HOLD

65. As stated above, on August 9, 2025 at 1:26 PM Central Time, I sent a formal litigation hold letter to NFCU via email.

66. This letter was sent to 11 different NFCU email addresses to ensure receipt by the appropriate personnel.

67. The litigation hold letter explicitly directed NFCU to:

- Halt any sale, auction, transfer, or disposition of the vehicle;
- Preserve all GPS/telemetry data embedded in the vehicle's systems;
- Preserve all photographs taken of the vehicle; and
- Preserve all service records and charging logs.

68. The letter specifically warned that destruction of evidence would constitute intentional spoliation and could result in adverse inference sanctions.

69. I sent this letter using email tracking technology that provides read receipts when the recipient opens the email.

70. The email was sent to Collateral_Risk@navyfederal.org, among other addresses.

71. On Monday, August 11, 2025 at 7:38:24 AM Central Time, someone at NFCU's Collateral_Risk department opened and read my August 9, 2025 litigation hold email.

72. Just 12 minutes later, at 7:50:06 AM Central Time on August 11, 2025, the same Collateral_Risk email account opened and read the litigation hold letter a second time.

73. I received automated read receipts confirming both instances of NFCU's Collateral_Risk department opening and reading my litigation hold letter.

74. A true and correct copy of my August 9, 2025 litigation hold letter with delivery confirmation and read receipts is attached as **Exhibit 15**.

75. Despite having actual knowledge of the litigation hold and the specific evidence preservation requirements, NFCU sold the vehicle after August 11, 2025.

76. By selling the vehicle, NFCU destroyed the embedded telemetry data, GPS location logs, state-of-charge records, key-pair authentication logs, and service history that would have proven exactly where the vehicle was stored, how the battery was allowed to discharge, and whether proper towing procedures were followed.

77. This evidence was uniquely accessible only through the vehicle itself. Tesla stores this data in the vehicle's onboard computer systems linked to the VIN.

78. Once NFCU sold the vehicle, I permanently lost access to this critical electronic evidence.

## XII. PRE-LITIGATION SETTLEMENT EFFORTS

79. Before filing this lawsuit, I made extensive good-faith efforts to resolve this dispute directly with NFCU.

80. On June 22, 2025—just four days after the repossession—I sent my first written settlement demand to NFCU's Collateral_Risk department at Collateral_Risk@navyfederal.org.

81. This June 22 communication provided NFCU with detailed information about my disability status, the seizure crisis, the hospital refusals, the ADA parking space, my medications being in the vehicle, and the UCC violations.

82. Between June 22 and July 18, 2025, I sent a total of eleven (11) separate written communications to various NFCU departments and executives, including:

- NFCU Legal Department;
- Executive Resolutions Team;
- Chief Legal Officer;
- Board of Directors; and
- Collateral Risk Department.

83. A true and correct copy of all pre-litigation settlement communications is attached as **Exhibit 16**.

84. Each of these communications provided NFCU with:

- Specific details about my disability and medical crisis;
- Evidence of UCC violations;
- Reasonable settlement proposals;
- Clear deadlines for response; and
- Warnings about the consequences of non-response.

85. My settlement demands were reasonable and aimed at resolving the matter without litigation.

86. I requested:

- Return of my vehicle or fair compensation for its value;
- Reimbursement of medical expenses caused by losing access to medications;
- Compensation for the battery damage NFCU's agents caused;
- Correction of any credit reporting; and
- A written commitment not to pursue a deficiency.

87. I provided NFCU with clear deadlines, typically 10–14 days, to respond to each communication.

88. I explained in each communication that failure to respond would result in litigation.

89. I provided NFCU with substantial evidence supporting my claims, including:

- Medical records documenting the seizure crisis;
- The neurologist's emergency admission order;
- Documentation of hospital refusals;
- Weather service reports showing 106°F temperature;
- Photographs of the ADA parking space; and
- Legal analysis of the UCC violations.

90. My communications were professional, factual, and solution-oriented.

91. I never made threats or engaged in any improper conduct.

92. I simply explained the facts, the law, and the harm I suffered, and requested fair compensation.

93. Despite receiving eleven separate written communications over a period of nearly one month, NFCU never responded to any of them.

94. NFCU never acknowledged receipt of my letters.

95. NFCU never requested additional time to investigate.

96. NFCU never made any counteroffer or settlement proposal.

97. NFCU never disputed any of the facts I presented.

98. NFCU maintained complete radio silence for the entire pre-litigation period.

99. NFCU's pattern of non-response continued even after I sent the August 9, 2025 litigation hold letter.

100. NFCU's Collateral_Risk department—the same department that received my June 22 settlement demand—opened and read the litigation hold letter twice on August 11, 2025.

101. The fact that the Collateral_Risk department opened my June 22 settlement demand shows that NFCU had actual knowledge of my disability status and medical crisis more than six weeks before receiving the litigation hold.

102. Yet NFCU proceeded to sell the vehicle anyway, destroying critical evidence after being on actual notice of both the underlying facts and the pending litigation.

103. I filed this lawsuit only after exhausting all reasonable pre-litigation settlement efforts.

104. I gave NFCU every opportunity to resolve this matter fairly without court intervention.

105. NFCU chose not to respond, not to negotiate, and not to correct or address the violations I identified in my communications.

106. I was left with no choice but to seek judicial relief to enforce my rights and obtain compensation for the substantial harm NFCU caused.

## XIII. EXECUTION

I declare under penalty of perjury under the laws of the United States of America and the State of Nevada that the foregoing is true and correct.

Executed this 19th day of November, 2025, at Las Vegas, Nevada.

/s/ Jade Riley Burch

Jade Riley Burch

Plaintiff, Pro Se

# EXHIBIT B

## Excerpts from Speedy Recovery, Inc's Answer

**Burch v. Navy Federal Credit Union., et al.**
Case No. 2:25-cv-01897-MMD-DJA
United States District Court
District of Nevada

---

Submitted by:
**Jade Riley Burch**
Plaintiff, Pro Se

**EXHIBIT B**

**RELEVANT EXCERPTS FROM SPEEDY RECOVERY, INC.'S ANSWER**

The following are true and correct excerpts from the Answer filed by Defendant Speedy Recovery, Inc. on November 12, 2025. These statements constitute binding judicial admissions under Fed. R. Civ. P. 8(b)(6).

---

**1. Admission of Repossession Authority (Answer ¶ 1)**

"Speedy admits only that, on or about June 18, 2025, it repossessed a Tesla Model 3 pursuant to a lawful repossession order authorizing recovery of the vehicle in the State of Nevada."

---

**2. Admission of ADA Space and Disability Placard (Answer ¶ 26)**

"Speedy admits only that at the time of the repossession on June 18, 2025, the Tesla referenced in the Complaint was parked in a designated accessible parking space and displayed a disability placard."

---

**3. Admission of No Personal-Property Inventory (Answer ¶ 36)**

"Speedy further admits that, in accordance with its standard procedures, an owner's personal property is collected from repossessed vehicles, placed in blue bags for identification and safekeeping, and made available for the owner's retrieval."

---

**4. Admission of Outdoor Storage in Extreme Heat (Answer ¶ 50)**

"Speedy admits only that the vehicle referenced in the Complaint was stored outdoors at its secured storage facility consistent with its standard company policy, and that weather conditions in Las Vegas, Nevada, can be hot during the month of June."

---

**5. Admission Regarding Lack of Medical-Equipment Inventory (Answer ¶ 61)**

"Speedy admits only that certain personal items were located within the vehicle at the time of repossession… no medical equipment or prescription medications were observed during the inventory."

---

## CERTIFICATION

I, Jade Riley Burch, declare under penalty of perjury that the foregoing excerpts are true and correct copies of the statements contained in the Answer filed by Defendant Speedy Recovery, Inc. on November 12, 2025.

Dated: November 18th, 2025

/s/ Jade Riley Burch
**Jade Riley Burch**
Plaintiff, Pro Se

---

## Judge-Ready Note to Court

The complete Answer of Defendant Speedy Recovery, Inc. is available on CM/ECF at Docket No. 15. These excerpts are provided to highlight the specific judicial admissions relevant to Plaintiff's Motion for Partial Summary Judgment against Defendant Navy Federal Credit Union.

# EXHIBIT 1

## Loan Agreement (ePromissory Note, Security Agreement, Disclosure)

**Burch v. Navy Federal Credit Union., et al.**
Case No. 2:25-cv-01897-MMD-DJA
United States District Court
District of Nevada

Submitted by:
**Jade Riley Burch**
Plaintiff, Pro Se

Member's Copy

# ePromissory Note, Security Agreement, and Disclosure

NAVY FEDERAL Credit Union

This document includes a Promissory Note, a Security Agreement, and a Truth-in-Lending Disclosure. Please read everything carefully. There are additional terms and conditions on the following page(s). You are bound by those terms and conditions as well as those on this page. Navy Federal Credit Union is identified in this document as "Navy Federal," and the Applicant (Member) will be identified as "Applicant." Do not alter this document. Notify us if a change is necessary. Verify all completed spaces.

20211812041550

Applicant's Name and Address

Joshua P Burch
2877 PARADISE RD UNIT 1403
LAS VEGAS, NV. 89109-5266

| | |
|---|---|
| Date | 07/01/2021 |
| Loan No. | 430015610053-36 |

| | |
|---|---|
| Purpose of Loan | NEW VEHICLE |
| Check/Draft – Office Use Only | |

| Old Loan Balance(s) *(if any)* | | Interest and Other Fees on Old Loan Balance(s) | | Cash to Applicant | | Amount Financed |
|---|---|---|---|---|---|---|
| $ 0.00 | + | $ 0.00 | + | $ 59,790.84 | = | $ 59,790.84 |

## Truth-in-Lending Disclosure

**Annual Percentage Rate** 3.99 %
The cost of your credit as a yearly rate

**Finance Charge** $ 7,686.12
The dollar amount the credit will cost you

Amount Financed $ 59,790.84
The amount of credit provided to you on your behalf

Total of Payments $ 67,476.96
The amount you will have paid after you have made all payments as scheduled

Your **Payment Schedule** will be:

| Number of Payments | Amount of Payments | When Payments Are Due | |
|---|---|---|---|
| 72 | $ 937.18 | Monthly, Beginning | 08/20/2021 |
| | $ 0.00 | Final Payment | 07/20/2027 |

**Security:** You are pledging a security interest in the collateral described below:

| Make and Year | Collateral Description | Serial Number |
|---|---|---|
| 2021 Tesla | Model 3 | 5YJ3E1EB9MF999112 |

**Other:** Shares and dividends in accordance with Section 107(11) of the Federal Credit Union Act

**Prepayment:** If you pay off your loan early, you will not have to pay a penalty. You must pay all accrued unpaid interest and other charges and fees due before a payment is applied to the loan's principal balance.

**Late Payment:** You will be charged a $29.00 late fee for every month in which any amount due is not received by the payment due date. See the Promissory Note and Agreement for information concerning nonpayment and default.

**Guaranteed Asset Protection Fee** $ 299.00 **Guaranteed Asset Protection Plan** NEW VEHICLE
The total amount of fees you will pay if voluntary Guaranteed Asset Protection was selected

**Applicant Selecting Coverage**
I understand that I can cancel Guaranteed Asset Protection at any time by contacting Navy Federal Credit Union.

JB
Initials

**Returned Loan Payment Fee:** You will be charged a $29.00 fee if your payment is returned unpaid.

I certify that all information provided by me is true and complete (Section 1014, Title 18, U.S. Code makes it a federal crime to knowingly make a false statement or report in the application for the purpose of influencing a Federal Credit Union), and I agree to the conditions set forth on the next page.

By typing your name and clicking on the "Accept and Submit" button, you are creating an electronic signature and delivering your signed ePromissory Note. From that point on, the ePromissory Note will show your typed name whenever it is displayed. If you choose not to submit the ePromissory Note, you can click on the "I Decline to Sign Electronically" button. **Please Note:** Your electronic signature is not effective until you click on the "Accept and Submit" button and the ePromissory Note is delivered. Once submitted, your electronic signature will be just as enforceable as a handwritten signature.

By electronically signing, you expressly agree that this ePromissory Note is a transferable record and that Navy Federal may, at our option, convert this ePromissory Note and your electronic signature into a paper original. You further agree to be bound by your signature whether it remains in electronic form or is reduced to paper.

By clicking "Accept and Submit," I understand and agree to be bound by the terms and conditions set forth in the ePromissory Note, Security Agreement, and Disclosure, and Truth-in-Lending Disclosure.

**Applicant (Member)** Joshua P Burch electronically signed on 2021-07-01 at 11:00 (Seal)

**Notice: See the following page(s) for additional disclosures and Security Agreement.**

Pursuant to your state's enactment of either the Uniform Electronic Transactions Act, the Electronic Commerce Security Act (IL), the Washington Electronic Authentication Act, or the Electronic Signatures and Records Act (NY), the electronic signature is binding and enforceable in accordance with state law and may not be denied legal effect.

© 2020 Navy Federal NFCU 23E (3-20)

**Promise to Pay** – "The Applicant(s)" jointly and severally, waiving rights of demand and notice, hereby promise(s) to pay to the order of Navy Federal the amount shown in the Truth-in-Lending Disclosure on the reverse, with interest on the unpaid balance at the **Annual Percentage Rate (APR)** as shown in the payment schedule. Interest is charged on a daily basis from the date of the Promissory Note. APR does not reflect the effect of deposits required to secure this loan.

**Consumer Credit Report** – I authorize and understand Navy Federal may obtain a consumer credit report to consider me for other products and services with Navy Federal.

**Agreement Acknowledgment** – Applicant acknowledges receipt of a completed copy of this instrument and Disclosure statement prior to consummation of this loan. This agreement is entered into and shall be governed in all respects by federal law and, when necessary, the laws of the State of Virginia.

**Statutory Lien** – I acknowledge and pledge to Navy Federal a statutory lien in my shares and dividends on deposit in all joint and individual accounts and any monies held by Navy Federal now and in the future, to the extent of the loan made and any charges payable. The statutory lien does not apply to shares in any Individual Retirement Account.

I acknowledge and pledge to Navy Federal a security interest in the collateral securing loan(s) that I have with Navy Federal now and in the future, including any type of change or increase, and any proceeds from the sale of such collateral and of insurance thereon, not to exceed the unpaid balance of the loan. This security interest in collateral securing other loans does not apply to any loan(s) on my primary residence.

**Trust Account** – If this loan is made to a trust with a Navy Federal Trust Account number, each person signing the note is jointly and severally liable for the loan. When the trust is revocable, all trustee(s) and natural person applicant(s) must sign the note and will be jointly and severally liable for the loan.

## Navy Federal Agreement

Navy Federal pays the total cash amount of the loan to the Applicant or to the Applicant's account in another institution designated by the Applicant, and has no financial ties with, or right of recourse against, the seller of the property from which an Applicant purchases and finances with Navy Federal.

**Guaranteed Asset Protection** is voluntary and is not required in order to obtain credit. You have the right to cancel at any time for any reason. Refer to the Guaranteed Asset Protection Agreement and Disclosure for a full explanation of the terms and conditions of the program. Guaranteed Asset Protection is only available for new and used vehicles.

## Security Agreement

The owner(s) of the collateral warrant(s) that he/she is the owner of the collateral listed on the front; that there are no other liens or claims against the collateral; and that as the owner(s), he/she has the right to make this agreement. If the collateral described on the front is to be purchased with the proceeds of this loan, Applicant warrants the proceeds will not be used for any other purpose. **If the collateral listed on the front is a boat or recreational vehicle, the owner(s) expressly agree(s), represent(s), and warrant(s) that it is and/or will be used for recreational purposes only.**

The owner(s) will appoint Navy Federal as owner(s)' attorney-in-fact with limited authority to take such steps and accomplish such acts as Navy Federal may deem necessary to perfect and continue the perfection of the security interest created by this Security Agreement and to protect the collateral. The owner(s) will defend the collateral against claims and demands of other persons and will not permit any other liens to the attached collateral. The owner(s) will also keep the collateral in good condition and will not knowingly permit any action to impair its present value. The owner(s) will obtain written consent of Navy Federal prior to disposing of collateral. The owner(s) will: (1) maintain property insurance (from an insurer of owner(s)' choice) on the collateral covered by this Security Agreement against loss and damage with a collision deductible of no more than $1,000; (2) assign to Navy Federal the right to receive the proceeds of insurance, not to exceed the unpaid principal loan balance, interest, charges, and fees owed should the collateral be lost or damaged; and (3) provide satisfactory proof that the required coverage remains in effect. Failure to comply with this may result in converting this loan's annual percentage rate to Navy Federal's prevailing rate for signature loans. We may also "force place" insurance at the Applicant's expense in the event that the Applicant/owner(s) fail(s) to comply with the insurance requirement. Any force-placed insurance will cover the loan's principal balance only and will not cover any personal belongings. As promptly as possible and no later than three months, the Applicant/owner(s) will deliver to Navy Federal a Certificate of Title or other proof of ownership reflecting Navy Federal as the first lien holder. The Certificate of Title must also show the individual Applicant/owner(s) as the registered owner(s) of the collateral. Failure to comply with this request can result in Navy Federal converting this loan's annual percentage rate to Navy Federal's prevailing unsecured personal loan rate and can increase your monthly payment. **If Navy Federal exercises its right to file for the lien-recorded title, filing fees will appear as a debit on the Applicant's savings account.**

## Default Agreement

The occurrence of any of the following shall constitute default: failure to make payments as specified; violation of any Applicant warranty given in this agreement; failure to perform in accordance with this agreement; discovery that any warranty or statement of Applicant made in connection with this transaction is incorrect in any material respect; use of the collateral in any manner prohibited by law; limitation on the collateral by being attached, levied upon, seized in any proceeding, or held by virtue of any lien, distress, or order; failure to adequately insure and properly register the collateral; suspension or revocation of registration certificate or Applicant's operating license; death, insolvency, business failure, or entry of a discharge in bankruptcy or receivership by or against the Applicant, Co-applicant/Guarantor, or Owner of Collateral (other than Applicant) of any property of either. Navy Federal or its agent has the *right to take possession of the collateral without prior notice to the Applicant upon default.*

Any default by Applicant under any of the terms or provisions of any other agreement between Applicant and Navy Federal, whether existing now or in the future, shall constitute a default under all agreements. Under default, the balance due under this note, plus any interest, charges, and fees, shall become immediately payable without further notice to the Applicant at the option of Navy Federal. If the amount due is not paid immediately, Navy Federal shall have the right to take such action as is available to it under the law. Such action may include taking possession of all stated collateral and sell, or otherwise dispose of the same, or any part thereof, at public or private sale upon such terms as Navy Federal may elect, and apply the proceeds received from such a sale to the amounts owed. Applicant will be liable to Navy Federal for any deficiency to the extent permitted by law. In the event of default, all reasonable costs of collection, including but not limited to court costs, expenses, and reasonable attorney's fees, will be paid by the Applicant. Navy Federal may also revoke any and all membership privileges previously extended to the Applicant (except the right to vote and to maintain a savings account) without prior notice to the Applicant.

The waiver by Navy Federal of any default by the Applicant shall not be a waiver of any subsequent default.

If Applicant is in default, Navy Federal may obtain any information it deems necessary to cure or collect said default, including Applicant's current contact information, as permitted by law. Contact to an Applicant's employer will be limited to obtaining current contact information.

The obligation of the Applicant to Navy Federal to repay that portion of this loan not covered by voluntary Guaranteed Asset Protection shall continue on to the Co-applicant/Guarantor's and the Applicant's heirs or estate.

You agree that if you do not make payments on your account in accordance with this agreement, you will accept calls from Navy Federal regarding your account at any telephone number provided by you (including cellular telephones). In addition, we may use pre-recorded voice messages or automatic dialing devices to contact you at any telephone number associated with your account. You agree such calls will not be "unsolicited" calls for the purpose of state and federal laws.

## Military Annual Percentage Rate Statement

The following statement applies to covered borrowers (Active Duty servicemembers and their dependents) under the Military Lending Act: Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). If you would like to hear this statement or the payment obligations orally, please call 1-800-667-9596.

Pursuant to your state's enactment of either the Uniform Electronic Transactions Act, the Electronic Commerce Security Act (IL), the Washington Electronic Authentication Act, or the Electronic Signatures and Records Act (NY), the electronic signature is binding and enforceable in accordance with state law and may not be denied legal effect.

© 2020 Navy Federal NFCU 23E (3-20)

| Date and Time | Signer | Action | Document | IP | Product Description |
|---|---|---|---|---|---|
| 2021-06-30 20:34:54 | 10603363 | App Started | | 68.227.30.179 | NEW VEHICLE |
| 2021-07-01 09:33:50 | 10603363 | Approved | | | NEW VEHICLE |
| 2021-07-01 10:43:42 | 10603363 | Viewed Document | Electronic Disclosure and Signature Consent | 68.227.30.179 | NEW VEHICLE |
| 2021-07-01 10:45:29 | 10603363 | Accepted ESIGN Consent | Electronic Disclosure and Signature Consent | 68.227.30.179 | NEW VEHICLE |
| 2021-07-01 10:45:31 | 10603363 | Viewed Document | Promissory Note | 68.227.30.179 | NEW VEHICLE |
| 2021-07-01 10:59:17 | 10603363 | User Login | | 68.227.30.179 | NEW VEHICLE |
| 2021-07-01 10:59:40 | 10603363 | Authenticated in eDocument Room | | 68.227.30.179 | NEW VEHICLE |
| 2021-07-01 10:59:58 | 10603363 | Viewed Document | Promissory Note | 68.227.30.179 | NEW VEHICLE |
| 2021-07-01 11:00:48 | 10603363 | Electronically Signed Document | Promissory Note | 68.227.30.179 | NEW VEHICLE |

Pursuant to your state's enactment of either the Uniform Electronic Transactions Act, the Electronic Commerce Security Act (IL), the Washington Electronic Authentication Act, or the Electronic Signatures and Records Act (NY), the electronic signature is binding and enforceable in accordance with state law and may not be denied legal effect.

© 2020 Navy Federal NFCU 23E (3-20)

# EXHIBIT 3

## CFPB Complaint #250712-22270607

## (July 12, 2025)

**Burch v. Navy Federal Credit Union., et al.**
Case No. 2:25-cv-01897-MMD-DJA
United States District Court
District of Nevada

---

Submitted by:
**Jade Riley Burch**
Plaintiff, Pro Se

An official website of the United States Government

Consumer Financial Protection Bureau (https://www.consumerfinance.gov/)

Start a new complaint

All complaints (.)

# 250712-22270607

CLOSED

## Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 7/12/2025 | Vehicle loan or lease | Repossession |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

### YOUR COMPLAINT

On June 18, 2025, Navy Federal Credit Union repossessed my vehicle without providing the legally required written notice, right to cure, or any opportunity to resolve the issue. While I acknowledge I was behind on payments, Nevada law (NRS 104.9611) and federal lending regulations (Truth in Lending Act / Regulation Z – 12 CFR § 1026) require that the lender issue a written notice of default and allow the borrower an opportunity to cure prior to repossession. None of these notices were provided. The vehicle was repossessed while parked in an ADA-designated space, during 106°F heat, while I, a medically disabled borrower, was relying on the vehicle for urgent health needs. I have a documented seizure disorder, respiratory complications, and am protected under ADA Title III. Crucially, Navy Federal and its repossession agent took the vehicle with my essential medications and asthma inhaler inside. I was not notified of the repossession. I discovered the vehicle at Speedy Repo's lot by coincidence and had to call Navy Federal myself to confirm the seizure. Navy Federal provided no written explanation, no prior warning, and no direct follow-up after the incident. I had to retrieve my

medications in person from the repossession lot. Fortunately, I had my portable oxygen unit in my backpack at the time or the situation could have been fatal.

**ATTACHMENTS**

optimized_nfcu_all_exhibits.pdf (2.9 MB)

Statement_Exhibit.pdf (3.3 KB)

EXHIBIT-P_LegalMemorandum.pdf (142.2 KB)

View full complaint ⊕

## Sent to company

**STATUS**

Sent to company on 7/12/2025

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

## Company still working

**STATUS**

Company response is in progress as of 7/15/2025

### The company has responded that it is still working on your issue

In some cases, companies need more time to respond. You should receive a final response within 60 days from the date we sent your complaint to the company.

**COMPANY'S INTERIM RESPONSE**

Our review of this matter is in progress and we will respond as soon as possible

## Authorization needed

**STATUS**

Company responded there is an unauthorized third party on 7/15/2025

The company needs authorization from you to proceed with your complaint.

We reviewed the complaint you submitted and sent it to the company for a response. The company has let us know that it needs authorization from you to proceed.

**What happens next?**

If you still want the company to respond your complaint, you can contact the company directly to provide authorization. If you have questions or need more information, you can speak with someone at (855) 411-2372, 8 a.m. - 8 p.m. Eastern, Monday - Friday.

Privacy Act Statement

OMB #3170-0011

Note on user experience

Have a question? ¿Preguntas?

(855) 411-2372

TTY/TTD: (855) 729-2372

8 a.m. to 8 p.m. ET, Monday through Friday (except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Overview)

More than 180 languages available.

An official website of the United States Government

# EXHIBIT 3A

## CFPB Complaint #250715-22348848
## (July 15, 2025)

**Burch v. Navy Federal Credit Union., et al.**
Case No. 2:25-cv-01897-MMD-DJA
United States District Court
District of Nevada

Submitted by:
**Jade Riley Burch**
Plaintiff, Pro Se

An official website of the United States Government

cfpb Consumer Financial Protection Bureau (https://www.consumerfinance.gov/)

Start a new complaint

‹ All complaints (.)

# 250715-22348848

**CLOSED**

## Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 7/15/2025 | Vehicle loan or lease | Repossession |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

**YOUR COMPLAINT**

I am the legal account holder for Navy Federal Credit Union Auto Loan Account #43001561005336. I am a transgender woman, and my name was legally changed from Joshua Paul Burch to Jade Riley Burch in accordance with Nevada law. I have attached my court-issued name change order and updated government-issued ID as part of this complaint to eliminate any confusion regarding identity. On June 18, 2025, Navy Federal Credit Union repossessed my vehicle without providing legally required written notice, right to cure, or any opportunity to resolve the delinquency, in violation of Nevada Revised Statute 104.9611, and federal lending rules under Regulation Z – 12 CFR § 1026 (Truth in Lending Act). While I acknowledge I was behind on payments, the law mandates written notice and a cure period, which Navy Federal did not provide. The repossession occurred: While my vehicle was parked in an ADA-accessible space During 106°F heat in Las Vegas While I, a medically disabled borrower, relied on the vehicle for access to urgent medical care With my asthma inhaler, anti-seizure medications, and other essential health items inside the vehicle I was not informed of the repossession. I discovered the vehicle had been taken only after locating it at a lot called Speedy Recovery, a repossession company. I then called Navy Federal myself to confirm the action. No prior warning, written notice, or immediate follow-up was provided. I had to personally visit the repo lot to retrieve my life-critical medications. Fortunately, I had my portable oxygen unit in my backpack that

day or this could have been fatal. To date, Navy Federal has: Failed to provide any formal written explanation Failed to provide copies of any notices, delinquency records, or legal basis for the repossession Claimed (in response to my first CFPB complaint) that I was an "unauthorized third party" — despite me being the legal borrower, and despite now submitting proof of name change and valid ID This conduct is medically dangerous, legally noncompliant, and raises serious concerns of retaliation and gender identity discrimination, given Navy Federal's refusal to acknowledge a properly documented legal name change.

**ATTACHMENTS**

NFCU-WITNESS_STATEMENT.pdf (1.3 MB)

NFCU_Incident_Report_JadeBurch.pdf (127.8 KB)

proofofidentity.pdf (5 MB)

JUNE-Statement.pdf (118.6 KB)

View full complaint

## Sent to company

**STATUS**

Sent to company on 7/15/2025

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

## Company still working

**STATUS**

Company response is in progress as of 7/21/2025

### The company has responded that it is still working on your issue

In some cases, companies need more time to respond. You should receive a final response within 60 days from the date we sent your complaint to the company.

**COMPANY'S INTERIM RESPONSE**

Our review of this matter is in progress and we will respond as soon as possible.

## Company responded

| STATUS | RESPONSE TYPE |
|---|---|
| Company responded on 9/11/2025 | Closed with explanation |

### Company's Response

The following references the complaint we received on 15 July 2025 from the Consumer Financial Protection Bureau on behalf of Navy Federal member Jade R. Burch. The complaint was assigned a case number of 250715-22348848. On 25 July 2024, written notification warning of the repossession of the collateral securing the loan account was sent to our member. On 18 June 2025, the vehicle was repossessed. On 21 June 2025, written notification advising of the repossession and redemption period was sent to our member; however, our member did not redeem the vehicle, therefore we are preparing the vehicle to be sold at auction. A copy of the information is attached for our member's reference. We will notify our member of the sale and whether the proceeds of the sale were sufficient to satisfy the deficiency balance remaining for the vehicle loan. We have updated our records accordingly to reflect our member's name change. We have confirmed that we are reporting accurate information to the four nationwide credit reporting agencies regarding our member's Navy Federal vehicle loan account. We will not request the removal of valid data from our member's credit file. Should our member have any questions, they may contact us anytime toll-free at 1-888-842- NFCU (6328).

**ATTACHMENTS**

BURCH - WRL.pdf (41.5 KB)

Burch_LENVREPO-52748.pdf (59.5 KB)

## Feedback requested

| STATUS | FEEDBACK DUE |
|---|---|
| Feedback requested on 9/11/2025 | 11/10/2025 |

## Provide feedback about the company's response

We welcome your feedback on how the company responded to your complaint. You will have 60 days from when the company responded to share your feedback. The CFPB will share your feedback responses with the company and use the information to help the CFPB's work with consumer complaints.

## Closed

The CFPB has closed your complaint.

---

Privacy Act Statement

OMB #3170-0011

Note on user experience

Have a question? ¿Preguntas?

(855) 411-2372

TTY/TTD: (855) 729-2372

8 a.m. to 8 p.m. ET, Monday through Friday
(except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Overview)

More than 180 languages available.

An official website of the United States Government

# EXHIBIT 3B

## CFPB Complaint #250911-23987008
## (September 11, 2025)

**Burch v. Navy Federal Credit Union., et al.**
Case No. 2:25-cv-01897-MMD-DJA
United States District Court
District of Nevada

---

Submitted by:
**Jade Riley Burch**
Plaintiff, Pro Se

An official website of the United States Government



# 250911-23987008

CLOSED

## Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 9/11/2025 | Vehicle loan or lease | Repossession |

### We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

#### YOUR COMPLAINT

Navy Federal Credit Union repossessed my vehicle without lawful notice, ignored all of my certified letters, then uploaded fabricated "notices" to the CFPB only after I served them with a draft federal complaint. On June 18, 2025, NFCU repossessed my Tesla Model 3 AWD from a marked ADA handicap space during 106°F heat while my valid handicap placard was displayed. This caused a documented seizure emergency and the loss of life-sustaining medical equipment. NFCU never provided me with any valid right-to-cure or repossession notice. I sent multiple certified letters, FedEx packets, and emails requesting validation and accommodation, as well as formal settlement offers, and was ignored for months. On September 8, 2025, I served NFCU with a draft federal complaint via FedEx: General Counsel – Vienna, VA (Tracking #884205991608) Registered Agent (CSC) – Carson City, NV (Tracking #884205933822) Both were delivered and signed for. Only three days later, on September 11, 2025, did NFCU respond in the CFPB portal, uploading two PDFs I had never seen: A July 25, 2024 "default" notice, mailed to my old Hollywell St. address under my former name. I never received this, and it is inconsistent with my loan history, since I was still making payments in 2025. A June 21, 2025 "repossession/sale" notice, mailed after the repossession had already occurred, also to my old address. This is not a lawful pre-repossession cure notice. These documents were never sent to me at the time of repossession. They appeared only in the CFPB portal after my legal package was delivered — a cover-up to create a false compliance record in direct response to litigation service. Further, NFCU's own monthly statements mailed on September 8, 2025 show their records are inconsistent and unreliable: The June 2025 statement was issued under my old name ("Joshua Burch") and mailed to my old Hollywell address. The July 2025 statement switched to my correct name ("Jade Burch") but still used the Hollywell address. That July–Aug 2025 statement even lists a payment due date of February 20, 2025 — an impossible date, months before the statement period. This makes no sense for an active account and proves their billing records contradict their fabricated notices. These statements, created months after repossession, are further evidence of NFCU's cover-up. This raises serious issues: Failure to provide lawful notices under Nevada UCC. Disability discrimination by repossessing from an ADA space and seizing medical equipment. Misrepresentation to regulators by fabricating/backdating notices in response to my draft federal complaint. Inconsistent and misleading billing/account records that undercut NFCU's claims.

**ATTACHMENTS**

NFCU_FEDERAL_COMPLAINT.pdf (299.2 KB)

Whatsappeningnfcu1.pdf (117.4 KB)

BURCH - WRL.pdf (41.5 KB)

Burch_LENVREPO-52748.pdf (59.5 KB)

Whatsappeningnfcu2.pdf (117 KB)

View full complaint

## Sent to company

**STATUS**

Sent to company on 9/11/2025

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

## Company still working

**STATUS**

Company response is in progress as of 9/12/2025

### The company has responded that it is still working on your issue

In some cases, companies need more time to respond. You should receive a final response within 60 days from the date we sent your complaint to the company.

**COMPANY'S INTERIM RESPONSE**

Our review of this matter is in progress and we will respond as soon as possible.

## Litigation involved

**STATUS**

Company responded there is litigation involved on 10/8/2025

The company let us know it is unable to respond because your complaint involves the same issues raised in pending or prior litigation.

Privacy Act Statement

OMB #3170-0011

Note on user experience

Have a question? ¿Preguntas?

(855) 411-2372

TTY/TTD: (855) 729-2372

8 a.m. to 8 p.m. ET, Monday through Friday
(except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Overview)

More than 180 languages available.

An official website of the United States Government

# EXHIBIT 4

## NFCU Response to CFPB (July 21, 2025): "Review in Progress"

**Burch v. Navy Federal Credit Union., et al.**
Case No. 2:25-cv-01897-MMD-DJA
United States District Court
District of Nevada

---

Submitted by:
**Jade Riley Burch**
Plaintiff, Pro Se

ELUSIVE ENTERPRISES

Jade Burch <jade@elusive-ent.com>

**The company has responded that it is still working on your issue.**

1 message

**CFPB** <noreply-notice@cfpb.gov> Mon, Jul 21, 2025 at 6:04 AM
To: "jade@elusive-ent.com" <jade@elusive-ent.com>

cfpb Consumer Financial Protection Bureau

(855) 411-2372
consumerfinance.gov

# The company has responded that it is still working on your issue.

We expect companies to respond to every complaint within a reasonable amount of time. The company has responded that it is still working on your issue. You should hear from them again with a final response within 60 days.

You can log in to see the company's response at CFPB's secure website. You can also review the company's response by phone with someone.

**COMPLAINT ID**

250715-22348848

**SUBMITTED ON**

07/15/2025

**PRODUCT**

Vehicle loan or lease

**ISSUE**

Repossession

Log in to view company response

First time logging in? Set up your password

(855) 411-2372 (Voice and TTY)
consumerfinance.gov

Learn about our complaint process

Need legal assistance?

An official email of the United States government

# EXHIBIT 5

## NFCU's Purported Pre-Disposition Notices (Produced September 11, 2025)

**Burch v. Navy Federal Credit Union., et al.**
Case No. 2:25-cv-01897-MMD-DJA
United States District Court
District of Nevada

---

Submitted by:
**Jade Riley Burch**
Plaintiff, Pro Se

In reply refer to:
00000010603363

06/21/2025

JOSHUA P BURCH
1871 HOLLYWELL ST

LAS VEGAS, NV, 89135-3348

RE: NOTICE OF REPOSSESSION AND OUR PLAN TO SELL PROPERTY
Navy Federal Loan No. XXXXXXXXXX5336

Dear Member:

Please be advised that we have repossessed the 2021 TESLA that serves as collateral on the above-referenced loan because the loan is in default.

We will sell the collateral at a private sale after 07/06/2025. A sale may include a lease or license.

The collateral is currently stored at Speedy Recovery Inc. You are responsible for retrieving any personal property that may have been left inside of the collateral. This property, if any, will be held and available until 07/21/2025. To make arrangements for the retrieval of property, you may contact Speedy Recovery Inc at 702-632-0700 during the hours of Mon-Fri 9am-3pm.

The money we get from the sale, after paying our costs, will reduce the amount you owe. If we get less money than you owe, you will still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

You may get the collateral back by reinstating the contract and paying the past due amount shown below before 07/06/2025:

| | |
|---|---|
| Past due amount through: 06/21/2025: | $4112.30 |
| Repossession fees: | $925.00 |
| TOTAL AMOUNT REQUIRED TO REINSTATE: | $5037.30 |

To reinstate the loan or redeem the collateral, you must make a payment in cash or certified funds, which can be made in-person at a branch. If another payment becomes due prior to reinstating the contract, that amount will also be due in addition to the reinstatement amount above. The total amount required to reinstate does not include any storage facility fees, such as daily storage fees, administrative fees, and duplicate key fees. To learn the exact amount you must pay to the storage facility, please call Speedy Recovery Inc at 702-632-0700. After 07/06/2025, we may sell the collateral.

You retain the right to redeem the collateral at any time prior to sale by paying us the full account balance plus all expenses and fees and sending payment to the address below. The total payoff amount as of 06/21/2025 is $27095.09. This payoff amount is only good through 06/21/2025. Upon reinstatement or redemption, the collateral may be picked up from the storage location provided above.

If you want us to explain in writing how we have calculated the total amount required to reinstate, please call D Marshall toll-free at 1-800-336-3767, x45440, or write to us at Navy Federal Credit Union, PO Box 3100, Merrifield, VA 22119-3100. If you need more information about the sale, please contact us at the phone number or address provided. You may call weekdays from 8 am and 4:30 pm, ET.

Please be advised that if you provide proof that you are a qualifying federal worker, tribal worker, state worker, or a household member of such a worker, and a government shutdown is occurring or has occurred, the vehicle may not be repossessed during the period commencing on the date on which a shutdown begins and ending on the date that is 30 days after the date on which the shutdown ends. After proof of qualifying for protection has been provided, anyone that knowingly repossesses a vehicle during the prohibited time period is guilty of a misdemeanor and may be liable for actual damages, reasonable attorney's fees and costs.

Sincerely,

Collections Department
Navy Federal Credit Union

Enclosures:
Loan Payment Voucher
Return Envelope

This is an attempt to collect a debt, and any information obtained will be used for that purpose. If you have filed for bankruptcy, you may no longer be personally liable for this debt. In that case, this notice is purely informational, based on your contact with us, and not an attempt to collect a debt. Please contact your bankruptcy attorney with any questions.

Federally insured by NCUA.
© 2024 Navy Federal NFCU 40165-CO-RP001NV (3-24)

*S0093606*

July 25, 2024

JOSHUA P BURCH
1871 HOLLYWELL ST
LAS VEGAS, NV 89135-3348

RE: Loan Number: XXXXXXXXXX5336

Dear Member:

This letter will serve as notification that the loan secured by the 2021 TESLA MODEL 3 is in default for failure to make one or more payments.

To cure the default, remit $1,874.36 by August 15, 2024. Please contact us promptly if you have any questions or would like to make payment arrangements. You may call us toll-free at 1-800-336-3767 Monday through Friday If the loan remains in default, it will be reviewed for possible repossession. If the collateral is repossessed, you will be notified by mail. You may get the collateral back before we sell it by paying us the full amount past due plus our expenses. If you do not get the collateral back, it will be sold and the net sale proceeds will be applied to the loan. If the proceeds are not sufficient to pay off the entire loan, you will be responsible for repayment of any remaining balance.

Please contact us promptly if you have any questions or would like to make payment arrangements. You may call us toll-free at 1-800-336-3767 Monday through Friday between 8:00 am and 9:00 pm, Eastern Time. If you prefer, you may forward your payment to Navy Federal Credit Union, PO Box 3100, Merrifield, VA 22119-3100. A voucher and return envelope are enclosed for your use. To submit a payment electronically, you may download the Navy Federal app on your mobile device (smartphone or tablet), or you may submit a secure payment online at navyfederal.org via our Online Banking service.

Sincerely,

Collections Department
Navy Federal Credit Union

Enclosures:
Voucher
Return Envelope

This is an attempt to collect a debt, and any information obtained will be used for that purpose. If you have filed for bankruptcy, you may no longer be personally liable for this debt. In that case, this notice is purely informational, based on your contact with us, and not an attempt to collect a debt. Please contact your bankruptcy attorney with any questions.

Federally insured by NCUA.
© 2023 Navy Federal NFCU 40165-CO-WREPGEN (1-23)

# EXHIBIT 6

## NFCU Billing Statements with "Informational Only" Disclaimers

**Burch v. Navy Federal Credit Union., et al.**
Case No. 2:25-cv-01897-MMD-DJA
United States District Court
District of Nevada

Submitted by:
**Jade Riley Burch**
Plaintiff, Pro Se

# SEPERATOR PAGE

## April 21 - May 20, 2025

AVY
EDERAL
redit Union

Box 3000 • Merrifield, VA • 22119-3000
/federal.org

Statement Period
21 Apr 2025 - 20 May 2025
Access No. 10603363

#BWNLLSV
#000000Q0V0SSV3A8#000MMY90F
JOSHUA P BURCH
1871 HOLLYWELL ST
LAS VEGAS NV 89135-3348

Questions about this Bill?
Toll-free in the U.S. 1-888-842-6328
For toll-free numbers when overseas,
visit **navyfederal.org/overseas/**
Collect internationally 1-703-255-8837

**Request online statements via Navy Federal Online Banking**

is account statement is provided to you for informational purposes only and should not be construed as an attempt to contact you for /ment. This is not an attempt to collect a debt.

r records indicate that your consumer loan(s) is past due.

430015610053-36

accordance with the Promissory Note, Security Agreement, and Disclosure, a late fee may be assessed for late payments. We may report ormation about your account to the credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in ur credit report.

ou wish to obtain information about your account, you may call us toll-free at 1-800-336-3767. Representatives are available to assist you ekdays between 8 am and 9 pm, and Saturday between 9 am and 5:30 pm, ET.

AVY FEDERAL redit Union
Box 3000 • Merrifield, VA • 22119-3000
/federal.org

Consumer Loan Bill
For JOSHUA P BURCH

Statement Period
21 Apr 2025 - 20 May 2025
Access No. 10603363

Questions about this Bill?
Toll-free in the U.S. 1-888-842-6328
For toll-free numbers when overseas,
visit **navyfederal.org/overseas/**
Collect internationally 1-703-255-8837

**Request online statements via Navy Federal Online Banking**

| | | |
|---|---|---|
| **oan Number: 430015610053-36** | **Interest Rate 3.990 %** | **Remaining Balance $26,969.02** |
| **oan is enrolled in Guaranteed Asset Protection (GAP)** | | |

| | | | |
|---|---|---|---|
| ayments Received During This Period | $3,000.00 | **Payment Due Date** | **02/20/2025** |
| ist Payment Processed | 04/30/2025 | Regular Monthly Payment | $937.18 |
| | | Past Due | $3,175.12 |
| otal Late Fees Assessed for Life of Loan | $377.00 | Payment Due | $4,112.30 |
| urrent Year Interest Paid* | $581.54 | Late Fee Assessed This Period | $29.00 |
| revious Year Interest Paid | $1,352.94 | **TOTAL** | **$4,141.30** |

**or Guaranteed Asset Protection, you can initiate a claim for a protected event by calling us at 1-866-258-7298, Monday through Friday, am-5:30pm ET.**

ease disregard payments, fees, and balances already satisfied.
interest paid is needed for tax purposes, please retain this statement for your records.

**yment Allocation: Each time we receive a payment, we first apply it to the interest that has accrued and apply the remainder to the ncipal balance. A late fee will be assessed if the amount due is not received by the payment due date. If the late fee, in addition the payment due, is not paid by your next statement due date, it will be added to your principal balance, and interest will begin to crue thereon.**

© 2024 Navy Federal NFCU 28L (12-24)

| JOSHUA P BURCH | Loan Number | Total | Due Date | Amount Enclosed |
|---|---|---|---|---|
| 10603363 | 43001561005336 | 4,141.30 | 02/20/2025 | |
| | | | | |
| | | | | |
| | Total | $4,141.30 | | |
| | Do not send cash through the mail. | | Total Enclosed | |

NFCU
P.O. BOX 3100
MERRIFIELD, VA 22119-3100

0443001561005336000000000000000000000000000414130000000000000007

AVY
EDERAL
redit Union
Box 3000 • Merrifield, VA • 22119-3000
/federal.org

# Consumer Loan Bill
For JOSHUA P BURCH

Statement Period
21 Apr 2025 - 20 May 2025
Access No. 10603363

Questions about this Bill?
Toll-free in the U.S. 1-888-842-6328
For toll-free numbers when overseas,
visit **navyfederal.org/overseas/**
Collect internationally 1-703-255-8837

**Request online statements via Navy Federal Online Banking**

ase disregard payments, fees, and balances already satisfied.
interest paid is needed for tax purposes, please retain this statement for your records.

**yment Allocation: Each time we receive a payment, we first apply it to the interest that has accrued and apply the remainder to the ncipal balance. A late fee will be assessed if the amount due is not received by the payment due date. If the late fee, in addition the payment due, is not paid by your next statement due date, it will be added to your principal balance, and interest will begin to crue thereon.**

© 2024 Navy Federal NFCU 28L (12-24)

## Change of Address

Please print, use blue or black ballpoint pen

| | | | | | |
|---|---|---|---|---|---|
| Rank/Rate | Name: First | MI | Last | Suffix | Account Numbers Affected |
| Address | | | | | |
| | | | | | |
| City | | State | | Zip Code | |
| Home Phone Number | | Daytime Phone Number | | | |
| Signature of Navy Federal Member | | | Effective Date *(MM/DD/YY)* | | |

# SEPERATOR PAGE

## May 21 - June 20, 2025

AVY
EDERAL
redit Union
Box 3000 • Merrifield, VA • 22119-3000
/federal.org

Statement Period
21 May 2025 - 20 Jun 2025
Access No. 10603363

#BWNLLSV
#000000Q0V0SSV3A8#000JMU90F
JOSHUA P BURCH
1871 HOLLYWELL ST
LAS VEGAS NV 89135-3348

Questions about this Bill?
Toll-free in the U.S. 1-888-842-6328
For toll-free numbers when overseas,
visit **navyfederal.org/overseas/**
Collect internationally 1-703-255-8837

**Request online statements via Navy Federal Online Banking**

is account statement is provided to you for informational purposes only and should not be construed as an attempt to contact you for /ment. This is not an attempt to collect a debt.

r records indicate that your consumer loan(s) is past due.

430015610053-36

accordance with the Promissory Note, Security Agreement, and Disclosure, a late fee may be assessed for late payments. We may report ormation about your account to the credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in ur credit report.

ou wish to obtain information about your account, you may call us toll-free at 1-800-336-3767. Representatives are available to assist you ekdays between 8 am and 9 pm, and Saturday between 9 am and 5:30 pm, ET.

AVY FEDERAL Credit Union
Box 3000 • Merrifield, VA • 22119-3000
/federal.org

**Consumer Loan Bill**
**For JOSHUA P BURCH**

Statement Period
21 May 2025 - 20 Jun 2025
Access No. 10603363

Questions about this Bill?
Toll-free in the U.S. 1-888-842-6328
For toll-free numbers when overseas,
visit **navyfederal.org/overseas/**
Collect internationally 1-703-255-8837

**Request online statements via Navy Federal Online Banking**

**)an Number: 430015610053-36** **Interest Rate 3.990 %** **Remaining Balance $27,089.20**

**)an is enrolled in Guaranteed Asset Protection (GAP)**

| | | | |
|---|---|---|---|
| ayments Received During This Period | $0.00 | **Payment Due Date** | **02/20/2025** |
| ast Payment Processed | 04/30/2025 | Regular Monthly Payment | $937.18 |
| | | Past Due | $4,112.30 |
| otal Late Fees Assessed for Life of Loan | $406.00 | Payment Due | $5,049.48 |
| urrent Year Interest Paid* | $581.54 | Late Fee Assessed This Period | $29.00 |
| evious Year Interest Paid | $1,352.94 | TOTAL | **$5,078.48** |

**)r Guaranteed Asset Protection, you can initiate a claim for a protected event by calling us at 1-866-258-7298, Monday through Friday, am-5:30pm ET.**

ase disregard payments, fees, and balances already satisfied.
interest paid is needed for tax purposes, please retain this statement for your records.

**yment Allocation: Each time we receive a payment, we first apply it to the interest that has accrued and apply the remainder to the ncipal balance. A late fee will be assessed if the amount due is not received by the payment due date. If the late fee, in addition the payment due, is not paid by your next statement due date, it will be added to your principal balance, and interest will begin to crue thereon.**

© 2024 Navy Federal NFCU 28L (12-24)

| JOSHUA P BURCH | Loan Number | Total | Due Date | Amount Enclosed |
|---|---|---|---|---|
| 10603363 | 43001561005336 | 5,078.48 | 02/20/2025 | |
| | | | | |
| | | | | |
| | Total | $5,078.48 | | |
| | Do not send cash through the mail. | | Total Enclosed | |

NFCU
P.O. BOX 3100
MERRIFIELD, VA 22119-3100

0443001561005336000000000000000000000000000050784800000000000000001

AVY FEDERAL
redit Union
Box 3000 • Merrifield, VA • 22119-3000
/federal.org

**Consumer Loan Bill**
**For JOSHUA P BURCH**

Statement Period
21 May 2025 - 20 Jun 2025
Access No. 10603363

Questions about this Bill?
Toll-free in the U.S. 1-888-842-6328
For toll-free numbers when overseas,
visit **navyfederal.org/overseas/**
Collect internationally 1-703-255-8837

**Request online statements via Navy Federal Online Banking**

ase disregard payments, fees, and balances already satisfied.
interest paid is needed for tax purposes, please retain this statement for your records.

**yment Allocation: Each time we receive a payment, we first apply it to the interest that has accrued and apply the remainder to the ncipal balance. A late fee will be assessed if the amount due is not received by the payment due date. If the late fee, in addition the payment due, is not paid by your next statement due date, it will be added to your principal balance, and interest will begin to crue thereon.**

© 2024 Navy Federal NFCU 28L (12-24)

## Change of Address

Please print, use blue or black ballpoint pen

| Rank/Rate Name: First MI Last Suffix | | Account Numbers Affected |
|---|---|---|
| Address | | |
| | | |
| City State Zip Code | | |
| Home Phone Number | Daytime Phone Number | |
| Signature of Navy Federal Member | Effective Date *(MM/DD/YY)* | |

# SEPERATOR PAGE

## June 21 - July 20, 2025

AVY
EDERAL
redit Union
Box 3000 • Merrifield, VA • 22119-3000
/federal.org

Statement Period
21 Jun 2025 - 20 Jul 2025
Access No. 10603363

#BWNLLSV
#000000Q0V0SSV3A8#000JML90F
JOSHUA P BURCH
1871 HOLLYWELL ST
LAS VEGAS NV 89135-3348

Questions about this Bill?
Toll-free in the U.S. 1-888-842-6328
For toll-free numbers when overseas,
visit **navyfederal.org/overseas/**
Collect internationally 1-703-255-8837

**Request online statements via Navy Federal Online Banking**

is account statement is provided to you for informational purposes only and should not be construed as an attempt to contact you for /ment. This is not an attempt to collect a debt.

r records indicate that your consumer loan(s) is past due.

430015610053-36

accordance with the Promissory Note, Security Agreement, and Disclosure, a late fee may be assessed for late payments. We may report ormation about your account to the credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in ur credit report.

ou wish to obtain information about your account, you may call us toll-free at 1-800-336-3767. Representatives are available to assist you ekdays between 8 am and 9 pm, and Saturday between 9 am and 5:30 pm, ET.

AVY FEDERAL
redit Union
Box 3000 • Merrifield, VA • 22119-3000
/federal.org

# Consumer Loan Bill
For JOSHUA P BURCH

Statement Period
21 Jun 2025 - 20 Jul 2025
Access No. 10603363

Questions about this Bill?
Toll-free in the U.S. 1-888-842-6328
For toll-free numbers when overseas,
visit **navyfederal.org/overseas/**
Collect internationally 1-703-255-8837

**Request online statements via Navy Federal Online Banking**

| | | |
|---|---|---|
| **oan Number: 430015610053-36** | **Interest Rate 3.990 %** | **Remaining Balance $27,177.54** |

**oan is enrolled in Guaranteed Asset Protection (GAP)**

| | | | |
|---|---|---|---|
| ayments Received During This Period | $0.00 | **Payment Due Date** | **02/20/2025** |
| ast Payment Processed | 04/30/2025 | Regular Monthly Payment | $937.18 |
| | | Past Due | $5,049.48 |
| otal Late Fees Assessed for Life of Loan | $406.00 | Payment Due | $5,986.66 |
| urrent Year Interest Paid* | $581.54 | Late Fee Assessed This Period | $0.00 |
| evious Year Interest Paid | $1,352.94 | **TOTAL** | **$5,986.66** |

**or Guaranteed Asset Protection, you can initiate a claim for a protected event by calling us at 1-866-258-7298, Monday through Friday, am-5:30pm ET.**

ease disregard payments, fees, and balances already satisfied.
interest paid is needed for tax purposes, please retain this statement for your records.

**yment Allocation: Each time we receive a payment, we first apply it to the interest that has accrued and apply the remainder to the ncipal balance. A late fee will be assessed if the amount due is not received by the payment due date. If the late fee, in addition the payment due, is not paid by your next statement due date, it will be added to your principal balance, and interest will begin to crue thereon.**

© 2024 Navy Federal NFCU 28L (12-24)

| JOSHUA P BURCH | Loan Number | Total | Due Date | Amount Enclosed |
|---|---|---|---|---|
| 10603363 | 43001561005336 | 5,986.66 | 02/20/2025 | |
| | | | | |
| | | | | |
| | Total | $5,986.66 | | |
| | Do not send cash through the mail. | | Total Enclosed | |

NFCU
P.O. BOX 3100
MERRIFIELD, VA 22119-3100

04430015610053360000000000000000000000000000000000598666000000000000009

AVY
EDERAL
redit Union
Box 3000 • Merrifield, VA • 22119-3000
/federal.org

## Consumer Loan Bill

For JOSHUA P BURCH

Statement Period
21 Jun 2025 - 20 Jul 2025
Access No. 10603363

Questions about this Bill?
Toll-free in the U.S. 1-888-842-6328
For toll-free numbers when overseas,
visit **navyfederal.org/overseas/**
Collect internationally 1-703-255-8837

**Request online statements via Navy Federal Online Banking**

ase disregard payments, fees, and balances already satisfied.
interest paid is needed for tax purposes, please retain this statement for your records.

**yment Allocation: Each time we receive a payment, we first apply it to the interest that has accrued and apply the remainder to the ncipal balance. A late fee will be assessed if the amount due is not received by the payment due date. If the late fee, in addition the payment due, is not paid by your next statement due date, it will be added to your principal balance, and interest will begin to crue thereon.**

© 2024 Navy Federal NFCU 28L (12-24)

## Change of Address

Please print, use blue or black ballpoint pen

| | | | | | |
|---|---|---|---|---|---|
| Rank/Rate | Name: First | MI | Last | Suffix | Account Numbers Affected |
| Address | | | | | |
| | | | | | |
| City | | State | | Zip Code | |
| Home Phone Number | Daytime Phone Number | | | | |
| Signature of Navy Federal Member | | | Effective Date *(MM/DD/YY)* | | |

# SEPERATOR PAGE

## July 21 - August 20, 2025

AVY
EDERAL
redit Union
Box 3000 • Merrifield, VA • 22119-3000
/federal.org

Statement Period
21 Jul 2025 - 20 Aug 2025
Access No. 10603363

#BWNLLSV
#000000Q0V0SSV3A8#000AMU90F
JADE R BURCH
1871 HOLLYWELL ST
LAS VEGAS NV 89135-3348

Questions about this Bill?
Toll-free in the U.S. 1-888-842-6328
For toll-free numbers when overseas,
visit **navyfederal.org/overseas/**
Collect internationally 1-703-255-8837

**Request online statements via Navy Federal Online Banking**

is account statement is provided to you for informational purposes only and should not be construed as an attempt to contact you for /ment. This is not an attempt to collect a debt.

r records indicate that your consumer loan(s) is past due.

430015610053-36

accordance with the Promissory Note, Security Agreement, and Disclosure, a late fee may be assessed for late payments. We may report ormation about your account to the credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in ır credit report.

ou wish to obtain information about your account, you may call us toll-free at 1-800-336-3767. Representatives are available to assist you ekdays between 8 am and 9 pm, and Saturday between 9 am and 5:30 pm, ET.

AVY FEDERAL Credit Union
Box 3000 • Merrifield, VA • 22119-3000
/federal.org

**Consumer Loan Bill**
**For JADE R BURCH**

Statement Period
21 Jul 2025 - 20 Aug 2025
Access No. 10603363

Questions about this Bill?
Toll-free in the U.S. 1-888-842-6328
For toll-free numbers when overseas,
visit **navyfederal.org/overseas/**
Collect internationally 1-703-255-8837

**Request online statements via Navy Federal Online Banking**

**oan Number: 430015610053-36** | **Interest Rate 3.990 %** | **Remaining Balance $27,268.82**

**oan is enrolled in Guaranteed Asset Protection (GAP)**

| | | | |
|---|---|---|---|
| ayments Received During This Period | $0.00 | **Payment Due Date** | **02/20/2025** |
| ast Payment Processed | 04/30/2025 | Regular Monthly Payment | $937.18 |
| | | Past Due | $5,986.66 |
| otal Late Fees Assessed for Life of Loan | $406.00 | Payment Due | $6,923.84 |
| urrent Year Interest Paid* | $581.54 | Late Fee Assessed This Period | $0.00 |
| revious Year Interest Paid | $1,352.94 | **TOTAL** | **$6,923.84** |

**or Guaranteed Asset Protection, you can initiate a claim for a protected event by calling us at 1-866-258-7298, Monday through Friday, am-5:30pm ET.**

ease disregard payments, fees, and balances already satisfied.
interest paid is needed for tax purposes, please retain this statement for your records.

**yment Allocation: Each time we receive a payment, we first apply it to the interest that has accrued and apply the remainder to the ncipal balance. A late fee will be assessed if the amount due is not received by the payment due date. If the late fee, in addition the payment due, is not paid by your next statement due date, it will be added to your principal balance, and interest will begin to crue thereon.**

© 2024 Navy Federal NFCU 28L (12-24)

| JADE R BURCH | Loan Number | Total | Due Date | Amount Enclosed |
|---|---|---|---|---|
| 10603363 | 43001561005336 | 6,923.84 | 02/20/2025 | |
| | | | | |
| | | | | |
| | **Total** | **$6,923.84** | | |
| | **Do not send cash through the mail.** | | **Total Enclosed** | |

NFCU
P.O. BOX 3100
MERRIFIELD, VA 22119-3100

0443001561005336000000000000000000000000006923840000000000000001

AVY FEDERAL redit Union
Box 3000 • Merrifield, VA • 22119-3000
/federal.org

**Consumer Loan Bill**
**For JADE R BURCH**

Statement Period
21 Jul 2025 - 20 Aug 2025
Access No. 10603363

Questions about this Bill?
Toll-free in the U.S. 1-888-842-6328
For toll-free numbers when overseas,
visit **navyfederal.org/overseas/**
Collect internationally 1-703-255-8837

**Request online statements via Navy Federal Online Banking**

›ase disregard payments, fees, and balances already satisfied.
interest paid is needed for tax purposes, please retain this statement for your records.

**yment Allocation: Each time we receive a payment, we first apply it to the interest that has accrued and apply the remainder to the ncipal balance. A late fee will be assessed if the amount due is not received by the payment due date. If the late fee, in addition the payment due, is not paid by your next statement due date, it will be added to your principal balance, and interest will begin to ᴝrue thereon.**

© 2024 Navy Federal NFCU 28L (12-24)

## Change of Address

Please print, use blue or black ballpoint pen

| Rank/Rate | Name: First | MI | Last | Suffix | Account Numbers Affected |
|---|---|---|---|---|---|
| Address | | | | | |
| | | | | | |
| City | | State | Zip Code | | |
| Home Phone Number | | Daytime Phone Number | | | |
| Signature of Navy Federal Member | | | Effective Date *(MM/DD/YY)* | | |

# EXHIBIT 7

## Tesla Service Records Documenting Battery Damage Caused by NFCU's Improper Storage and Transport

**SUMMARY:**

This exhibit contains two Tesla service invoices documenting complete high-voltage battery failure that occurred while the vehicle was in Navy Federal Credit Union's custody following the unlawful repossession on June 18, 2025.

**TIMELINE OF DAMAGE:**

- **June 18, 2025**: Vehicle repossessed from ADA parking space in Las Vegas, NV. Battery functional at time of repossession.
- **June 18-September 2025**: NFCU transported vehicle to Long Beach, CA and stored at BP Ford. Plaintiff tracked vehicle via Tesla mobile app throughout NFCU's custody.
- **September 25, 2025**: First documented battery failure - vehicle would only charge to 30% maximum capacity, requiring complete high-voltage battery replacement under warranty.
- **October 1, 2025**: Continued repair attempts. Total failure of HV battery system due to improper storage/discharge.

**SIGNIFICANCE:**

These records establish that NFCU's commercially unreasonable handling of the collateral caused substantial additional damages beyond the ADA violation. The vehicle was functional when seized but suffered catastrophic battery failure due to NFCU's negligent storage practices during transport from Nevada to California.

**CONTENTS:**

1. Tesla Service Invoice #3000-009-0028939270 (September 25, 2025) - Initial battery failure diagnosis
2. Tesla Service Invoice #3000-009-0029079164 (October 1, 2025) - Continued damage documentation

**Tesla, Inc**
1800 E SPRING ST
LONG BEACH,CA,US 90755-1934
Ph.: (562) 308 5439

# Service Estimate

**SERVICE DEPARTMENT HOURS**
**Mon-Fri 7:00 a.m. - 8:00 p.m**
**Saturday-Sunday 7:00 a.m. - 8:00 p.m**

B.A.R. #ARD00310085

| Invoice date | Invoice number |
|---|---|
| 01-Oct-2025 | 3000-009-0029079164 |
| **Due Date** | **PO Number** |
| 01-Oct-2025 | |
| **Date/Time Received** | **Date/Time Promised** |
| | 10-Oct-2025 16:00:00 |
| **Odometer In** | **Odometer Out** |
| Miles | Miles |
| **Ready Date** | |
| | |
| **Service Advisor** | |
| Michael Ruehl | |

**Bill To**
jade Burch
1871 hollywell st
LAS VEGAS,NV 89135
ruselfmade@me.com

| Mobile Phone | Additional Phone | | Vehicle Identification Number |
|---|---|---|---|
| +16147259452 | | | 5YJ3E1EB9MF999112 |
| **Year** | **Model** | **License Plate Number** | **Colour** |
| 2021 | MODEL 3 | | Pearl White Multi-Coat |

| Job Number | Description Of Work | Amount (USD) |
|---|---|---|
| 1 | **Concern:** vehicle has unable to charge , charge at max and will only charge to 30%<br>**Repair Notes:**<br>**Correction: HV Battery (AWD) - Remove and Replace**<br>**Correction: Discharge HV Battery (Through Touchscreen Service Mode)**<br>**Correction: Perform Post-Repair Validation Test Drive**<br>**Correction: HV Battery Vitals Inspection**<br>*Labor Hours included in other correction — Pay Type: HV Battery Limited Warranty | 0.00 |
| 2 | **Concern:** vehicle has unable to charge , charge at max and will only charge to 30%<br>**Repair Notes:** | 153.50 |

| Correction: Battery - 12V (Lead Acid) (Remove & Replace) - Remove and Replace | Labor Hours | Price | Adjustment | Subtotal |
|---|---|---|---|---|
| | 0.18 | 49.50 | 0.00 | 49.50 |

**Parts Replaced or Added**

| Part | Quantity | Unit Price | Price | Adjustment | Subtotal |
|---|---|---|---|---|---|
| ASSEMBLY - 12V BATTERY AND VENT PLUG(1129182-00-B) | 1.00 | 100.00 | 100.00 | 0.00 | 100.00 |

**Parts Subtotal 100.00**

| **Correction: California Battery Fee** | **Labor Hours** | **Price** | **Adjustment** | **Subtotal** |
|---|---|---|---|---|
| | 0.01 | 2.00 | 0.00 | 2.00 |

**Parts Replaced or Added**

| **Part** | **Quantity** | **Unit Price** | **Price** | **Adjustment** | **Subtotal** |
|---|---|---|---|---|---|
| California�Battery�Fee(2053486-00-A) | 1.00 | 2.00 | 2.00 | 0.00 | 2.00 |

**Parts Subtotal 2.00**

Pay Type: Customer Pay

**Total Parts Amount** 102.00
**Total Labor Amount** 51.50
**Labor Hours** 0.19

**Concern:** Check tire pressure and condition

**Repair Notes:**

3 **Correction: Automated Tire Pressure Check**

Pay Type: Goodwill-Internal

**0.00**

**Concern:** Check tire pressure and condition

**Repair Notes:**

| **Correction: Windshield Washer Fluid - Top Off** | **Labor Hours** | **Price** | **Adjustment** | **Subtotal** |
|---|---|---|---|---|
| 4 | 0.00 | 0.00 | 0.00 | 0.00 |

Pay Type: Customer Pay

**Total Parts Amount** 0.00
**Total Labor Amount** 0.00
**Labor Hours** 0.00

**0.00**

Service Center hourly rate: USD 275
Notes: To assess your vehicle's Tire Wear and Condition, please see the Tire Care and Maintenance section from the digital Owner's Manual in your car.

All parts are new unless otherwise specified.

**Accepted Payment Methods:Major Credit Cards (Visa, Mastercard, AMEX, etc.), Debit Card, Cashier's Check**

You agree that:You are entitled to a price estimate for the repairs you have authorized. The repair price may be less than the estimate but shall not exceed (1) any price limited estimate or (2) any parts and labor estimate by more than 10%. Additional repairs may not be performed without your consent. This estimated price for authorized repairs will be honored if your vehicle is delivered to Tesla's facility within the time periodagreed to by you and Tesla. You may waive your right to a written estimate and require that you be notified if the price exceeds an amount you have specified. Tesla is not responsible for any personal items left in your vehicle; Tesla and its employees may access and operate your vehicle including on streets, highways, or public roadways for the sole purpose of testing and/or inspection of repairs; Tesla may update your vehicle's software in the course of a repair or as part of the standard vehicle maintenance process per your

| | |
|---|---|
| Total Parts (USD) | 102.00 |
| Total Labor (USD) | 51.50 |
| Discount | 0.00 |
| **Subtotal (USD)** | 153.50 |
| Tax | 10.71 |
| **Total Amount (USD)** | 164.21 |

owner's manual and New Vehicle Limited Warranty; Tesla and its employees may access, download and use the information stored on your vehicle's data recorder to service and diagnose issues with your vehicle, and Tesla may store and aggregate such data for its own purposes; an express mechanic's lien is hereby acknowledged on your vehicle to secure the amount of repairs, storage and other applicable fees; the vehicle owner's insurance provides exclusive coverage for the vehicle while it is in Tesla's possession; and you may be charged storage fees of $35/day from the fourth working day after you are notified that repairs on your vehicle are complete and that the vehicle is ready for pick up.

Tesla disclaims all express or implied warranties with respect to any repairs or products used in repairs, except as may be set forth in your Tesla-issued New or Used Vehicle Limited Warranty, Tesla Parts, Body, and Paint Repair Limited Warranty or other extended service agreement. Tesla is not responsible for repairs not performed by, or components not installed by, Tesla. Any parts (including tires/wheels) removed or replaced by Tesla during vehicle service will become the property of Tesla. However, at the time you authorize repairs, you may request to receive (subject to any applicable core charge, which you agree to pay) or inspect replaced parts (excluding inflatable restraint system components), except body shop repair parts and parts required to be returned to the manufacturer or a third party under a warranty, trade-in or exchange agreement, which will only be presented to you for examination and not returned.

I authorize the repair work, including parts, materials and labor, on my vehicle to be done pursuant to the terms and conditions as set forth in this service agreement document.

**Signature:** **Date:**

Warning:Motor vehicles contain chemicals known to the State of California to cause cancer and birth defects or other reproductive harm.

**FullName:**

A buyer of this product in California has the right to have this product serviced or repaired during the warranty period. The warranty period will be extended for the number of whole days that the product has been out of the buyer's hands for warranty repairs. If a defect exists within the warranty period, the warranty will not expire until the defect has been fixed. The warranty period will also be extended if the warranty repairs have not been performed due to delays caused by circumstances beyond the control of the buyer, or if the warranty repairs did not remedy the defect and the buyer notifies the manufacturer or seller of the failure of the repairs within 60 days after they were completed. If, after a reasonable number of attempts, the defect has not been fixed, the buyer may return this product for a replacement or a refund subject, in either case, to deduction of a reasonable charge for usage. This time extension does not affect the protections or remedies the buyer has under other laws.

You further agree and acknowledge that:

- You have the right to inspect your vehicle on Tesla premises prior to payment
- Tesla is not responsible for loss or damage to the vehicle or any articles left in the vehicle in case of fire, theft, hail, wind, or any other causes beyond its control;
- Tesla personnel will turn off any photo or video capturing devices, such as dashboard cameras, once they receive the vehicle in preparation for service and your vehicle's Tesla dash cam will be enabled when you pick up your Tesla from this Service visit;
- Labor charges are not based solely on actual service personnel's time but are aggregate prices for specific services or repairs, which may include flat rates based on industry manuals and vehicle condition;
- Waste storage and disposal fees are charged separately when applicable to specific services or repairs, and represent costs and profits to Tesla which are calculated based on average annualized costs across Tesla service facilities;
- Items purchased over the counter or online directly from Tesla may be returned within 30 days with a proof of purchase and must be in their original and uninstalled condition with factory labeling attached and in factory packaging (if supplied);
- Tesla-branded parts purchased directly from Tesla over-the-counter, online or purchased and installed by Tesla Service are covered under the Tesla Parts, Body, and Paint Repair Limited Warranty for a period of 12 months subject to the applicable terms, conditions and exclusions and available at https://www.tesla.com/support/vehicle-warranty;
- All charges for repairs, including labor, parts and materials furnished, are due and payable simultaneously with the return of your vehicle or prior to return upon the expiration of three (3) working days after notice has been sent by Tesla that the vehicle is ready;
- If applicable, you have the right to choose the licensed repair shop where the damage to your vehicle will be repaired;
- All crash parts supplied meet the standards used in manufacturing the original equipment replaced;
- If any repair, storage and other applicable fees remain unpaid for thirty (30) days after a request for payment, Tesla may pursue collection and you will be responsible for paying all reasonable attorney's fees and costs for such collection;

- If provided a loaner or rental vehicle, the vehicle must be returned within 24 hours of such notification or a daily usage rate of up to $100 USD and applicable fees will be charged until the return of such loaner vehicle;
- The repair work may not be completed prior to the date and time noted under Date/Time Promised and Tesla may adjust the estimated completion date upon notification to you and is not responsible for any delays caused by the unavailability of parts or parts shipments; and
- Tesla (and any of its subsidiaries) may contact you via emails, calls, SMS or other messages including through the Tesla app (collectively, "messages") to obtain authorization and provide updates regarding this Service visit and your vehicle. Standard SMS message and data rates may apply. You can withdraw your consent to receive automated SMS messages at any time by replying "STOP"or providing written notification to Tesla's customer representative.
- This dealer is required by law to charge a nonrefundable $2 California battery fee and a refundable deposit for each lead-acid battery purchased. A credit of the same amount as the refundable deposit will be issued if a used lead-acid battery is returned at the time of purchase or up to 45 days later along with this dealer's receipt.

**Tesla, Inc**
1800 E SPRING ST
LONG BEACH,CA,US 90755-1934
Ph.: (562) 308 5439

# Service Estimate

**SERVICE DEPARTMENT HOURS**
**Mon-Fri 7:00 a.m. - 8:00 p.m**
**Saturday-Sunday 7:00 a.m. - 8:00 p.m**

B.A.R. #ARD00310085

**Invoice date**
25-Sep-2025

**Invoice number**
3000-009-0028939270

**Due Date**
25-Sep-2025

**PO Number**

**Date/Time Received**

**Date/Time Promised**
13-Oct-2025 16:45:00

**Odometer In**
Miles

**Odometer Out**
Miles

**Ready Date**

**Service Advisor**
Manny Hernandez Ramos

**Bill To**
Billy Stone
6501 Cherry Avenue
Long Beach,CA 90805
bballstone22@yahoo.com

| Mobile Phone | Additional Phone | | Vehicle Identification Number |
|---|---|---|---|
| +3233824637 | | | 5YJ3E1EB9MF999112 |
| **Year** | **Model** | **License Plate Number** | **Colour** |
| 2021 | MODEL 3 | | Pearl White Multi-Coat |

| Job Number | Description Of Work | Amount (USD) |
|---|---|---|
| 1 | **Concern:** Check tire pressure and condition<br>**Repair Notes:**<br>**Correction: Windshield Washer Fluid - Top Off** — Labor Hours 0.00, Price 0.00, Adjustment 0.00, Subtotal 0.00<br>Pay Type: Customer Pay<br>**Total Parts Amount** 0.00<br>**Total Labor Amount** 0.00<br>**Labor Hours** 0.00 | 0.00 |
| 2 | **Concern:** Check tire pressure and condition<br>**Repair Notes:**<br>**Correction: Automated Tire Pressure Check**<br>Pay Type: Goodwill-Internal | 0.00 |
| 3 | **Concern:** vehicle has unable to charge , charge at max and will only charge to 30%<br>**Repair Notes:**<br>**Correction: HV Battery (AWD) - Remove and Replace**<br>**Correction: Discharge HV Battery (Through Touchscreen Service Mode)** | 0.00 |

**Correction: Perform Post-Repair Validation Test Drive**

*Labor Hours included in other correction    Pay Type: HV Battery Limited Warranty

Service Center hourly rate: USD 275
Notes: To assess your vehicle's Tire Wear and Condition, please see the Tire Care and Maintenance section from the digital Owner's Manual in your car.

All parts are new unless otherwise specified.

**Accepted Payment Methods:Major Credit Cards (Visa, Mastercard, AMEX, etc.), Debit Card, Cashier's Check**

You agree that:You are entitled to a price estimate for the repairs you have authorized. The repair price may be less than the estimate but shall not exceed (1) any price limited estimate or (2) any parts and labor estimate by more than 10%. Additional repairs may not be performed without your consent. This estimated price for authorized repairs will be honored if your vehicle is delivered to Tesla's facility within the time periodagreed to by you and Tesla. You may waive your right to a written estimate and require that you be notified if the price exceeds an amount you have specified. Tesla is not responsible for any personal items left in your vehicle; Tesla and its employees may access and operate your vehicle including on streets, highways, or public roadways for the sole purpose of testing and/or inspection of repairs; Tesla may update your vehicle's software in the course of a repair or as part of the standard vehicle maintenance process per your owner's manual and New Vehicle Limited Warranty; Tesla and its employees may access, download and use the information stored on your vehicle's data recorder to service and diagnose issues with your vehicle, and Tesla may store and aggregate such data for its own purposes; an express mechanic's lien is hereby acknowledged on your vehicle to secure the amount of repairs, storage and other applicable fees; the vehicle owner's insurance provides exclusive coverage for the vehicle while it is in Tesla's possession; and you may be charged storage fees of $35/day from the fourth working day after you are notified that repairs on your vehicle are complete and that the vehicle is ready for pick up.

| | |
|---|---|
| Total Parts (USD) | 0.00 |
| Total Labor (USD) | 0.00 |
| Discount | 0.00 |
| **Subtotal (USD)** | 0.00 |
| Tax | 0.00 |
| **Total Amount (USD)** | 0.00 |

Tesla disclaims all express or implied warranties with respect to any repairs or products used in repairs, except as may be set forth in your Tesla-issued New or Used Vehicle Limited Warranty, Tesla Parts, Body, and Paint Repair Limited Warranty or other extended service agreement. Tesla is not responsible for repairs not performed by, or components not installed by, Tesla. Any parts (including tires/wheels) removed or replaced by Tesla during vehicle service will become the property of Tesla. However, at the time you authorize repairs, you may request to receive (subject to any applicable core charge, which you agree to pay) or inspect replaced parts (excluding inflatable restraint system components), except body shop repair parts and parts required to be returned to the manufacturer or a third party under a warranty, trade-in or exchange agreement, which will only be presented to you for examination and not returned.

I authorize the repair work, including parts, materials and labor, on my vehicle to be done pursuant to the terms and conditions as set forth in this service agreement document.

**Signature:**    **Date:**

Warning:Motor vehicles contain chemicals known to the State of California to cause cancer and birth defects or other reproductive harm.

**FullName:**

A buyer of this product in California has the right to have this product serviced or repaired during the warranty period. The warranty period will be extended for the number of whole days that the product has been out of the buyer's hands for warranty repairs. If a defect exists within the warranty period, the warranty will not expire until the defect has been fixed. The warranty period will also be extended if the warranty repairs have not been performed due to delays caused by circumstances beyond the control of the buyer, or if the warranty repairs did not remedy the defect and the buyer notifies the manufacturer or seller of the failure of the repairs within 60 days after they were completed. If, after a reasonable number of attempts, the defect has not been fixed, the buyer may return this product for

**a replacement or a refund subject, in either case, to deduction of a reasonable charge for usage. This time extension does not affect the protections or remedies the buyer has under other laws.**

You further agree and acknowledge that:

- You have the right to inspect your vehicle on Tesla premises prior to payment
- Tesla is not responsible for loss or damage to the vehicle or any articles left in the vehicle in case of fire, theft, hail, wind, or any other causes beyond its control;
- Tesla personnel will turn off any photo or video capturing devices, such as dashboard cameras, once they receive the vehicle in preparation for service and your vehicle's Tesla dash cam will be enabled when you pick up your Tesla from this Service visit;
- Labor charges are not based solely on actual service personnel's time but are aggregate prices for specific services or repairs, which may include flat rates based on industry manuals and vehicle condition;
- Waste storage and disposal fees are charged separately when applicable to specific services or repairs, and represent costs and profits to Tesla which are calculated based on average annualized costs across Tesla service facilities;
- Items purchased over the counter or online directly from Tesla may be returned within 30 days with a proof of purchase and must be in their original and uninstalled condition with factory labeling attached and in factory packaging (if supplied);
- Tesla-branded parts purchased directly from Tesla over-the-counter, online or purchased and installed by Tesla Service are covered under the Tesla Parts, Body, and Paint Repair Limited Warranty for a period of 12 months subject to the applicable terms, conditions and exclusions and available at https://www.tesla.com/support/vehicle-warranty;
- All charges for repairs, including labor, parts and materials furnished, are due and payable simultaneously with the return of your vehicle or prior to return upon the expiration of three (3) working days after notice has been sent by Tesla that the vehicle is ready;
- If applicable, you have the right to choose the licensed repair shop where the damage to your vehicle will be repaired;
- All crash parts supplied meet the standards used in manufacturing the original equipment replaced;
- If any repair, storage and other applicable fees remain unpaid for thirty (30) days after a request for payment, Tesla may pursue collection and you will be responsible for paying all reasonable attorney's fees and costs for such collection;
- If provided a loaner or rental vehicle, the vehicle must be returned within 24 hours of such notification or a daily usage rate of up to $100 USD and applicable fees will be charged until the return of such loaner vehicle;
- The repair work may not be completed prior to the date and time noted under Date/Time Promised and Tesla may adjust the estimated completion date upon notification to you and is not responsible for any delays caused by the unavailability of parts or parts shipments; and
- Tesla (and any of its subsidiaries) may contact you via emails, calls, SMS or other messages including through the Tesla app (collectively, "messages") to obtain authorization and provide updates regarding this Service visit and your vehicle. Standard SMS message and data rates may apply. You can withdraw your consent to receive automated SMS messages at any time by replying "STOP"or providing written notification to Tesla's customer representative.
- This dealer is required by law to charge a nonrefundable $2 California battery fee and a refundable deposit for each lead-acid battery purchased. A credit of the same amount as the refundable deposit will be issued if a used lead-acid battery is returned at the time of purchase or up to 45 days later along with this dealer's receipt.

# EXHIBIT 9

ADA Handicap Placard (Displayed at Repossession)

**Navy Federal Credit Union., et al.**
Case No. 2:25-cv-01897-MMD-DJA
United States District Court
District of Nevada

---

Submitted by:
**Jade Riley Burch**
Plaintiff, Pro Se


STATE OF NEVADA
DEPARTMENT OF
MOTOR VEHICLES
PUNCHING MORE THAN
ONE (1) MONTH AND/OR
YEAR VOIDS
THIS PLACARD
JAN FEB MAR APR MAY JUN JUL AUG SEP OCT NOV DEC
2025 2026 2027 2028 2029 2030 2031 2032 2033 2034 2035 2036
EXPIRES
Disabled Person's Parking
Identification Placard
A162511
EXHIBIT C

# EXHIBIT 10

Triage Alert: "HIGH-RISK SEIZURE PATIENT" (June 16, 2025)

**Navy Federal Credit Union., et al.**
Case No. 2:25-cv-01897-MMD-DJA
United States District Court
District of Nevada

---

Submitted by:
**Jade Riley Burch**
Plaintiff, Pro Se

EXHIBIT J 7-6-25

## TRIAGE ALERT – HIGH-RISK SEIZURE PATIENT

**Patient Name:** Jade Riley Durch

**DOB:** July 31, 1978

**Emergency Contact:** Porscha Ryan – 702-787-1871

### PRESENTING EMERGENCY ISSUES:

- - 16 seizures in 3 days; multiple grand mal with collapse, foaming, paralysis, and loss of consciousness
- - Most recent grand mal on June 16 included lip biting, loss of consciousness, and Todd's paresis
- - Severe neck/throat swelling post-craniofacial surgery (April 2025); risk of airway compromise
- - Cannot walk safely post-seizure; high fall and elopement risk
- - History of cardiac arrest, pulmonary embolism (on Eliquis), and oxygen dependence
- - Patient is NOT suicidal or psychiatric – this is a medical stabilization request

### LEGAL & CARE DIRECTIVES:

- - PAD and Medical Exception Letter are on file
- - Locked psychiatric placement is <u>PROHIBITED</u>
- - Red binder provided at intake must be reviewed and returned at discharge
- - Alter profiles, restraint protocols, and care expectations included in binder

### DISCHARGE SAFETY REQUIREMENT:

- - Requires 24/7 monitoring; case management must coordinate nighttime nurse or supervision
- - Lives on 12th floor; severe risk if discharged without support

To triage and medical staff: Thank you for reviewing this. The full intake summary is attached behind this page.

## SEIZURE CLUSTER – MEDICAL FLOOR ONLY

**Patient Name:** Jade Riley Burch

**DOB:** July 31, 1978

**Date of Visit:** June 16, 2025

**Location:** University Medical Center (UMC), Las Vegas, NV

**Emergency Contact:** Porscha Ryan – 702-787-1871

### Current Medications

- Depakote ER 500 mg twice daily (seizures, mood stabilization)
- Keppra (dose not stated; seizure prevention)
- Zyprexa 10 mg daily (schizoaffective disorder)
- Zoloft 25 mg daily (depression)
- Buspirone 15 mg daily (anxiety)
- Ativan (as needed; anxiety)
- Adderall 10 mg twice daily (ADHD)
- Wellbutrin (dose not stated; depression)
- Eliquis (blood thinner; PE management)
- Lisinopril (blood pressure)
- Amlodipine (blood pressure)
- Atorvastatin 10 mg (cholesterol)
- Humalog (sliding scale insulin)
- Supplemental Oxygen (nighttime use or as needed)

### Reason for Presentation

I am presenting for urgent medical and psychiatric stabilization. I am not suicidal or homicidal. I am seeking voluntary medical inpatient admission due to active neurological instability and high-risk dissociation episodes. These conditions are life-threatening if left unmanaged overnight at home, and I am presenting in good faith to prevent a medical crisis.

## Seizure Activity Log – June 14–16, 2025

June 14, 2025
- Total: 4 seizures
  - 1 smaller seizure
  - 1 large seizure with:
    - Foaming
    - Post-ictal paralysis
    - Inability to speak
  - 2 additional seizures later in the day:
    - Foaming
    - Blank staring
    - Loss of bladder control

June 15, 2025
- Total: 9 confirmed seizures
  - 4 clustered smaller seizures earlier in the day
  - 1 large seizure with:
    - Foaming
    - Paralysis
    - Speech loss
    - Incontinence
  - 1 seizure with:
    - Foaming
    - Inability to move limbs
    - Only head and eye movement preserved
    - Unable to speak
  - 2 more later in the day:
    - 1 short focal seizure
    - 1 prolonged grand mal:
      - *Violent body jerking*
      - *Foaming at the mouth*
      - *Eyes rolled back*
      - *Loss of consciousness*
      - *Postictal crying, sweating, rapid heart rate*
- *Attempted to walk post-seizure, collapsed from leg paralysis (Todd's paresis)*

June 16, 2025
- Total: 3 events
  - Early Morning:
    - 1 short seizure with eye fluttering and staring
  - Mid-Morning:
    - 1 grand mal with:
      - Violent jerking
      - Foaming at the mouth

- Eyes rolled back
- Loss of consciousness
- Crying, sweating, fast heart rate
- Patient bit their lower lip (painful and may need oral exam)

- Post-Seizure:
  - Leg paralysis, collapsed while trying to walk (Todd's paresis)

Seizures range from approximately 45 seconds to 2 minutes. They almost always occur in clusters and are never isolated. Postictal effects include paralysis, speech loss, bladder loss, confusion, and collapse. These seizures carry high risk due to prior cardiac arrest, craniofacial surgery, and oxygen dependence.

## Urgent Physical Symptoms – Throat/Neck Swelling

In addition to seizure activity, I am currently experiencing a new and urgent physical symptom involving my throat and neck. There is severe swelling that feels fluid-filled, is painful and sore to the touch, and worsens when I lower my head. When I look down, I experience a choking sensation as if my airway is being compressed. This has significantly worsened today.

Given my history of major skull and facial reconstructive surgery in April 2025, this may represent post-surgical fluid buildup (seroma), infection, hematoma, or scar-related obstruction. I am requesting immediate physical examination of the neck, with imaging if needed (CT scan or ultrasound), and ENT consultation to rule out airway compromise or delayed surgical complication. This must be evaluated and treated today if possible, as I am at high risk for deterioration.

## Other Presenting Concerns

- Dissociative Identity Disorder (DID): child alter elopes barefoot; protective alter may resist care
- PTSD and medical trauma history
- High fall risk at night due to seizures and dissociation
- Recent craniofacial surgery (April 2025)
- On oxygen, psychiatric medications, anti-seizure therapy
- History of PE managed with Eliquis
- On Lisinopril and Amlodipine for cardiovascular support

## *Seizure Explanation – For Staff*

I have a dual diagnosis of epilepsy and PNES (Psychogenic Nonepileptic Seizures). I experience both types, and symptoms overlap—convulsions, paralysis, foaming, speech loss, or incontinence. It is not always possible to tell which type is occurring at the time. Both are real, both are dangerous, and both require safety monitoring. Thank you for treating me with trauma-informed care and professionalism.

### Care Coordination & Discharge Requirements

I need early Case Management involvement. I require 24/7 monitoring and am not safe for discharge without it. My medical agent covers daytime, but I need nighttime in-home care. I live on the 12th floor of a high-rise, and I am at risk for falls, elopement, and serious injury overnight. Please coordinate safe discharge planning with this in mind.

### Medication Safety and Regulation

Given the complexity of my medical and psychiatric treatment, I am requesting a full medication review during this admission. Please ensure that none of my current prescriptions are interacting harmfully, that my doses are properly balanced, and that no single agent is worsening my seizures, psychiatric state, or physical health. I am open to pharmacy consult or medication reconciliation to ensure all prescriptions are medically appropriate.

### Legal Documents on File

My Psychiatric Advanced Directive (PAD) and Medical Exception Letter are uploaded in UMC's system. They:

- Prohibit locked psychiatric placement
- Define safety protocols for restraint use and hygiene
- Include alter profiles and instructions
- Binder must be reviewed at intake and returned at discharge

### Patient Note

I have experienced serious medical trauma in the past — including being ignored during crises, denied necessary medications, and left unmonitored during seizures. These encounters caused not only physical harm, but also deep emotional injury. I was dismissed, retraumatized, and treated as a diagnosis instead of as a person.

In response, I became my own advocate. I've studied advanced medical rights and legal protections, including elements of health and disability law, to ensure my documentation is both clinically relevant and legally sound. I've invested countless hours preparing these materials — not to overwhelm or challenge your care, but to bridge the gap between my lived experience and the clinical setting. Everything you're reading reflects careful effort to help you help me, safely and effectively.

Please don't mistake this preparation as resistance. I am here because I need support — but I need support that respects my complex medical needs, psychiatric history, and trauma background. I'm not here to be difficult. I'm here to stay alive and safe. I'm simply asking for care that is safe, respectful, collaborative, and trauma-informed. I truly want to work with you as a team, and I hope this preparation makes that easier — not harder.

**Thank you on Final Page!**

**To every nurse, tech, and provider reading this:**

You are absolutely amazing. You show up every day to care for people at their most vulnerable moments, and you do it with skill, compassion, and probably way too much coffee and not enough sleep.

I know this document is long—sorry! But I wrote it thinking about making your job easier. You shouldn't have to play detective with my medical history when you have a dozen other patients to care for.

You chose one of the hardest, most important jobs in the world. You're real heroes—the kind who wear scrubs instead of capes and save lives with stethoscopes instead of superpowers. You probably don't hear this enough, but you make the world better, one patient at a time.

Thank you for your gentle hands, your patient explanations, and for caring about strangers like family. I'm honored to be in your care, and I promise to be the easiest patient you have today.

You've got this, and I've got your back.

With genuine gratitude, Jade Riley Burch

P.S. I hope someone brings you good coffee today! ❤ -






# EXHIBIT 11

## Neurologist Letter (June 16, 2025) – Emergency Admission Order

**Navy Federal Credit Union., et al.**
Case No. 2:25-cv-01897-MMD-DJA
United States District Court
District of Nevada

---

Submitted by:
**Jade Riley Burch**
Plaintiff, Pro Se

LAS VEGAS
NEUROLOGY
CENTER

Multi-Specialty Board Certified
Neurologists

Dr. Paul H. Janda, D.O., J.D., Esq.
Residency Program Director
Dr. Robert W. Ralsigen, D.O.
Dr. Jay P. Mahajan, D.O.
Dr. Simon Farrow, M.D.
Dr. Arnucha Vickers, D.O.
Neuro-Ophthalmologist
Dr. Lisa Conners, D.O.
Epileptologist
Dr. Garet Zaugg, D.O.
Dr. Duncan Gilmour, D.O.
Dr. Micheal Dang, D.O.
Dr. Denise LaBelle, Ph.D.
Neuropsychologist
Dr. Davor Zink, Ph.D.
Neuropsychologist
Jennifer Walsh, APRN
Evita K. Tan, APRN-C
Emmy Foster, APRN
Bernadette Sisnorio, APRN

2020 Wellness Way, Suite #300
Las Vegas, NV 89106
Phone: 702.432.2233
Fax: 702.800.5456

Services:
Neurology Consultations
Neuro-Ophthalmology Consults
Neuropsychological Assessments
Independent Medical Examinations
Nerve Conduction Studies NCS/EMG
Electroencephalogram (EEG)
Evoked Potentials
Botox Therapy
DBS/VNS Interrogation
VNG Vertigo Assessments

Inpatient Services at:
Centennial Hills Hospital
Valley Hospital
Henderson Hospital

Date: 06/16/2025

Re: Jade Burch

DOB: 07/31/1978

To Whom It May Concern:

The patient is currently treated in office for a neurological condition for history of seizure. Patient has had numerous seizures since last week. Recommended patient to be seen in the emergency room and will have a scheduled follow-up with our clinic on 06/23/2025.

If you have any further questions, please call 702-432-2233 ext 173.

Sincerely,

Reji Mari Paradela
APRN
2020 Wellness Way Ste. 300
Las Vegas, NV 89106
Tel. 702-432-33
Fax.702-800-5456

# EXHIBIT 12

UMC Incident Summary - Two Refusals of Care

**Navy Federal Credit Union., et al.**
Case No. 2:25-cv-01897-MMD-DJA
United States District Court
District of Nevada

---

Submitted by:
**Jade Riley Burch**
Plaintiff, Pro Se

**EXHIBIT 12: UMC INCIDENT SUMMARY – TWO REFUSALS OF CARE**

**SUMMARY OF EVENTS**

On June 16, 2025, at approximately 7:30 AM, Plaintiff Jade Riley Burch arrived at University Medical Center of Southern Nevada **after suffering three seizures earlier that morning**. UMC's own medical records document her arrival, chief complaint of "seizures," and notation that her seizures were **"getting worse."** She carried a clearly labeled red folder containing her notarized Psychiatric Advance Directive (PAD) and a detailed intake summary. **Despite presenting these materials at triage, UMC staff refused to review them.**

The triage nurse dismissed both the PAD and intake documentation. Physician Assistant Dallas Gunny likewise **refused to acknowledge or review either document**. Dr. John McCort conducted a cursory exam, declared her condition "chronic," and **refused to provide any treatment**. When Plaintiff stated, "I want to speak to legal, I know my rights," Dr. McCort responded, **"On that note, I'm out,"** and abruptly terminated the encounter.

Plaintiff was told there was a "chain of command" and she **could not speak with hospital legal staff**. When she asked who she was permitted to speak with, staff directed her to charge nurse Tyler. Plaintiff explained to Tyler that UMC was violating EMTALA and identified the specific deficiencies: **no medical screening exam, no vitals, no labs, and no seizure stabilization**. Tyler insisted UMC had done "what was required" and instructed Plaintiff to "see your neurologist instead."

Following this instruction, Plaintiff went across the street to her neurologist at Las Vegas Neurology. Recognizing the severity of the situation, **her neurologist issued a signed letter recommending immediate ER readmission for seizure stabilization**.

With this medical recommendation in hand, Plaintiff returned to UMC at approximately 9:30 AM. Upon arrival, the same triage nurse **blocked her entry, physically preventing Plaintiff from reaching the triage desk**. When Plaintiff attempted to present the neurologist's letter, **the nurse snatched the letter out of her hands**, stating dismissively that neurologists "write these to cover their asses."

Plaintiff demanded to be seen. The nurse called charge nurse Tyler in Plaintiff's presence. Plaintiff overheard Tyler state over the phone that UMC would **"do the same thing as before"** and would **"send her on her way again,"** confirming that **UMC had predetermined a second refusal of care without any medical assessment**.

After being told explicitly that UMC would again refuse treatment and provide no medical screening **despite a physician's written order for ER readmission**, Plaintiff stated, "I will see you in court," and exited. **No vitals were taken, no medical screening was provided, no labs were drawn, and no seizure-stabilization measures were offered. This constituted a second EMTALA refusal of care.**

Over the course of the day, **Plaintiff suffered nine seizures**, including episodes involving **drooling, oxygen dependence, urinary incontinence, and physical injury**. Several episodes would have been mitigated had UMC performed basic stabilization measures such as vitals, bloodwork, medication-level checks, or monitoring.

During both refusals, UMC staff **misgendered Plaintiff repeatedly, despite explicit instructions in her PAD**. Staff used improper pronouns and mocking language in front of her partner and designated agent, Porscha Ryan. This conduct compounded her distress, worsened psychiatric symptoms, and constitutes **discriminatory treatment under federal civil rights protections**.

# EXHIBIT 13

National Weather Service Report – 106°F
(June 18, 2025)

**Navy Federal Credit Union., et al.**
Case No. 2:25-cv-01897-MMD-DJA
United States District Court
District of Nevada

---

Submitted by:
**Jade Riley Burch**
Plaintiff, Pro Se

WORLD WEATHER

# Weather in Las Vegas, June 18

## June 18, 2025

| | Atmospheric conditions and temperature °F | RealFeel °F | Atmospheric pressure inHg | Wind speed mph | Humidity |
|---|---|---|---|---|---|
| Night | +90° | +90° | 27.7 | W 5.4 | 9% |
| Morning | +88° | +88° | 27.8 | SW 5.1 | 10% |
| Day | +106° | +106° | 27.8 | E 4.5 | 6% |
| Evening | +106° | +106° | 27.7 | E 8.5 | 2% |

## Bio-meteorological forecast

| | | |
|---|---|---|
| **Meteorological sensitivity index** | 4 | Strong reactions to the weather are possible by meteosensitive people. |
| **Effect of low pressure** | 1 | Low atmospheric pressure may affect some meteosensitive people. |
| **Geomagnetic conditions** | 2 | Solar activity may affect some sensitive people. |
| **Influence of solar activity** | 4 | Extreme risk of harm from unprotected sun exposure due to intense UV radiation, staying in shade during midday is recommended. |

# EXHIBIT 14

Post-Repossession Seizure Log (17th Seizure)

**Navy Federal Credit Union., et al.**
Case No. 2:25-cv-01897-MMD-DJA
United States District Court
District of Nevada

---

Submitted by:
**Jade Riley Burch**
Plaintiff, Pro Se

## EXHIBIT 14

**Exhibit B – Post-Repossession Seizure Log (June 18–19, 2025)**
**Prepared by:** Jade Riley Burch
**Purpose:** Medical and legal documentation of seizure activity triggered immediately after the unlawful repossession of Plaintiff's ADA-protected vehicle.

---

### Background

On June 18, 2025, Plaintiff's ADA-reserved vehicle was repossessed during extreme heat while her valid handicap placard was displayed. Plaintiff relies on the vehicle for medical safety, including access to oxygen equipment and emergency transportation during seizure activity. Within minutes of the repossession, Plaintiff entered a state of acute neurological destabilization, resulting in twenty documented seizures in less than 28 hours.
This log reflects contemporaneous notes, timestamps, and witness observations.

---

**June 18, 2025 – Day of Repossession**

| Time | Duration (if known) | Description of Episode |
|---|---|---|
| 7:15 PM | — | First seizure. Onset occurred immediately after repossession event. Sudden shaking and altered awareness. |
| 7:17 PM | — | Second seizure. Urinary incontinence. Marked loss of autonomic control. |
| 7:21 PM | ~1 min 40 sec | Third seizure. Foaming at the mouth. Extended tonic-clonic activity. |
| 7:50 PM | ~3 minutes | Fourth seizure. Full tonic-clonic episode, prolonged, postictal confusion. |
| 8:21 PM | — | Fifth seizure. Muscle jerking and impaired responsiveness. |
| 8:22 PM | — | Sixth seizure. Immediate recurrence. Cluster pattern emerging. |
| 8:24 PM | — | Seventh seizure. Third consecutive cluster seizure within three minutes. |

**Total seizures on June 18, 2025: 7**

**June 19, 2025 – Juneteenth (Federal Holiday, Services Closed)**

| Time | Description of Episode |
|---|---|
| ~12:20 AM | Eighth seizure. Muscle spasms, confusion. Oxygen required. |
| ~4:10 AM | Ninth seizure. Eyes rolled back, breathing difficulty, unresponsive to verbal cues. |
| 7:42 AM | Tenth seizure. Mild shaking, post-episode fatigue. |
| 9:55 AM | Eleventh seizure. Tonic-clonic. Witnessed in full. Urinary incontinence. |
| 11:30 AM | Twelfth seizure. Twitching, confusion, required oxygen support. |
| 12:48 PM | Thirteenth seizure. Drooling, shaking, prolonged disorientation. |
| 2:05 PM | Fourteenth seizure. Intense shaking, breathing impairment, fall risk. |
| 3:19 PM | Fifteenth seizure. Shallow breathing, trembling, oxygen required. |
| 4:42 PM | Sixteenth seizure. Brief convulsive episode, unstable gait afterward. |
| 6:35 PM | Seventeenth seizure. Intense tonic-clonic shaking, fall risk. Oxygen administered. |
| 7:15 PM | Eighteenth seizure. Prolonged shaking, eyes rolled back, bladder loss. |
| 9:22 PM | Nineteenth seizure. Severe confusion, impaired speech, persistent twitching. |
| 11:57 PM | Twentieth seizure. Full tonic-clonic episode. Postictal exhaustion, oxygen required. |

**Total seizures on June 19, 2025: 13**

**<u>Total Seizures Within 28 Hours of Repossession: 20</u>**

**Medical and Causation Context**

- Plaintiff has multiple seizure disorders requiring strict medication adherence, temperature regulation, and access to oxygen.
- The repossession removed life-sustaining medical equipment and eliminated Plaintiff's ability to leave the scene or seek care.
- Extreme heat exceeded medical safety thresholds, significantly increasing the risk of breakthrough seizures.
- The cluster-seizure pattern documented above is consistent with neurologic destabilization caused by acute stress, heat exposure, and loss of access to stabilizing medical devices.
- The federal holiday closure (Juneteenth) prevented Plaintiff from resolving the repossession or restoring access to medical necessities, compounding the harm.

**Certification**

I declare under penalty of perjury that the events and timestamps recorded in this exhibit are true and accurate to the best of my knowledge.

/s/ Jade Riley Burch

Date: 11/28/2025

# EXHIBIT 15

## Litigation Hold Letter (August 9, 2025) with Delivery Confirmation

**Navy Federal Credit Union., et al.**
Case No. 2:25-cv-01897-MMD-DJA
United States District Court
District of Nevada

---

Submitted by:
**Jade Riley Burch**
Plaintiff, Pro Se

Gmail Jade Burch <jaderburch@gmail.com>

## RE: Litigation Hold & Notice of Imminent Federal Filing BURCH v. NFCU

1 message

**Jade Burch** <jaderburch@gmail.com> Sat, Aug 9, 2025 at 11:26 AM
To: "compliance@navyfederal.org" <compliance@navyfederal.org>, "legal@navyfederal.org" <legal@navyfederal.org>, "steven_weisberg@navyfederal.org" <steven_weisberg@navyfederal.org>, "officeofthepresident@navyfederal.org" <officeofthepresident@navyfederal.org>, "Collateral_Risk@navyfederal.org" <collateral_risk@navyfederal.org>, "corporate_communications@navyfederal.org" <corporate_communications@navyfederal.org>, "mary.mcdowell@navyfederal.org" <mary.mcdowell@navyfederal.org>, "executiveescalations@navyfederal.org" <executiveescalations@navyfederal.org>, "michael.locke@navyfederal.org" <michael.locke@navyfederal.org>, "humanresources@navyfederal.org" <humanresources@navyfederal.org>, "boardofdirectors@navyfederal.org" <boardofdirectors@navyfederal.org>

**Jade Riley Burch (FKA) Joshua Paul Burch**
222 Karen Ave, Unit 1207
Las Vegas, NV 89109
jaderburch@gmail.com | (614) 725-9452

**08/09/2025**

**VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED**
**AND EMAIL**

**To:**
General Counsel
Navy Federal Credit Union
820 Follin Lane
Vienna, VA 22180

**RE: Litigation Hold & Notice of Imminent Federal Filing**

Acct #: 43001561005336

Vin#: 5YJ3E1EB9MF999112

Dear Counsel:

This correspondence serves as **formal notice** that I will be filing a federal civil complaint in the **United States District Court for the District of Nevada** against Navy Federal Credit Union ("NFCU") on **Monday, August 11th 2025**. The complaint will allege violations of federal disability rights laws, consumer protection statutes, and the Uniform Commercial Code arising from your unlawful repossession of my 2021 Tesla Model 3 AWD in June 2025.

Effective immediately, NFCU is **directed to halt any sale, auction, transfer, or disposition** of the above-referenced vehicle pending the outcome of this litigation. Failure to do so will constitute additional causes of action, including spoliation of evidence and contempt of court once the case is filed.

Pursuant to the Federal Rules of Civil Procedure, you are hereby instructed to **preserve and hold all documents, communications, and electronically stored information** relevant to the claims in this matter, including but not limited to:

1. All repossession records, logs, tow requests, GPS/telemetry data, and dispatch communications.

2. All account notes, payment histories, and correspondence related to my loan.

3. All internal and external communications referencing me, my account, or the repossession event.

4. All records of legal advice or decision-making regarding the repossession.

5. All third-party vendor contracts, invoices, and communications related to the repossession or storage of the vehicle.

6. All insurance claims, condition reports, and photographs taken of the vehicle before, during, or after repossession.

This **litigation hold** applies to **all forms of data**, including emails, texts, server logs, instant messages, databases, hard drives, backups, and cloud-based accounts, whether maintained by NFCU employees, contractors, or agents.

**Notice:** *Any destruction, alteration, or loss of relevant evidence after receipt of this letter will be deemed* intentional spoliation and will be pursued with full legal remedies, including adverse inference sanctions.

Please direct all communications regarding this matter to me in writing at the address above or via email at jaderburch@gmail.com.

Sincerely,

**/s/ Jade Riley Burch**
**Jade Riley Burch (FKA) Joshua Paul Burch**

Gmail Jade Burch <jaderburch@gmail.com>

# Read: [External] RE: Litigation Hold & Notice of Imminent Federal Filing BURCH v. NFCU

1 message

**Collateral_Risk** <Collateral_Risk@navyfederal.org> Mon, Aug 11, 2025 at 5:38 AM
To: Jade Burch <jaderburch@gmail.com>

Your message

To: Collateral_Risk
Subject: [External] RE: Litigation Hold & Notice of Imminent Federal Filing BURCH v. NFCU
*Sent: Saturday, August 9, 2025 1:26:16 PM (UTC-06:00) Central Time (US & Canada)*

was read on Monday, August 11, 2025 7:38:24 AM (UTC-06:00) Central Time (US & Canada).

Gmail

Jade Burch <jaderburch@gmail.com>

# Read: Litigation Hold & Notice of Imminent Federal Filing BURCH v. NFCU

1 message

**Collateral_Risk** <Collateral_Risk@navyfederal.org> Mon, Aug 11, 2025 at 5:50 AM
To: Jade Burch <jaderburch@gmail.com>

Your message

To: Collateral_Risk
Subject: [External] RE: Litigation Hold & Notice of Imminent Federal Filing BURCH v. NFCU
Sent: Saturday, August 9, 2025 1:26:16 PM (UTC-06:00) Central Time (US & Canada)

was read on Monday, August 11, 2025 7:50:06 AM (UTC-06:00) Central Time (US & Canada).

# EXHIBIT 16

Pre-Litigation Settlement Communications
(June 22 - July 18, 2025)

**Navy Federal Credit Union., et al.**
Case No. 2:25-cv-01897-MMD-DJA
United States District Court
District of Nevada

---

Submitted by:
**Jade Riley Burch**
Plaintiff, Pro Se

Gmail

Jade Burch <jaderburch@gmail.com>

# Final Notice – Settlement Deadline: July 20, 2025

1 message

**Jade Burch** <jaderburch@gmail.com> Fri, Jul 18, 2025 at 11:49 AM
To: "lou_brenner@navyfederal.org" <lou_brenner@navyfederal.org>, "legal@navyfederal.org" <legal@navyfederal.org>, emily_troncoso@navyfederal.org, darleen_brumley@navyfederal.org, larry_larsen@navyfederal.org

**Final Notice – Settlement Deadline: July 20, 2025**

**To: Navy Federal Legal Department**
**CC: Lou Brenner, Chief Legal Officer – lou_brenner@navyfederal.org**

**Dear Counsel,**

**This letter constitutes final notice regarding my claims against Navy Federal Credit Union for wrongful vehicle repossession, violations of the Americans with Disabilities Act (ADA), and related financial misconduct. Despite repeated opportunities to resolve this matter amicably, your client has failed to act in good faith. As such, the window for pre-litigation resolution is closing.**

**Current Status**

- All supporting documentation—including account histories, ADA disclosures, CFPB complaint filings, and medical certifications—has been provided via secure Dropbox and remains accessible for legal review.
- A federal complaint is finalized and scheduled for filing with the U.S. District Court at 6:00 AM PDT on Monday, July 21, 2025.
- A formal settlement agreement remains available for immediate execution through the stated deadline.
- The evidentiary record establishes strong grounds for both compensatory and punitive damages.

  LIVE DROPBOX - BURCH v. NFCU - ALL EVIDENCE, COURT FILINGS ETC.

**Action Required**

**Your client has fewer than 59 hours from the time of this notice to resolve this matter privately. If you do not have authority to settle, I strongly advise that this be escalated to the appropriate executive-level decision-maker without delay.**

**Timeline**

- Sunday, July 20, 2025 – 6:00 PM PDT: Deadline to receive a fully executed settlement agreement
- Monday, July 21, 2025 – 6:00 AM PDT: Federal complaint will be filed with the court
- Monday, July 21, 2025 – 9:00 AM PDT: Regulatory filings and press disclosures will proceed concurrently

**No Extensions**

**This deadline is final and non-negotiable. Communications received after the cutoff will not delay the filings, complaints, or media statements already queued for release.**

**Final Opportunity for Resolution**

**If your client elects to settle prior to the deadline, I will consider the matter fully resolved. If not, I will proceed with the following actions in tandem:**

- Filing of a federal civil complaint alleging wrongful repossession, ADA violations, and negligent endangerment
- Submission of formal complaints to the CFPB, NCUA, DOJ Civil Rights Division, and state consumer protection regulators
- Coordinated media outreach to national disability rights, consumer protection, and investigative outlets

**Included in public disclosures will be the fact that Navy Federal repossessed a disabled individual's vehicle without proper notice or accommodation, despite it containing medically essential items, including:**

- A prescribed inhaler
- Insulin injection pen
- An EpiPen for anaphylaxis
- Ice packs and temperature-sensitive medications
- Emergency-use ADA survival equipment

**This repossession placed my life and health at immediate risk and occurred in violation of both federal consumer statutes and disability accommodation mandates under the ADA.**

**In preparation for litigation, I have outlined a discovery plan that will compel production of internal communications, compliance audits, repossession protocols, and ADA-related decision-making processes. The projected cost of discovery, depositions, and expert review is expected to generate millions in legal exposure for your client.**

**This is not a threat—it is a factual projection of the legal and reputational consequences that will follow if this matter proceeds.**

**I remain available through Sunday evening to finalize this settlement.**

**Respectfully,**
**Jade Riley Burch**
**222 Karen Ave Unit 1207**
**Las Vegas, NV 89109**
**jaderburch@gmail.com**
**(614) 725-9452**

Gmail

Jade Burch <jaderburch@gmail.com>

## Final Notice – Settlement Deadline: July 20, 2025 - ONLY HOURS REMAIN!

1 message

**Jade Burch** <jaderburch@gmail.com> Fri, Jul 18, 2025 at 5:59 AM
To: "lou_brenner@navyfederal.org" <lou_brenner@navyfederal.org>, "legal@navyfederal.org" <legal@navyfederal.org>

**Final Notice – Settlement Deadline: July 20, 2025**

**To: Navy Federal Legal Department**
**CC: Lou Brenner, Chief Legal Officer – lou_brenner@navyfederal.org**

**Dear Counsel,**

**This letter constitutes final notice regarding my claims against Navy Federal Credit Union for wrongful vehicle repossession, violations of the Americans with Disabilities Act (ADA), and related financial misconduct. Despite repeated opportunities to resolve this matter amicably, your client has failed to act in good faith. As such, the window for pre-litigation resolution is closing.**

**Current Status**

- All supporting documentation—including account histories, ADA disclosures, CFPB complaint filings, and medical certifications—has been provided via secure Dropbox and remains accessible for legal review.
- A federal complaint is finalized and scheduled for filing with the U.S. District Court at 6:00 AM PDT on Monday, July 21, 2025.
- A formal settlement agreement remains available for immediate execution through the stated deadline.
- The evidentiary record establishes strong grounds for both compensatory and punitive damages.

  LIVE DROPBOX - BURCH v. NFCU - ALL EVIDENCE, COURT FILINGS ETC.

**Action Required**

**Your client has fewer than 59 hours from the time of this notice to resolve this matter privately. If you do not have authority to settle, I strongly advise that this be escalated to the appropriate executive-level decision-maker without delay.**

**Timeline**

- Sunday, July 20, 2025 – 6:00 PM PDT: Deadline to receive a fully executed settlement agreement
- Monday, July 21, 2025 – 6:00 AM PDT: Federal complaint will be filed with the court
- Monday, July 21, 2025 – 9:00 AM PDT: Regulatory filings and press disclosures will proceed concurrently

**No Extensions**

**This deadline is final and non-negotiable. Communications received after the cutoff will not delay the filings, complaints, or media statements already queued for release.**

**Final Opportunity for Resolution**

**If your client elects to settle prior to the deadline, I will consider the matter fully resolved. If not, I will proceed with the following actions in tandem:**

- Filing of a federal civil complaint alleging wrongful repossession, ADA violations, and negligent endangerment
- Submission of formal complaints to the CFPB, NCUA, DOJ Civil Rights Division, and state consumer protection regulators

- Coordinated media outreach to national disability rights, consumer protection, and investigative outlets

**Included in public disclosures will be the fact that Navy Federal repossessed a disabled individual's vehicle without proper notice or accommodation, despite it containing medically essential items, including:**

- A prescribed inhaler
- Insulin injection pen
- An EpiPen for anaphylaxis
- Ice packs and temperature-sensitive medications
- Emergency-use ADA survival equipment

**This repossession placed my life and health at immediate risk and occurred in violation of both federal consumer statutes and disability accommodation mandates under the ADA.**

**In preparation for litigation, I have outlined a discovery plan that will compel production of internal communications, compliance audits, repossession protocols, and ADA-related decision-making processes. The projected cost of discovery, depositions, and expert review is expected to generate millions in legal exposure for your client.**

**This is not a threat—it is a factual projection of the legal and reputational consequences that will follow if this matter proceeds.**

**I remain available through Sunday evening to finalize this settlement.**

---

**Respectfully,**
**Jade Riley Burch**
**222 Karen Ave Unit 1207**
**Las Vegas, NV 89109**
jaderburch@gmail.com
**(614) 725-9452**

# SEPERATOR PAGE

## Email – Pre Litigation Settlement Communications

# SEPERATOR PAGE

## Email – Pre Litigation Settlement Communications

Gmail

Jade Burch <jaderburch@gmail.com>

**Final Settlement Opportunity – Federal Complaint and Class Action Prepared**
1 message

**Jade Burch** <jaderburch@gmail.com> Wed, Jul 16, 2025 at 8:38 AM
To: "lou_brenner@navyfederal.org" <lou_brenner@navyfederal.org>
Cc: "legal@navyfederal.org" <legal@navyfederal.org>
Bcc: jaderburch@gmail.com

Dear Counsel:

This letter serves as **formal notice** of my intent to initiate federal litigation against Navy Federal Credit Union and pursue class-wide relief in coordination with national counsel, should this matter remain unresolved by the deadline set forth below.

Despite repeated outreach and the submission of detailed documentation, Navy Federal has failed to address the serious misconduct that occurred on **June 18, 2025**, when your agents unlawfully and without notice repossessed my vehicle from a **marked handicap parking space**, causing medical, emotional, and legal harm.

**I. Federal Lawsuit Ready for Filing – July 21, 2025**

All pleadings, declarations, and evidentiary exhibits have been finalized and will be filed via **PACER** in the **United States District Court** on **July 21, 2025**. The causes of action will include:

- **Wrongful repossession** in violation of Nevada law (NRS 104.9609, NRS 598D.100)
- **Violation of the Americans with Disabilities Act (ADA Title III, 42 U.S.C. §12182)**
- **Negligence, emotional distress, breach of fiduciary duty**, and **medical endangerment**

In this filing, I will seek **$5,000,000 in damages**, supported by:

- **Economic losses** tied to transportation disruption, disability access, and essential medical care
- **Severe psychological distress**, including seizures, panic episodes, and long-term destabilization
- **Punitive damages** for the reckless disregard of my ADA-protected status
- **Regulatory and reputational exposure** stemming from systemic procedural failures

What sets this apart from a typical repossession case is the **deep and lasting trauma** it inflicted. I now live with a pervasive fear that anytime I park my car—whether at a store, hospital, or even my own residence—it might be taken again without notice, leaving me **stranded, exposed, and medically unsafe**. That sense of vulnerability is not theoretical—it has already happened once, in the most terrifying way possible. I carry that anxiety into every single outing. It is not just inconvenience; it is **a continuous fear for my safety and stability**, which your institution directly caused.

**II. Class Action Exposure – Levi & Korsinsky LLP**

I am working with **Levi & Korsinsky LLP**, a leading national firm, to assess Navy Federal's systemic repossession practices, particularly as they pertain to borrowers with disabilities and inadequate notice procedures. If this matter proceeds, I will move forward as a **named class representative**, expanding the scope and liability substantially.

**III. Scheduled Regulatory and Media Escalation – 12:01 AM, July 20**

Absent resolution, my **automated dispatch system** will release the full case file at **12:01 AM PST on July 20, 2025** to:

- **Federal regulators**: CFPB, FTC, NCUA, OCC, DOJ Civil Rights Division
- **Nevada Attorney General and consumer protection offices**
- **Major media outlets**, legal advocacy groups, and public alert systems

This release is already scheduled.

**IV. Final Private Settlement Offer**

To resolve this matter discreetly, I am offering to settle all claims for **$175,000**, provided the agreement is executed by **July 20, 2025 at 11:59 PM PST**.

If unresolved, I will file for **$5,000,000** in federal court and pursue class certification shortly thereafter.

All supporting documentation—including medical reports, Tesla vehicle location data, seizure logs, identity verification, and photos of the incident—are available here:

**Dropbox Folder:** DROPBOX LINK - BURCH v NFCU - FEDERAL FILINGS ENCLOSED

This is Navy Federal's **final opportunity** to resolve this matter without triggering litigation and full-scale public exposure.

Sincerely,
**Jade Riley Burch**
222 Karen Ave Unit 1207
Las Vegas, NV 89109
Email: jaderburch@gmail.com
Phone: 614-725-9452

# SEPERATOR PAGE

## Email – Pre Litigation
## Settlement Communications

Gmail

Jade Burch <jaderburch@gmail.com>

## Final Settlement Opportunity – Federal Complaint and Class Action Prepared

1 message

**Jade Burch** <jaderburch@gmail.com> Wed, Jul 16, 2025 at 8:38 AM
To: "lou_brenner@navyfederal.org" <lou_brenner@navyfederal.org>
Cc: "legal@navyfederal.org" <legal@navyfederal.org>
Bcc: jaderburch@gmail.com

Dear Counsel:

This letter serves as **formal notice** of my intent to initiate federal litigation against Navy Federal Credit Union and pursue class-wide relief in coordination with national counsel, should this matter remain unresolved by the deadline set forth below.

Despite repeated outreach and the submission of detailed documentation, Navy Federal has failed to address the serious misconduct that occurred on **June 18, 2025**, when your agents unlawfully and without notice repossessed my vehicle from a **marked handicap parking space**, causing medical, emotional, and legal harm.

**I. Federal Lawsuit Ready for Filing – July 21, 2025**

All pleadings, declarations, and evidentiary exhibits have been finalized and will be filed via **PACER** in the **United States District Court** on **July 21, 2025**. The causes of action will include:

- **Wrongful repossession** in violation of Nevada law (NRS 104.9609, NRS 598D.100)
- **Violation of the Americans with Disabilities Act (ADA Title III, 42 U.S.C. §12182)**
- **Negligence**, **emotional distress**, **breach of fiduciary duty**, and **medical endangerment**

In this filing, I will seek **$5,000,000 in damages**, supported by:

- **Economic losses** tied to transportation disruption, disability access, and essential medical care
- **Severe psychological distress**, including seizures, panic episodes, and long-term destabilization
- **Punitive damages** for the reckless disregard of my ADA-protected status
- **Regulatory and reputational exposure** stemming from systemic procedural failures

What sets this apart from a typical repossession case is the **deep and lasting trauma** it inflicted. I now live with a pervasive fear that anytime I park my car—whether at a store, hospital, or even my own residence—it might be taken again without notice, leaving me **stranded, exposed, and medically unsafe**. That sense of vulnerability is not theoretical—it has already happened once, in the most terrifying way possible. I carry that anxiety into every single outing. It is not just inconvenience; it is **a continuous fear for my safety and stability**, which your institution directly caused.

**II. Class Action Exposure – Levi & Korsinsky LLP**

I am working with **Levi & Korsinsky LLP**, a leading national firm, to assess Navy Federal's systemic repossession practices, particularly as they pertain to borrowers with disabilities and inadequate notice procedures. If this matter proceeds, I will move forward as a **named class representative**, expanding the scope and liability substantially.

**III. Scheduled Regulatory and Media Escalation – 12:01 AM, July 20**

Absent resolution, my **automated dispatch system** will release the full case file at **12:01 AM PST on July 20, 2025** to:

- **Federal regulators**: CFPB, FTC, NCUA, OCC, DOJ Civil Rights Division
- **Nevada Attorney General and consumer protection offices**
- **Major media outlets**, legal advocacy groups, and public alert systems

This release is already scheduled.

**IV. Final Private Settlement Offer**

To resolve this matter discreetly, I am offering to settle all claims for **$175,000**, provided the agreement is executed by **July 20, 2025 at 11:59 PM PST**.

If unresolved, I will file for **$5,000,000** in federal court and pursue class certification shortly thereafter.

---

All supporting documentation—including medical reports, Tesla vehicle location data, seizure logs, identity verification, and photos of the incident—are available here:

**Dropbox Folder:** DROPBOX LINK - BURCH v NFCU - FEDERAL FILINGS ENCLOSED

This is Navy Federal's **final opportunity** to resolve this matter without triggering litigation and full-scale public exposure.

Sincerely,

**Jade Riley Burch**
222 Karen Ave Unit 1207
Las Vegas, NV 89109
Email: jaderburch@gmail.com
Phone: 614-725-9452

# SEPERATOR PAGE

## Email – Pre Litigation Settlement Communications

Gmail

Jade Burch <jaderburch@gmail.com>

# Final 5-Day Notice – ADA, Contractual, and Civil Rights Violations Arising from June 18, 2025 Repossession

1 message

**Jade Burch** <jaderburch@gmail.com> Tue, Jul 15, 2025 at 12:06 AM
To: "Executive.Resolutions@navyfederal.org" <Executive.Resolutions@navyfederal.org>, "legal@navyfederal.org" <legal@navyfederal.org>
Bcc: consumerassistance@ncua.gov, cco_resolution@navyfederal.org, press@navyfederal.org, mary.mcdowell@navyfederal.org, todd.basile@navyfederal.org, media.relations@navyfederal.org, collateral_risk@navyfederal.org, jaderburch@gmail.com

**TO:**
Legal Department – Navy Federal Credit Union
Email: legal@nfcunet.org *(or appropriate counsel contact)*

**CC:**
Consumer Financial Protection Bureau (CFPB)
National Credit Union Administration (NCUA)
U.S. Department of Justice – Civil Rights Division
Federal Trade Commission (FTC)
Virginia Office of the Attorney General

**DATE:** July 15, 2025
**FROM:** Jade Riley Burch

NFCU Acct: 43001561005336
**CONTACT:** jaderburch@gmail.com | (614) 725-9452

---

**RE: Final 5-Day Notice – ADA, Contractual, and Civil Rights Violations Arising from June 18, 2025 Repossession**

To Whom It May Concern:

This correspondence serves as final notice prior to the initiation of civil litigation and coordinated regulatory and media escalation in connection with Navy Federal Credit Union's unlawful actions on **June 18, 2025**, including but not limited to:

- **Unauthorized vehicle repossession** without prior notice or opportunity to cure;
- **Interference with access to essential medications and life-sustaining equipment** during the seizure event;
- **Failure to accommodate documented disability** in violation of the Americans with Disabilities Act (ADA);
- **Violations of the Equal Credit Opportunity Act (ECOA)** and Nevada consumer protection laws.

Despite prior delivery of a detailed settlement demand, Navy Federal has failed to respond. Accordingly, unless I receive a formal reply by **Sunday, July 20, 2025 at 11:59 PM Pacific Time**, all escalation protocols described below will proceed at **12:01 AM PDT on July 21, 2025**, without further notice.

---

📁 **Case Archive: Legal, Medical, and Regulatory Documentation**

Your legal team is hereby granted access to the full record of evidence via Dropbox:

**NFCU CASE DOSSIER**
LIVE DROPBOX FOLDER - BURCH v NFCU

**Contents include:**

- ✅ Finalized draft civil complaint (PDF & DOCX)
- ✅ Photographs of the repossessed vehicle and seized personal items
- ✅ Proof of disability status and medication interference
- ✅ ADA and ECOA violation summaries

- ✅ Draft regulatory complaints (CFPB, NCUA, DOJ, FTC)
- ✅ Media release kit for national and disability justice outlets

---

⏳ **Deadline for Resolution: July 20, 2025 at 11:59 PM PDT**

---

⚠️ **Escalation Timeline If Unresolved**

Should I receive no response by the above deadline, the following actions will activate **automatically at 12:01 AM PDT on July 21, 2025**:

---

**1. Civil Complaint Filing**

A lawsuit will be filed in **Clark County District Court** asserting:

- **Wrongful repossession and breach of contract**
- **Violation of the Americans with Disabilities Act (Title III)**
- **Violation of the Equal Credit Opportunity Act (ECOA)**
- **Negligence and infliction of emotional distress**
- **Violation of Nevada's deceptive trade practices statutes (NRS 598)**

The complaint is finalized and ready for immediate filing.

---

**2. Regulatory Submissions**

Complaints will be filed with:

- **Consumer Financial Protection Bureau (CFPB)**
- **National Credit Union Administration (NCUA)**
- **Federal Trade Commission (FTC)**
- **U.S. Department of Justice – Civil Rights Division**
- **Office of the Attorney General – Virginia**

Each filing includes supporting documentation, seizure records, ADA violations, and contractual evidence.

---

**3. Automated Media Distribution Protocol**

A **curated press dossier** is scheduled for hands-free distribution at **12:01 AM PDT on July 21, 2025**. Targeted outlets include:

- **ProPublica, The Intercept, The 19th, NBC News, NPR**
- **LGBTQ+ and disability rights media outlets**
- **Consumer watchdog and credit union industry press**

The release includes redacted complaint summaries, evidence photos, and a timeline of NFCU's failure to accommodate disability protections.

**4. Congressional and Advocacy Disclosures**

Briefing packets will be transmitted to:

- **U.S. Senate Committee on Banking, Housing, and Urban Affairs**
- **National Disability Rights Network (NDRN)**
- **Americans for Financial Reform**

- **State and federal ADA compliance officers**

**5. Legal Counsel Standing By**

I have consulted with litigation attorneys who have reviewed the case file and confirmed the legal strength of the claims. If formal representation becomes necessary, I am prepared to proceed immediately.

**Final Position**

This letter reflects the close of all reasonable pre-litigation efforts. The harm caused is medically and legally serious. I remain open to a private and amicable resolution **until the deadline of July 20, 2025 at 11:59 PM PDT.**

After that point, all legal, regulatory, and public disclosure actions will proceed.

Please direct any correspondence to the contact information below.

**Sincerely,**
**Jade Riley Burch**
222 Karen Ave Unit 1207
Las Vegas, NV 89109
jaderburch@gmail.com | **(614) 725-9452**

# SEPERATOR PAGE

## Email – Pre Litigation Settlement Communications

Gmail **Jade Burch <jaderburch@gmail.com>**

## Regulatory Filings Against Navy Federal – CFPB #250712-22270607, DOJ #636204-MTV

1 message

**Jade Burch** <jaderburch@gmail.com> Sat, Jul 12, 2025 at 5:30 AM
To: Executive.Resolutions@navyfederal.org, legal@navyfederal.org
Bcc: consumerassistance@ncua.gov, cco_resolution@navyfederal.org, "press@navyfederal.org" <press@navyfederal.org>, "mary.mcdowell@navyfederal.org" <mary.mcdowell@navyfederal.org>, "todd.basile@navyfederal.org" <todd.basile@navyfederal.org>, "media.relations@navyfederal.org" <media.relations@navyfederal.org>, "collateral_risk@navyfederal.org" <collateral_risk@navyfederal.org>

Dear Navy Federal Executive Resolutions Team,

This is your final opportunity to resolve the matter arising from your unlawful and medically dangerous repossession action on **June 18, 2025**, which endangered a disabled transgender woman in violation of state and federal law.

I have filed formal complaints with the following federal agencies:

- **Consumer Financial Protection Bureau (CFPB)** – Complaint ID: **250712-22270607**
- **U.S. Department of Justice – Civil Rights Division** – Record #: **636204-MTV**
- **National Credit Union Administration (NCUA)** – Report submitted

These filings document violations of the **Americans with Disabilities Act**, **ACA §1557**, **truth-in-lending regulations**, and **Nevada deceptive trade and endangerment statutes**.

DROPBOX – NFCU FULL COURT DOCKET & MEDIA/REGULATORY PACKAGE

---

### ⚠ Escalation Timeline

• **Daily regulatory filings** will continue — one per business day — until contact is made and a good-faith resolution is offered.
• A **deadman-triggered global media release** is already scheduled for **July 20, 2025 at Midnight PDT**. If I do not manually cancel it before that time, the entire dossier — including photographs, legal exhibits, regulatory IDs, and prepared press statements — will be distributed to **every major media outlet worldwide**, including LGBTQ+ and disability advocacy press.
• This system is autonomous. Even if I forget or become unable to follow up, **the release will proceed.**

---

### 🏛 Civil Litigation

Should no resolution be reached, a **civil complaint will be filed in the Eighth Judicial District Court of Clark County on July 21, 2025**, and your legal department will be served promptly thereafter.

---

This is not a threat. It is a professional, fully prepared escalation protocol. If Navy Federal wishes to resolve this privately, professionally, and without reputational destruction, you must respond by **Midnight PDT on July 20, 2025.**

Respectfully,
**Jade Riley Burch (FKA) Joshua P Burch**
222 Karen Ave Unit 1207
Las Vegas, NV 89109
(614) 725-9452

feel free to reach out to me directly via email at

jaderburch@gmail.com

# SEPERATOR PAGE

## Email – Pre Litigation Settlement Communications

ELUSIVE

Jade Burch <jade@elusive-ent.com>

## URGENT RESEND: 24-Hour Final Notice – Legal/Regulatory Action Pending – Corrected Dossier Link

1 message

**Jade Burch** <jade@elusive-ent.com> Fri, Jul 11, 2025 at 12:33 AM
To: "Collateral_Risk@navyfederal.org" <collateral_risk@navyfederal.org>, "michael.locke@navyfederal.org" <michael.locke@navyfederal.org>, "boardofdirectors@navyfederal.org" <boardofdirectors@navyfederal.org>, "corporate_communications@navyfederal.org" <corporate_communications@navyfederal.org>, "legal@navyfederal.org" <legal@navyfederal.org>, "officeofthepresident@navyfederal.org" <officeofthepresident@navyfederal.org>, "executiveescalations@navyfederal.org" <executiveescalations@navyfederal.org>, "mary.mcdowell@navyfederal.org" <mary.mcdowell@navyfederal.org>, "humanresources@navyfederal.org" <humanresources@navyfederal.org>, "todd.basile@navyfederal.org" <todd.basile@navyfederal.org>, "robert.harrison@navyfederal.org" <robert.harrison@navyfederal.org>, "compliance_officer@navyfederal.org" <compliance_officer@navyfederal.org>, "regulatory@navyfederal.org" <regulatory@navyfederal.org>, "press@navyfederal.org" <press@navyfederal.org>, "media.relations@navyfederal.org" <media.relations@navyfederal.org>, "board.chair@navyfederal.org" <board.chair@navyfederal.org>, "governance@navyfederal.org" <governance@navyfederal.org>, "ada.compliance@navyfederal.org" <ada.compliance@navyfederal.org>

**Dear Navy Federal Legal Team,**

This is your **final opportunity** to address the unlawful, medically dangerous, and discriminatory repossession conducted by your agents on **June 18, 2025**, which caused severe harm to me—a medically disabled transgender woman.
Despite prior communications, **no one from NFCU has responded**. Let me be unequivocal:

⏳ **You now have 24 hours Deadline!** (June 12th 2025 5pm PDT) to contact me and initiate resolution discussions.

**Failure to respond will trigger immediate, irreversible escalation**, including:

- **Legal filings** in Clark County, NV (complaint draft finalized)
- **Regulatory complaints** to DOJ, CFPB, FTC, NCUA, and Nevada AG (pre-submitted drafts attached)
- **National media exposure** (NBC, CNN, LGBTQ+/disability outlets pre-briefed)

**CORRECTED DOSSIER LINK**

All evidence is compiled here:
**Burch v. Navy Federal – Legal/Regulatory/Media Dossier**
*(Includes: medical records, seizure logs, ADA violations, repossession photos, prewritten press releases, and regulatory filings.)*

⚠️ **This Is Not a Bluff**

Your agents:

1. **Violated Nevada repossession laws** (no notice of default/cure/auction)
2. **Endangered my life** (106°F heat + 20+ seizures post-repo)
3. **Ignored ADA protections** (handicap spot repossession)

*I remain open to a* ***private resolution****, but your silence forces my hand.*

**Next Steps:**

🔹 **Email me immediately** to acknowledge receipt and schedule discussions.
📞 **If calling**, reply with a direct line and availability—I will call *you*.
**Confirm receipt of this email NOW to halt escalation.**

Respectfully,
**Jade Riley Burch**
🔹 jade@elusive-ent.com | 📞 (614) 725-9452
222 Karen Ave, Unit 1207, Las Vegas, NV 89109

**Note:** If you are not the correct point of contact, **forward this to your Legal/Compliance team immediately**. Deliberate inaction will be cited as evidence of bad faith.

# SEPERATOR PAGE

## Email – Pre Litigation Settlement Communications

ELUSIVE

Jade Burch <jade@elusive-ent.com>

# IMMEDIATE RESPONSE REQUESTED – Legal and Public Action Scheduled - 24 HOUR NOTICE

1 message

**Jade Burch** <jade@elusive-ent.com> Thu, Jul 10, 2025 at 9:06 AM
To: "collateral_risk@navyfederal.org" <collateral_risk@navyfederal.org>, "michael.locke@navyfederal.org" <michael.locke@navyfederal.org>, "boardofdirectors@navyfederal.org" <boardofdirectors@navyfederal.org>, "corporate_communications@navyfederal.org" <corporate_communications@navyfederal.org>, "legal@navyfederal.org" <legal@navyfederal.org>, "officeofthepresident@navyfederal.org" <officeofthepresident@navyfederal.org>, "executiveescalations@navyfederal.org" <executiveescalations@navyfederal.org>, "mary.mcdowell@navyfederal.org" <mary.mcdowell@navyfederal.org>, "humanresources@navyfederal.org" <humanresources@navyfederal.org>

Dear Navy Federal Legal Team

This is your **final opportunity** to resolve the matter involving your agents' unlawful, medically dangerous, and discriminatory conduct on **June 18, 2025**, which resulted in severe harm to me — a medically disabled, transgender woman.

Despite multiple notices and attempts to resolve this privately, **no one has contacted me**. I want to be absolutely clear:

⏳ You now have **24 hours** to contact me and initiate dialogue.
If no contact is made, full public and regulatory escalation will proceed immediately — **no exceptions, no extensions**.

I have prepared a **fully documented legal, media, and regulatory case package**, including:

- Court-ready legal complaints (Clark County, NV)
- Verified seizure logs and supporting medical documentation
- ADA, lending, and deceptive practice violations
- Evidence of reckless endangerment and procedural misconduct
- Prepared filings for DOJ, CFPB, FTC, NCUA, NV AG, and more
- Prewritten press releases and outlet-specific media pitches

📁 **You may access the complete file here:**
**Burch vs Navy Federal – Legal, Regulatory, and Media Dossier (Dropbox)**

---

⚠️ **This is not a threat or a bluff — it is a final promise of action.**

You knowingly endangered a medically vulnerable individual and failed to engage despite repeated efforts to resolve matters in good faith.

I am open to resolving this **privately and respectfully**.
🔹 **Please contact me via email** — it is my preferred method.
📞 If a phone call is necessary, please reply with your direct number and the best time, and I will call you at your convenience.

---

**If you received this message in error**, or are not the appropriate party,
please **forward it immediately to your legal, compliance, or executive office.**

Kindly confirm receipt of this message to avoid further escalation.

Respectfully,
**Jade Riley**
🔹 jade@elusive-ent.com
📞 (614) 725-9452
222 Karen Ave Unit 1207
Las Vegas, NV 89109

# SEPERATOR PAGE

## Email – Pre Litigation Settlement Communications

ELUSIVE ENTERPRISES

Jade Burch <jade@elusive-ent.com>

## FINAL NOTICE: 24-Hour Deadline Before Regulatory and Media Release – Urgent Resolution Required

1 message

**Jade Burch** <jade@elusive-ent.com> Thu, Jul 10, 2025 at 8:55 AM
To: "legal@navyfederal.org" <legal@navyfederal.org>, "officeofthepresident@navyfederal.org" <officeofthepresident@navyfederal.org>, "Collateral_Risk@navyfederal.org" <collateral_risk@navyfederal.org>, "corporate_communications@navyfederal.org" <corporate_communications@navyfederal.org>, "mary.mcdowell@navyfederal.org" <mary.mcdowell@navyfederal.org>, "executiveescalations@navyfederal.org" <executiveescalations@navyfederal.org>, "michael.locke@navyfederal.org" <michael.locke@navyfederal.org>, "humanresources@navyfederal.org" <humanresources@navyfederal.org>, "boardofdirectors@navyfederal.org" <boardofdirectors@navyfederal.org>

**Dear Navy Federal Legal Team,**

**This is your final opportunity to resolve the matter involving your agents' conduct on June 18, 2025, which resulted in serious medical, legal, and reputational harm to me — a disabled, transgender woman.**

**Despite multiple prior notices, no one from your team has contacted me to address or resolve this issue. Let me be absolutely clear:**

**You have 24 hours to respond. That's it.**

**If I do not receive direct contact by the deadline, the following will occur without further notice:**

- Regulatory complaints will be filed with more than 20 agencies including the DOJ, CFPB, FTC, NCUA, the Nevada Attorney General, and civil rights commissions.
- A coordinated media release will be deployed to over 50 local, national, and international outlets, with all supporting documentation attached.
- The release will include:
    - Verified medical records of 20+ seizures triggered by this incident
    - Clear ADA violations and predatory lending practices
    - Evidence of reckless endangerment and discriminatory repossession
    - Witness reports, ER discharge paperwork, regulatory filings, and photographic evidence

**This is not a threat or a bluff — it is a promise.**

**I am fully prepared to initiate legal action in Clark County, Nevada, and I already have all exhibits compiled, labeled, and ready for filing. You must speak with me immediately if you wish to avoid irreversible escalation.**

**Please contact me directly via email today to initiate a private resolution. If preferred, you may provide a direct phone number where I can reach you to discuss this matter. Kindly confirm receipt of this message so I know it has been received and reviewed.**

**If I do not hear from you by the deadline, escalation begins. No exceptions. No extensions.**

**Email:** jade@elusive-ent.com
**Phone: (614) 725-9452**

**Time is running out. I urge you to take this seriously.**

**Sincerely,**
**Jade Riley**
**222 Karen Ave Unit 1207**
**Las Vegas, NV 89109**

Burch_vs_NavyFederal_Media_Regulatory_Legal_Dossier.zip
24918K

# SEPERATOR PAGE

## Email – Pre Litigation Settlement Communications

ELUSIVE

Jade Burch <jade@elusive-ent.com>

# URGENT: $175,000 Settlement Demand for Criminal Handicap Space Repossession & ADA Violations

1 message

**Jade Burch** <jade@elusive-ent.com> Fri, Jul 4, 2025 at 7:28 PM
To: "legal@navyfederal.org" <legal@navyfederal.org>, "officeofthepresident@navyfederal.org" <officeofthepresident@navyfederal.org>, "Collateral_Risk@navyfederal.org" <Collateral_Risk@navyfederal.org>, "mary.mcdowell@navyfederal.org" <mary.mcdowell@navyfederal.org>

Dear Navy Federal Credit Union Legal Department,

This letter constitutes formal notice of your agents' unlawful, medically dangerous, and discriminatory conduct on June 18, 2025, which exposed a disabled, transgender woman to life-threatening harm and created significant legal liability for NFCU.

**Violations Committed:**

- NRS 200.495 — Felony Reckless Endangerment (abandoning a medically vulnerable individual in 106°F desert heat)
- NRS 484B.467 — Illegal Interference with ADA-Designated Parking
- Americans with Disabilities Act (42 U.S.C. § 12182) — Denial of Auxiliary Aids (climate-controlled, adaptive transportation)
- Truth in Lending Act (15 U.S.C. § 1639) — Concealment of repossession in billing statements (Exhibit F)
- Nevada Deceptive Trade Practices Act (NRS 598) — Material misrepresentations regarding loan status

**Protected Class Impact:**

You knowingly endangered a medically disabled, transgender woman in extreme heat, violating federal disability protections and state anti-discrimination laws.

**Documented Medical Harm:**

- 20 verified seizures triggered by this incident (Exhibit A)
- Aggravation of seizure disorder and pulmonary embolism requiring ongoing treatment (Exhibit B)
- Exacerbation of PTSD due to public abandonment and loss of medically necessary transportation
- Fraudulent concealment of repossession in your June 2025 billing (Exhibit F)

**Settlement Terms — Mandatory Wire Transfer Within 7 Business Days:**

- $100,000 — ADA statutory damages and treble damages (NRS 104.9611)
- $50,000 — Emotional distress damages under Nevada tort precedent
- $25,000 — Punitive damages for reckless endangerment and protected class discrimination

**Total Demand: $175,000**

**Non-Compliance Consequences:**

If this matter is not resolved by the deadline, I will:

- Pursue maximum available compensatory, statutory, and punitive damages through court action, with claims likely exceeding **$1,000,000**

- Initiate Department of Justice enforcement (Case #633203-CLT)
- File formal complaints with the CFPB, Nevada Consumer Affairs, and disability rights regulators
- Coordinate with the ACLU, LGBTQ+ advocacy groups, and disability rights organizations
- Immediately escalate through national media outlets and public campaigns exposing NFCU's pattern of ADA violations, anti-trans discrimination, and consumer misconduct

**Attached Exhibits Provided (in zip archive):**

- Exhibit A — Medically documented seizure logs
- Exhibit B — Physician's pre-repossession directive confirming medical necessity
- Exhibit C — Nevada DMV disabled placard (valid through 2026)
- Exhibit D — Photographs of legally marked handicap space
- Exhibit E — Tesla GPS tracking showing vehicle at Speedy Recovery lot
- Exhibit F — June 2025 billing statement demonstrating concealment
- Exhibit G — Portable oxygen equipment photograph
- Exhibit H — Verified 106°F weather report for June 18, 2025
- Exhibit I — Anthem insurance documentation confirming seizure disorder, epilepsy, and PTSD
- Draft — ACLU civil rights complaint prepared for filing

All referenced evidence is provided in the attached `Burch_NFCU_Settlement_Demand_Package.zip` archive.

**Deadline for Full Payment:**

**July 11, 2025, by 5:00 PM Pacific Time**

Settlement is the only reasonable path to mitigate NFCU's escalating legal, regulatory, and reputational exposure. Failure to resolve will result in immediate litigation and public escalation.

For efficiency and accessibility reasons, I prefer communication via **email** whenever possible.

**Please confirm receipt of this demand and the attached evidence package at your earliest convenience.**

Sincerely,

**Jade Riley Burch (FKA) Joshua P Burch**

Disabled, Transgender Plaintiff
Las Vegas, Nevada
jade@elusive-ent.com
(614) 725-9452

**Burch_NFCU_Settlement_Demand_Package.zip**
16801K

# SEPERATOR PAGE

## Email – Pre Litigation Settlement Communications

ELU$IV3

Jade Burch <jade@elusive-ent.com>

# Formal Pre-Litigation Notice: Complaint for Damages Attached - Burch v. Navy Federal Credit Union

1 message

**Jade Burch** <jade@elusive-ent.com> Wed, Jul 2, 2025 at 7:29 PM
To: "legal@navyfederal.org" <legal@navyfederal.org>, "steven_weisberg@navyfederal.org" <steven_weisberg@navyfederal.org>, "compliance@navyfederal.org" <compliance@navyfederal.org>

**To Whom It May Concern,**

This is the final communication you will receive from me prior to litigation. Despite multiple formal notices, settlement offers, and clear documentation of your wrongful conduct, Navy Federal Credit Union, Victory Recovery, and Speedy Recovery have chosen to ignore my rights and obligations under federal and state law.

I am attaching the legal complaint prepared for filing with the Eighth Judicial District Court of Nevada. This lawsuit seeks damages exceeding $500,000 for wrongful repossession, breach of contract, violations of the Americans with Disabilities Act (ADA), negligence, emotional distress, and related claims. Regulatory complaints with federal and state agencies are also ready for submission.

**Account Number:** 43001561005336
**Vehicle:** 2021 Tesla Model 3 AWD
**VIN:** 5YJ3E1EB9MF999112

Nevertheless, I am still willing to resolve this matter privately under the following terms:

✅ Immediate return of my 2021 Tesla Model 3 AWD with all liens satisfied and a clean, lien-free title transferred to my name.
✅ Payment of $20,000 to compensate for medical harm, emotional distress, and associated damages.
✅ Immediate removal of all negative credit reporting related to this incident across all credit bureaus, with confirmation in writing.
✅ In exchange, I will sign a full release of all claims against Navy Federal Credit Union, Victory Recovery, and Speedy Recovery, along with a mutual Non-Disclosure Agreement (NDA) ensuring this matter remains confidential.

If you refuse or fail to respond within 5 business days of receipt, I will proceed with court filings and allow a jury to decide your liability. The next communication you receive from me will be a formal legal summons.

**I prefer email or text message for contact if possible.** You may reach me directly at (614) 725-9452 or jade@elusive-ent.com to finalize this resolution and avoid litigation.

Respectfully,
Jade Riley Burch

**THIS IS THE LAWSUIT THAT WILL BE FILED**

Jade Riley Burch
4001 S. Decatur Blvd, Suite 37-442
Las Vegas, NV 89103
Email: jade@elusive-ent.com
Phone: 614-725-9452

IN THE EIGHTH JUDICIAL DISTRICT COURT
CLARK COUNTY, NEVADA

Jade Riley Burch, an individual,
Plaintiff,

v.

Navy Federal Credit Union;
Victory Recovery;
Speedy Recovery;
DOES I through X, inclusive,
Defendants.

CASE NO.:
DEPT. NO.:

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
JURY TRIAL DEMANDED

Plaintiff, by and through undersigned counsel, alleges as follows:

I. PARTIES

1. Plaintiff Jade Riley Burch is an individual residing in Las Vegas, Nevada.
2. Defendant Navy Federal Credit Union ("NFCU") is a federally chartered credit union doing business in Nevada.
3. Defendant Victory Recovery is a repossession agency operating in Nevada, acting under contract with NFCU.
4. Defendant Speedy Recovery is a repossession agent subcontracted by Victory Recovery to execute repossession services in Nevada.
5. The true names and capacities of DOES I through X are presently unknown. Plaintiff will amend this Complaint when their identities are ascertained.

II. JURISDICTION AND VENUE
6. Venue is proper in Clark County as the unlawful repossession and related conduct occurred in Las Vegas, Nevada.
7. The amount in controversy exceeds $15,000, giving this Court jurisdiction.

III. FACTUAL BACKGROUND
8. Plaintiff is the sole legal owner of a 2021 Tesla Model 3 AWD, VIN: 5YJ3E1EB9MF999112, financed through NFCU under Account Number 43001561005336, with an approximate value of $27,000.
9. Plaintiff is a legally recognized person with disabilities, including seizure disorder, pulmonary embolism, oxygen dependency, PTSD, and other conditions, all protected under the Americans with Disabilities Act (ADA).
10. The Tesla vehicle is medically necessary to Plaintiff's health and mobility, equipped with climate control, autonomous driving features, and critical transportation for accessing medical care.
11. Due to temporary financial hardship, Plaintiff missed certain loan payments but remained actively attempting to resolve the account status.
12. Despite this, Defendants failed to:
a. Provide written or electronic Notice of Default;
b. Offer a Right to Cure as required by Nevada law and contractual obligations;
c. Notify Plaintiff of impending repossession by mail, email, phone, or app message.
13. On or about June 18, 2025, Victory Recovery and Speedy Recovery repossessed Plaintiff's vehicle from a marked handicap space displaying a valid Nevada-issued disabled placard.
14. The repossession occurred during extreme heat conditions exceeding 106 degrees Fahrenheit in Las Vegas, Nevada.
15. Defendants left Plaintiff, a medically vulnerable individual with oxygen dependency and seizure disorder, stranded in the severe heat without transportation or assistance.
16. Defendants concealed the vehicle's location and failed to provide post-repossession notice or redemption instructions.
17. Plaintiff was forced to locate the vehicle independently using Tesla's GPS system, identifying it held by Speedy Recovery without lawful disclosure.
18. Following the repossession, Plaintiff suffered a documented cluster of 17 tonic-clonic seizures, including grand mal events, requiring emergency intervention and resulting in severe emotional and physical harm.
19. Defendants have refused or failed to provide legally required notices to this day.
20. Plaintiff issued formal demands to all Defendants seeking resolution, which were ignored or refused.
21. Any pre-litigation settlement proposals submitted by Plaintiff were made in good faith to resolve the matter efficiently and do not limit the damages Plaintiff is entitled to recover through legal proceedings.

IV. CLAIMS FOR RELIEF
FIRST CAUSE OF ACTION - WRONGFUL REPOSSESSION (NRS 104.9611)
22. Defendants unlawfully repossessed Plaintiff's vehicle without proper notice, violating statutory and contractual obligations.

SECOND CAUSE OF ACTION - BREACH OF CONTRACT
23. NFCU breached the loan agreement by orchestrating repossession without adherence to legal notice and disability accommodation requirements.

THIRD CAUSE OF ACTION - VIOLATION OF THE ADA (42 U.S.C. § 12101)
24. Defendants engaged in discriminatory conduct by depriving Plaintiff of medically necessary transportation, exacerbating health conditions.

# SEPERATOR PAGE

## Email – Pre Litigation Settlement Communications

ELU$IVE

Jade Burch <jade@elusive-ent.com>

## Formal Settlement Demand – ADA & Wrongful Repossession – Account #43001561005336

1 message

**Jade Burch** <jade@elusive-ent.com>
To: Collateral_Risk@navyfederal.org

Sun, Jun 22, 2025 at 10:14 PM

To Whom It May Concern,

Please find the attached formal settlement demand regarding the unlawful repossession of my medically necessary vehicle, a 2021 Tesla Model 3 AWD (VIN: 5YJ3E1EB9MF999112), which occurred despite your organization's knowledge of my documented disabilities and protected status under the Americans with Disabilities Act (ADA).

The attached demand letter details the legal violations, substantial health impacts, and your organization's significant exposure should this matter proceed to litigation and regulatory escalation. This letter represents a reasonable, final opportunity to resolve this dispute efficiently and privately, without further reputational or financial harm.

I expect a written response within **7 business days** of this notice. Failure to engage will result in formal legal action, regulatory complaints to the CFPB, OCC, Nevada Financial Institutions Division, and other authorities, and the pursuit of all available legal remedies.

Please confirm receipt of this communication and the attached settlement proposal. I am available at (614) 725-9452 or jade@elusive-ent.com to discuss resolution.

Sincerely,
**Jade Riley Burch (FKA) Joshua P. Burch**

--

Jade Riley Burch
President, Elusive Enterprises LLC.

707.893.7726 | elusive-ent.com | jade@elusive-ent.com

f in

**ADANF.pdf**
8390K