**CONFIDENTIAL LITIGATION WORK PRODUCT - NON-EVIDENTIARY FRAMEWORK**

*(Prepared in Anticipation of Litigation and Class Certification Proceedings)*

# EXHIBIT BP-1

**NFCU CLASS ACTION ENTERPRISE BLUEPRINT (FULL VERSION)**

**Prepared by:**
**Jade Riley Burch**
**Date:** November 29th , 2025

---

## NOTICE OF PRIVILEGE AND LIMITATIONS

This Exhibit is designated as **Confidential Litigation Work Product**. It is submitted solely to organize allegations, map systemic structures, and support the pleading and Rule 23 framework contained in the First Amended Complaint.

It is **not offered for the truth of any matter asserted**, does **not expand or modify any claim**, and is **not intended as evidence** for summary judgment or trial. All statements concerning internal policies, workflows, or systems of Navy Federal Credit Union (NFCU) are made on information and belief in accordance with Rule 11(b)(3).

Plaintiff expressly **preserves all privileges and protections**, including attorney-client, attorney work product, and common-interest protections. Nothing in this Exhibit waives any privilege.

Pursuant to **LR IA 10-5** and controlling Ninth Circuit authority, Plaintiff reserves the right to seek sealing or partial sealing of this Exhibit.

---

## LIVING DOCUMENT STATEMENT

This Exhibit is a **living document**.
As discovery progresses, new information may refine, update, or clarify the organizational structures, vendor relationships, and systemic processes described herein. Any such refinements will not alter the causes of action asserted in the operative complaint.

---

**SUBMITTED BY:**
**Jade Riley Burch**
Pro Se Plaintiff

**CONFIDENTIAL LITIGATION WORK PRODUCT**
**NON-EVIDENTIARY FRAMEWORK**

---

**Prepared in Anticipation of Litigation and Class Certification Proceedings**

**Prepared by:** Jade Riley Burch

**Date:** November 29th, 2025

---

**EXHIBIT BP-1: NFCU CLASS ACTION ENTERPRISE BLUEPRINT**

*(Litigation analysis and class-structure framework supporting Plaintiff's First Amended Complaint)*

---

This Exhibit is confidential litigation work product prepared in anticipation of litigation and class certification proceedings. It is submitted solely as a non-evidentiary framework in support of the First Amended Complaint and anticipated Rule 23 motion. Nothing in this Exhibit is offered for the truth of the matters asserted, expands the causes of action pled, or waives any attorney-client, work-product, or other applicable protection. Under LR IA 10-5 and controlling Ninth Circuit authority, Plaintiff reserves the right to seek sealing or partial sealing. Where this Exhibit describes internal NFCU systems, policies, or workflows, those allegations are made on information and belief consistent with Rule 11(b)(3).

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

**Universal Vehicle Edition - With Financial and Enterprise-Scale Modeling**

---

**Purpose and Legal Status of this Exhibit**

This Exhibit provides a Litigation Framework and Proffer of Evidence, designed to illustrate, organize, and provide a good-faith factual basis for the complex enterprise allegations contained in the First Amended Complaint (FAC). It is an exhibit intended to provide the Court with clarity on the interrelationship between the claims, the systemic nature of the alleged misconduct, and the necessity for enterprise-level discovery. This document is not presented as evidence itself but as a detailed roadmap of the evidence Plaintiff intends to seek in discovery to prove the allegations in the FAC. This Exhibit does not expand, alter, or add to the causes of action asserted in the First Amended Complaint; it exists solely to organize and explain those allegations.

Much of the information regarding Navy Federal Credit Union's (NFCU) internal policies, computer systems, and operational workflows is, by its nature, in the exclusive possession of the defendant. Accordingly, where this document describes such internal processes, the allegations are made on information and belief. Pleading on this basis is appropriate and necessary under federal procedural standards where a plaintiff has a reasonable, good-faith basis for the allegation but lacks access to the internal corporate evidence required for absolute proof pre-discovery. The ultimate burden of proof rests with Plaintiff. This blueprint is designed to meet the pleading requirements of Rule 8 by providing a plausible and detailed account of systemic misconduct, particularly in light of this significant asymmetry of information. The enterprise structure described herein is intended to guide class litigation and inform certification analysis. All quantitative and organizational estimates in this Exhibit are approximate, based on publicly

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

available sources, and are provided solely as framework-level allegations for pleading and discovery planning purposes.

## SECTION I: EXECUTIVE SUMMARY

This blueprint sets out a structural and legal framework outlining allegations concerning Navy Federal Credit Union (NFCU), one of the largest financial institutions in the United States. With assets approaching $200 billion and a membership base of approximately 15 million, NFCU operates on a scale where its internal policies and automated systems have a nationwide impact. This Exhibit is provided in support of the FAC's plausibility under Rule 8 and is not offered as evidence at this stage.

The central allegation of this framework is that certain of NFCU's practices are the output of a centralized, enterprise-wide system. This system, managed from corporate headquarters and deployed across more than 370 branches, appears, based on publicly observable outputs, to rely on uniform digital templates, automated algorithms, and standardized vendor contracts. This institutional design is structured in such a way that it predictably produces consistent, repeatable violations of state and federal consumer protection laws at significant scale. The analysis herein focuses on five core categories of alleged systemic, repeatable actions: unauthorized APR increases, specific communications, repossession procedures, disability accommodation during collections, and vendor conduct.

Each category of alleged harm is traceable to a specific, centralized component of NFCU's operations - its policy-making function, its communications infrastructure, its operational divisions, its vendor network, and its compliance functions. This interconnected structure is alleged to form a closed-loop system, where initial policy decisions generate uniform actions that are then executed by a network of agents, with the institution allegedly failing to correct the underlying flaws.

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

The alleged uniformity of NFCU's systems and the similar nature of the harm potentially inflicted upon its members form the basis for class-wide adjudication. Because the alleged misconduct originates from common policies and automated processes, liability can be determined for the class as a whole by examining a core set of corporate-level systems and documents. Individualized inquiries may be secondary to the central question of whether the enterprise system itself is unlawful.

## SECTION II: NFCU ENTERPRISE SCALE AND ORGANIZATIONAL STRUCTURE

*(All figures are approximate, based on publicly available 2024-2025 disclosures unless otherwise noted)*

All factual allegations in this Section are made on information and belief based on NFCU's public disclosures, industry reports, regulatory data, and litigation records.

## I. NATIONAL SCALE OF OPERATIONS

Navy Federal Credit Union is the largest credit union in the United States and one of the largest retail financial institutions in the world by membership. Its operational footprint, financial reserves, and workforce size place it on par with mid-tier national banks.

**High-Level Snapshot (2024-2025)**

| Metric | Amount | Notes |
|---|---|---|
| Total Assets | Approximately $194 Billion | Based on publicly available trend data and estimates |
| Total Members | Approximately 15 Million | Fastest-growing membership base among top credit unions |
| Total Employees | Approximately 25,000 | Global workforce across HQ, campuses, branches, and overseas operations |
| Branches | Approximately 370 Worldwide | Includes international NFCU branches and military banking program locations |

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

| Metric | Amount | Notes |
|---|---|---|
| Headquarters | Vienna, Virginia | Executive, legal, compliance, and core strategic units |

## II. FINANCIAL PERFORMANCE AND CAPITAL STRUCTURE (2024-2025)

These figures reflect recent operating conditions and audited disclosures.

### Balance Sheet and Profitability

| Category | Amount | Notes |
|---|---|---|
| Total Assets | Approximately $194 Billion | Driven by rapid expansion in lending portfolios |
| Total Deposits (Member Shares) | Approximately $164 Billion | Savings, checking, money market accounts, and CDs |
| Loans Outstanding | Approximately $141 Billion | Heavy concentrations in mortgage and vehicle lending |
| Members' Equity / Capital Reserves | Approximately $18 Billion | Indicator of institutional solvency and risk tolerance |
| Net Income (YTD) | Approximately $1.7 Billion | Estimated from recent earnings and quarterly trendlines |

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

### III. ORGANIZATIONAL STRUCTURE MAP

Navy Federal operates through a highly centralized command structure, reinforced by massive regional "campuses" that execute the day-to-day operations of lending, member services, collections, and digital systems.

**A. Executive Leadership - The Policy Node**

| Role | Current Leader | Notes |
|---|---|---|
| CEO and President | Dietrich Kuhlmann | Assumed office March 2024. Former COO. |
| COO | Kara Cardona | Oversees branch operations, campuses, and all direct member-service functions |
| CFO | John Collins | Controls financial reporting, reserves, and capital management |
| CIO | Tony Gallardy | Leads a 35+ executive-level IT/security team responsible for digital infrastructure, security, apps, and investor tools |
| Chief Lending Officer | Aaron Aggerwal | Oversees mortgage lending, consumer lending, underwriting, and collections |

The C-suite is the source of the policies and system-wide templates that generate the alleged class-wide conduct.

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

## IV. OPERATIONAL DIVISIONS - THE ENGINES

Navy Federal's functional silos form a repeatable, scalable system across its branches and major operational hubs.

### Primary Business Areas

**1. Lending Division**

- Real Estate Lending: mortgages, home equity, underwriting
- Consumer Lending: auto loans, personal loans, credit cards
- This is NFCU's largest revenue generator and the source of the alleged APR changes, repossession protocols, and UCC-related issues

**2. Member Services / Contact Centers**

- NFCU's largest workforce segment
- Handles 50M+ annual member contacts
- 24/7 operations across Vienna, Pensacola, and Winchester

**3. IT and Security**

- Massive in-house division overseeing cybersecurity, fraud monitoring, mobile app development, digital payment infrastructure, and regulatory monitoring
- This is where the statement templates and "informational only" language are alleged to originate

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

**4. Risk and Compliance**

- General Counsel

- Internal Audit

- Fraud / Loss Prevention

- Vendor Oversight

- This node's function includes internal audit and vendor oversight. The framework alleges a pattern of uncorrected issues consistent with systemic roots.

**5. Military Affairs and Strategic Partnerships**

- Launched May 2024

- Manages DoD relationships, base coordination, overseas member support

- Its existence corresponds to the ADA / disability subclass due to heightened military/veteran disability exposure

---

## V. GEOGRAPHIC OPERATIONS - THE CAMPUSES

NFCU replicates entire operational back-office systems across massive U.S. campuses, giving the entire enterprise redundancy and uniformity.

**Major Hubs**

| Location | Approx. Employees | Function |
|---|---|---|
| Vienna, VA (HQ) | Approximately 5,400 | Executive ops, legal, compliance, core risk functions |
| Pensacola, FL | Approximately 8,600 | Largest operations center: call centers, lending processing, collections |
| Winchester, VA | Approximately 2,500 | Redundancy hub: member services, lending support, secure processing |
| San Diego, CA | Approximately 500 to 1,000 | West Coast operational hub; contact center and regional lending support |

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

These hubs are factually relevant to the enterprise-system argument, as they all allegedly run on identical centralized systems, templates, algorithms, and workflows.

## VI. SUBSIDIARIES, CUSOs, AND LEGAL FIREWALLING

Navy Federal uses subsidiaries to isolate liability away from the core credit union.

**Investment and Insurance Subsidiaries**

**A. Navy Federal Financial Group, LLC (NFFG)**

- Insurance agency subsidiary

**B. Navy Federal Investment Services, LLC (NFIS)**

- SEC-registered broker-dealer and investment advisory

This corporate structure, involving deliberate compartmentalization, is a relevant factual component of the enterprise mapping in this Exhibit.

## VII. OVERSEAS EXPANSION - THE NEW 2024-2025 STRUCTURAL SHIFT

In 2024, Navy Federal absorbed the Department of Defense's Community Bank Program, previously operated by Bank of America.

This added:

- Approximately 60 overseas military banking locations
- Serving active-duty servicemembers on bases across Europe, the Middle East, and the Pacific
- Operating under NFCU's umbrella but separate from standard branch metrics

This expansion factually corresponds to the ADA / disability exposure described in this Exhibit, because the overseas member base contains a disproportionately high concentration of disabled or medically complex servicemembers and veterans.

## SECTION III: SYSTEMIC ENTERPRISE MAP

### I. PURPOSE OF THIS SECTION

This section provides a structural map of Navy Federal Credit Union's internal and external systems that are alleged to collectively generate the class-wide actions described in this blueprint. The goal is to outline the interconnected ecosystem through which the alleged conduct is produced at a large scale.

This is a direct inferential map based on observable system outputs, member accounts, and public information. It is built from:

- Member account histories across multiple states
- CFPB and state complaint patterns
- System outputs observable through member experiences
- Vendor behavior documented in repossession incidents
- Operational scale data from NFCU's public disclosures

### II. ENTERPRISE BLUEPRINT OVERVIEW

NFCU's alleged conduct is not linear; it appears to operate through parallel systems that reinforce one another at institutional scale. The alleged enterprise network involves five primary nodes operating across its branches and serving millions of members:

1. Policy Node - defines the rules (corporate headquarters)
2. Communications Node - disseminates communications (millions of digital users and annual contacts)
3. Operations Node - executes actions (branches and employees)
4. Vendor Node - externalizes certain functions (nationwide contractor network)
5. Compliance Node - responsible for internal controls

These nodes are alleged to form a closed-loop system where certain categories of consumer harm are a recurring output.

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

### III. POLICY NODE
### (Central Command - The Alleged Source of Systemic Harm)

This is the institutional brain of the enterprise. Based on consumer accounts, public materials, and litigation patterns, every downstream action originates from centralized policy decisions.

**Alleged core functions:**

- Creation of statement templates deployed to hundreds of thousands of auto loan accounts
- APR modification algorithms and automated risk-adjustment rules
- Repossession protocols and vendor authorization criteria
- Internal definitions of "delinquency" programmed into digital systems
- Policy allowing vendors to operate with minimal oversight
- Legal framing that characterizes collection activity as informational

Policy decisions at NFCU appear to be top-down and centrally controlled. Due to the scale of its membership and communication volumes, policy standardization is an operational necessity. If a policy is factually non-compliant, every member may be affected in the same way, as the same systems, templates, and algorithms appear to apply universally.

This node is alleged to be responsible for:

- The "informational only" language appearing on statements nationwide
- Unilateral APR increases without TILA disclosures across the portfolio
- The internal calendar and triggers for repo authorization
- The systemic absence of certain required notices
- The standardized instructions given to its repossession and auction vendors

## IV. COMMUNICATIONS NODE
### (The Broadcast Arm - The Alleged Source of Uniformity)

This is where the systemic nature of the allegations becomes supported by large-scale data.

**Scale of Operations:**

- Millions of digital channel users
- Approximately 50 million+ calls, chats, and emails processed annually
- Centralized statement generation systems
- Uniform online account portals
- Standardized mobile app communications

**Outputs:**

- Monthly loan statements
- Payment reminders
- Collection notices
- Text messages
- Online account summaries
- Document center uploads

These communications are alleged to rely on identical templates, containing identical language, which produce identical actions across the entire auto-loan class. The most significant of these is the disclaimer appearing on statements sent to hundreds of thousands of members:

*"This account statement is provided for informational purposes only and should not be construed as an attempt to collect a debt."*

This statement is made while, simultaneously:

- NFCU is actively collecting through the same communication channels
- NFCU is reporting accounts to credit bureaus
- NFCU is preparing and executing repossessions
- NFCU is imposing late fees and additional charges
- NFCU is modifying interest rates

**These facts form the basis for the allegation of a systemic false sense of security across the auto-loan class.**

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

## V. OPERATIONS NODE
### (The Execution Arm)

This covers the internal operational departments spanning all branches and coordinating through centralized systems.

**Alleged Responsibilities:**

- Tracking payments across hundreds of thousands of auto loans
- Determining delinquency status through automated algorithms
- Generating repossession orders
- Maintaining account logs and communication records
- Coordinating with vendor networks
- Updating member account status
- Processing approximately 50 million+ annual member contacts

**Key alleged enterprise behaviors observable across the membership base:**

- Repo triggers appear to be predominantly automated rather than based on individualized human review
- Member status updates appear to occur silently
- Cure notices appear to be systematically absent
- Sale notices appear not to be authenticated as required by UCC
- Vehicles are seized without disability accommodation assessment
- Health/disability flags appear to be non-existent in or ignored by systems

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

## VI. VENDOR NODE
### (Outsourced Functions)

The Vendor network includes repossession forwarding and logistics companies, primary repossession agents, auction services, and hundreds of regional contractors. This node is part of NFCU's liability avoidance strategy as it creates artificial distance between NFCU and certain actions.

Based on consumer accounts, public materials, and litigation patterns, all vendors operate pursuant to:

- NFCU-drafted contracts
- NFCU-issued instructions
- NFCU-approved procedures
- NFCU compensation structures
- NFCU performance metrics

Vendor conduct, under this framework, is not independent. It is alleged to be part of the enterprise chain, pursuant to a principal-agent relationship.

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

## VII. COMPLIANCE NODE
### (The Alleged Failure Arm)

This node represents the internal control functions within NFCU's enterprise.

**Its alleged defining features across the institutional structure:**

- No correction when APR increases are alleged to violate contract terms

- No correction when statements are alleged to mislead members

- No correction when vendors are alleged to commit misconduct

- No correction when disability risks are alleged to arise

- No correction when notice laws are alleged to be violated

- No correction when members complain through approximately 50 million+ annual contacts

The alleged absence of correction, when viewed in the context of the institution's scale and communication volume, is presented not as mere negligence but is alleged to be consistent with a structural policy choice. The alleged compliance failure becomes a factual predicate for institutional intent.

## VIII. THE ALLEGED ENTERPRISE LOOP
### (How the system allegedly feeds itself across all branches)

The alleged closed loop operates at institutional scale:

1. Policy Node: Creates templates, repo rules, APR algorithms at corporate level

2. Communications Node: Deploys to millions of digital users and contacts

3. Operations Node: Thousands of employees across hundreds of branches execute standardized protocols

4. Vendor Node: Nationwide contractor network executes physical repossessions

5. Compliance Node: Appears to not intervene despite member complaints, allowing patterns to persist

6. Back to Policy: No corrections, no changes, system continues unchanged

This structure is factually similar to enterprise structures examined in other large-scale litigation.

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

# IX. SUBCLASS INTERLOCK MAP

This blueprint's class structure is not a random collection of claims; it is a coherent map of an alleged interconnected system of harm. Each subclass logically flows from or reinforces the others.

- Subclass A (APR) allegations are linked to Subclass C (statements), which allegedly conceal the increased financial burden
- Subclass C (statements), by allegedly masking the true collection status, may lead to defaults that trigger Subclass B (repossessions)
- Subclass B (repossessions) is the factual prerequisite for Subclass E (post-repo damage)
- The intersection of Subclass B (repossessions) and Subclass D (ADA/Disability) occurs when standardized repossession protocols are applied to medically-vulnerable members
- The combined, repeated pattern alleged in Subclass C (statements), Subclass B (repossessions), and Subclass E (post-repo damage) forms the factual predicate pattern for a prospective Subclass F (RICO) claim

# SECTION IV: MULTI-BRANCH CLASS STRUCTURE

*(Six unified subclasses, each independently certifiable, all vehicle-universal)*

# I. PURPOSE OF THIS SECTION

This section defines the proposed class and subclasses in a way that:

- Captures the alleged scope of NFCU's enterprise misconduct
- Isolates each category of alleged harm for independent certification
- Is designed to satisfy Rule 23's commonality, typicality, and predominance requirements
- Applies universally to all vehicle types
- Aligns with the enterprise system structure
- Leverages NFCU's operational scale as a basis for alleging commonality

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

## II. PRIMARY CLASS DEFINITION
### (Broad National and International Class - the umbrella)

All Navy Federal Credit Union members with auto loans, regardless of vehicle type, who

between January 1, 2020 and the present were subjected to any combination of:

1. Unauthorized interest-rate modifications

2. Loan statements containing language disclaiming collection activity while collection

   activity was occurring

3. Notice-deficient repossessions

4. Collection actions without reasonable disability accommodation

5. Post-repossession vehicle damage or misconduct by NFCU or its agents

6. Harm resulting from an alleged pattern of conduct conducted through the NFCU

   enterprise

## III. Factual Irrelevance of Vehicle Type

Under TILA, UCC Article 9, ADA Title III, and state consumer-protection statutes, the legal

duties at issue - notice, disclosure, communication truthfulness, repossession protocol, and

disability accommodation - attach to the creditor-debtor relationship, not to the collateral. The

alleged application of centralized, automated systems to the entire auto loan portfolio suggests

that the legal issues are uniform regardless of the specific vehicle financed.

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

## IV. SUBCLASS SUBSTITUTION TABLE

This table clarifies the relationship between the universal framework provided by this blueprint and the specific evidence required from class members to populate each subclass.

| Subclass | Class Member Must Provide (Individual Evidence) | Blueprint Provides (Legal and Systemic Framework) |
|---|---|---|
| A - APR Modification | Contract specifying fixed APR; Account payment history showing rate increase | Algorithmic and policy framework for unauthorized, systemic rate changes |
| B - Wrongful Repo | Date of repossession; Copies of any notices received (or lack thereof) | UCC and state-law framework for systemic notice and disposition failures |
| C - Deceptive Statement | Copies of electronic or paper account statements with disclaimer language | Legal framework for allegedly deceptive communications based on a uniform template |
| D - ADA/Disability | Documentation of disability status; Evidence of known or obvious disability (such as placard) | Enterprise framework for systemic failure to screen for or accommodate disabilities |
| E - Post-Repo Damage | Photos/invoices of vehicle damage; Inventory of lost personal property | Vendor misconduct map and principal-agent liability framework |
| F - Civil RICO | Electronic statements received across state lines; Proof of financial injury | Framework for establishing predicate acts (wire fraud) and the enterprise structure |

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

## V. SUBCLASS A - Unauthorized APR Modification Class

**Subclass Definition:** All members whose contractually fixed APR was increased, modified, or recalculated without lawful notice, consent, or TILA-compliant disclosure, regardless of vehicle type.

**Common Factual Inquiries:**

- Did NFCU's systems implement a practice of raising APRs without notice?
- Were contract terms breached on a class-wide basis through centralized algorithms?
- Did NFCU fail to provide TILA's required disclosures across the auto-loan portfolio?

## VI. SUBCLASS B - Repossession and Notice Failure Class

**Subclass Definition:** All members whose vehicles were repossessed without proper advance cure notice, authenticated notice of disposition, or UCC-compliant post-sale disclosures, regardless of vehicle type.

**Common Factual Inquiries:**

- Did NFCU's systems systematically omit cure notices required by state law?
- Are authenticated UCC Section 9-611 notices absent from NFCU's records for the class?
- Does the repossession protocol violate state commercial codes nationwide?

## VII. SUBCLASS C - Communication Statement Class

**Subclass Definition:** All members who received monthly statements containing the disclaimer "this account statement is provided for informational purposes only and should not be construed as an attempt to collect a debt" while NFCU simultaneously engaged in collection activity, credit reporting, or repossession preparation.

**Common Factual Inquiries:**

- Did the disclaimer misrepresent the status of the account under UDAAP standards?
- Was the disclaimer uniformly applied through centralized digital systems?
- Did members rely on the disclaimer to their detriment?

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

## VIII. SUBCLASS D - ADA and Disability Endangerment Class

**Subclass Definition:** All members with documented disabilities whose repossession or collection activities created foreseeable medical or physical danger without reasonable accommodation inquiry or assessment.

**Common Factual Inquiries:**

- Did NFCU's protocols systematically fail to inquire about disability status before repossession?
- Did NFCU's systems ignore known risks of seizures, breathing issues, cardiac events, or mobility impairment?
- Did NFCU's policies fail to provide for reasonable accommodation under ADA Title III?

## IX. SUBCLASS E - Post-Repossession Damage and Mishandling Class

**Subclass Definition:** All members whose vehicles sustained damage, degradation, or loss due to NFCU or its agents' repossession, towing, storage, or auction practices, regardless of vehicle type.

**Common Factual Inquiries:**

- Did NFCU's vendors regularly cause vehicle damage during repossession?
- Were proper towing procedures ignored?
- Did NFCU's vendor protocols fail to ensure vehicles were maintained in reasonable condition during storage?
- Did auction procedures fail to maximize vehicle value?

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

## X. SUBCLASS F - Prospective Civil RICO Claim Framework
### (Reserved Pending Discovery)

The following framework is included solely to demonstrate that the reservation of potential future claims in the First Amended Complaint is grounded in a coherent legal theory; this section does not assert a present civil RICO cause of action.

This framework is provided to demonstrate that the FAC's reservation of a civil RICO claim is not speculative, but is based on a coherent legal theory that aligns with the factual allegations of the enterprise. For avoidance of doubt, Plaintiff does not assert any claim under 18 U.S.C. Section 1962 in the operative pleading at this time. It maps how the evidence sought in discovery would satisfy the elements of a RICO claim.

**Subclass Definition:** All members who received allegedly deceptive electronic communications (predicate act: wire fraud) as part of a pattern of unlawful debt collection activity conducted through the alleged NFCU enterprise, resulting in financial injury.

**The Alleged RICO Enterprise:** The enterprise is an "association-in-fact enterprise" under 18 U.S.C. Section 1961(4), consisting of NFCU Corporate, its Vendor Network, and its IT/Communications Infrastructure. These components are alleged to share a common purpose: the collection of debts through a pattern of unlawful conduct. Plaintiff does not presently assert a civil RICO claim and includes this subsection solely to explain the FAC's reservation of rights and the relevance of enterprise-level discovery. Nothing in this subsection should be construed as asserting a current claim under 18 U.S.C. Section 1962. To avoid doubt, no count under 18 U.S.C. Section 1962 is pled in the operative complaint absent further amendment and leave of Court if required. Plaintiff expressly disclaims asserting any present cause of action under 18 U.S.C. Section 1962 in the operative pleading.

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

**SECTION V: FRAMEWORK FOR CLASS CERTIFICATION UNDER RULE 23**

*(Nationally Applicable, Enterprise-Level Framework)*

## I. PURPOSE OF THIS SECTION

The alleged enterprise structure described herein contains the factual predicates for meeting the requirements for class certification under Federal Rule of Civil Procedure 23. The allegations of a uniform, standardized, policy-driven, and systemically replicated process form the basis for class treatment.

## II. FACTUAL PREDICATES FOR RULE 23(a)

**Numerosity (Rule 23(a)(1)):** The class is so numerous that joinder of all members is impracticable. With an auto loan portfolio of approximately 400,000 to 700,000 accounts, even conservative violation rates yield subclasses numbering in the tens of thousands.

**Commonality (Rule 23(a)(2)):** This framework identifies common questions of fact, such as whether NFCU's uniform statement template contained misleading language and was deployed to all class members through a centralized system, and whether its standardized repossession protocol failed to provide UCC-compliant notices. These questions can be answered for the entire class at once.

**Typicality (Rule 23(a)(3)):** The claims of the representative parties would be typical of the claims of the class. Because the alleged harm originates from a uniform corporate practice, a representative's injury is legally and factually aligned with that of every other class member subjected to the same policy or system. A class representative in the Communication Statement class, for instance, received the same electronic statement template as all other members.

1  **Adequacy of Representation (Rule 23(a)(4)):** A proposed class representative would have no

2  conflicts of interest with other class members and would have suffered the same injuries alleged

3  on behalf of the class. Any class counsel appointed by the Court would be experienced in

4  complex consumer class action litigation.

5

6  ### III. FACTUAL PREDICATES FOR RULE 23(b)

7  **Injunctive Relief (Rule 23(b)(2)):** The allegations describe actions by NFCU on grounds that

8  apply generally to the class, making final injunctive or declaratory relief a potential remedy for

9  the class as a whole. Such relief could include orders requiring NFCU to cease using specific

10  language, implement compliant notice protocols, and institute ADA-compliant disability

11  screening.

12

13  **Predominance and Superiority (Rule 23(b)(3)):** Common questions of law and fact

14  predominate over any individualized inquiries. The central issue is the lawfulness of NFCU's

15  centralized policies, not the individual circumstances of each member. A class action is a

16  superior method for adjudication, as individual lawsuits would require duplicative discovery into

17  the same systems and would be cost-prohibitive for most members.

18

19

20

21

22

23

24

25

26

27

28

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

## IV. Checklist for Class Counsel (Supporting a Rule 23 Motion)

- **Pleadings:** Complaint incorporating the enterprise theory and subclasses defined in this blueprint
- **This Blueprint:** Filed as an exhibit to provide a structural framework for the court
- **Representative Declarations:** Sworn statements from proposed class representatives establishing typicality for each subclass
- **Exemplar Documents:**
  - Copies of standardized account statements (for Subclass C)
  - Copies of non-compliant repossession notices (or evidence of their absence) (for Subclass B)
  - Exemplar loan agreements showing fixed APRs (for Subclass A)
  - Publicly available consumer complaints from CFPB/BBB databases
- **Expert Declaration (Optional at this stage):** A preliminary declaration from a data or systems expert attesting that the alleged patterns are consistent with outputs from a centralized, automated system

---

## SECTION VI: ALIGNMENT WITH FEDERAL REGULATORY FRAMEWORKS
## I. PURPOSE OF THIS SECTION

This section maps the alleged enterprise misconduct to specific federal statutes and regulatory areas, showing how the class claims align with the subject matter of oversight for the CFPB, NCUA, DOJ, and FTC.

---

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

## II. CFPB - UNFAIR, DECEPTIVE, AND ABUSIVE ACTS (UDAAP)

The "informational only" statement disclaimer shares characteristics with practices that regulators have previously identified as deceptive in UDAAP guidance. Wrongful repossessions and unauthorized APR increases are factually consistent with unfair practices that cause substantial injury consumers cannot reasonably avoid.

## III. PRIOR REGULATORY AND JUDICIAL NOTICE

NFCU's alleged systemic non-compliance occurred after years of regulatory warnings and after being subject to federal litigation for similar conduct. Publicly available documents suggest these alleged actions occurred with notice of their potential illegality.

- **CFPB Supervisory Highlights:** Multiple editions have repeatedly warned auto lenders about repossession practices, deceptive communications, and failure to provide proper notices

- **Major CFPB Consent Orders:** High-profile enforcement actions against other large lenders put the entire industry on notice regarding deficiencies in repossession, collections, and disclosure practices

- **NCUA Vendor Oversight Bulletins:** The NCUA has issued guidance requiring credit unions to conduct due diligence and ongoing monitoring of third-party vendors

- **Whitaker v. Navy Federal Credit Union Precedent:** NFCU was previously sued in a nationwide class action for materially similar UCC Article 9 notice violations. See Whitaker v. Navy Federal Credit Union, No. 1:09-cv-02288 (D. Md.). The alleged repetition of similar actions after this litigation is factually relevant.

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

## IV. NCUA - SAFETY AND SOUNDNESS OVERSIGHT

The National Credit Union Administration (NCUA) has a mandate to ensure the safety and soundness of federally insured credit unions. The potential contingent liability from a class action of this scale could impact NFCU's net worth ratio. Furthermore, this blueprint outlines alleged failures of internal controls, compliance systems, and vendor management - all core areas of NCUA examination.

## V. DEPARTMENT OF JUSTICE (DOJ) - ADA TITLE III AND SCRA

- **Americans with Disabilities Act (ADA):** Systematically repossessing vehicles from members with known disabilities without any accommodation assessment may constitute a pattern-or-practice of conduct that could attract DOJ scrutiny
- **Servicemembers Civil Relief Act (SCRA):** NFCU's large military membership creates a high risk of SCRA violations. Discovery into the repo portfolio may uncover SCRA issues. Plaintiff reserves the right to amend to add SCRA claims if discovery supports them.

## VI. Enterprise Omission Liability

The blueprint provides a framework for alleging not only affirmative misconduct but also systemic omissions - such as the absence of disability screening and the absence of UCC-compliant notice generation. Under UDAAP and ADA standards, omissions that create material risk or medical danger can be treated as affirmative violations.

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

## SECTION VII: DISCOVERY ROADMAP AND DATA ANALYSIS

### I. PURPOSE

This section outlines a targeted discovery plan designed to obtain the electronic evidence needed to prove the enterprise-level claims and secure class certification. The focus is on NFCU's centralized systems.

---

### II. KEY DISCOVERY TARGETS

The following categories are illustrative and non-exhaustive. Class counsel should consider seeking discovery on:

**1. Centralized System Policies and Procedures:**

- Internal manuals for statement generation, APR adjustments, and repossession protocols
- Source code and version history for the statement template containing the "informational only" disclaimer
- Business rules for the automated risk-adjustment algorithm that modifies APRs

**2. Vendor Management Documents:**

- Master service agreements with key repossession/auction vendors
- Standardized instruction packets and performance metrics sent to vendors
- Records of vendor audits or oversight

**3. Electronic Data Extraction:**

- A database export of all auto loan accounts subjected to an APR increase
- A database export of all accounts for which a repossession order was generated
- Production of the electronic statement for a statistically significant sample of auto loan accounts

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

### SECTION VIII: CASE LAW ANCHOR ANALYSIS

This section anchors the blueprint's class certification strategy in established legal precedent from multiple federal circuits.

The following authorities are illustrative examples of how federal courts have treated similar structural and class issues:

1. **Uniform Communications as a Basis for Commonality:** Courts consistently hold that when a class action alleges harm from a standardized, uniform communication, commonality is satisfied. See Mazza v. Am. Honda Motor Co., 666 F.3d 581 (9th Cir. 2012); In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108 (2d Cir. 2013). The Communication Statement class (Subclass C) is a paradigmatic example.

2. **"Policy-Based" Certification:** When a plaintiff's claim is that the defendant's uniform policy is illegal, the focus is on the policy itself, not on individual experiences. See Parsons v. Ryan, 754 F.3d 657 (9th Cir. 2014) (certifying a class challenging system-wide policies where the "common source of risk" was a uniform set of practices); Ross v. Bank of America, N.A. (USA), 524 F.3d 217 (2d Cir. 2008). The Repossession (B) and ADA (D) classes are based on alleged standardized protocols.

3. **Algorithmic Harm:** The Unauthorized APR subclass allegations align with cases in which courts have addressed algorithmic harm. See In re Checking Account Overdraft Litig., 780 F.3d 1031 (11th Cir. 2015).

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

**4. Principal-Agent Liability for Vendor Misconduct:** A principal cannot escape liability by outsourcing illegal conduct to an agent. See Phelan v. Bell, 8 F.4th 77 (1st Cir. 2021). The Post-Repossession Damage class (E) is built on this principle.

## SECTION IX: CONCLUSION

**"This blueprint is a living document. It will be updated as new information surfaces through discovery, regulatory filings, and ongoing litigation."**

The framework contained in this blueprint describes an alleged multi-layered system that tends to generate consistent, systemic consumer harm at significant scale. The analysis suggests these are not isolated mistakes but the output of a flawed institutional design. The allegations, if proven, would support a class-wide adjudication to hold the enterprise accountable, compensate harmed members, and impose injunctive relief sufficient to dismantle the structure of the alleged misconduct.

The harm, as alleged, is not accidental. It is structural. It flows from centralized policies, automated systems, and uniform practices that impact hundreds of thousands of members in a consistent and repeatable manner.

The class structure is robust. The evidence of commonality is rooted in NFCU's own operational scale. The potential damages reflect the national scope of the alleged violations. Plaintiff reserves the right to amend or refine this blueprint upon receipt of discovery. This Exhibit is submitted solely as protected litigation work product to organize allegations and guide discovery and class-certification briefing, and is not offered as evidence for the truth of any matter asserted.

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

**APPENDICES**

The following Appendices are non-evidentiary frameworks intended to guide discovery and class analysis and do not themselves constitute proof of any fact.

---

### Appendix A: Illustrative Individual Case Example

**Purpose:** This appendix provides a hypothetical case fact pattern, based on publicly available consumer complaints and litigation, to illustrate how the enterprise systems described in the main blueprint can manifest as concrete, individual harm. Class counsel can substitute the facts of their own representative plaintiff here.

*This fact pattern is a composite, illustrative scenario derived from public complaint patterns and is not offered as a statement of fact about any specific individual case.*

A member with a documented seizure disorder, whose vehicle displays a valid ADA placard, has their car repossessed from a marked accessible parking space in 106-degree heat. The repossession occurs just 48 hours after a documented medical crisis involving multiple seizures. The vehicle contains the member's life-sustaining, emergency anti-seizure medication. Deprived of access to the medication, the member suffers another seizure, requiring emergency medical intervention. This sequence of events is alleged to be the direct, foreseeable consequence of an automated, non-discretionary repossession system that lacks any protocol for identifying or accommodating known or obvious disability risks.

Following the repossession, the enterprise's alleged systemic failures continue. The member sends a formal litigation-hold letter via verified email to NFCU's legal and collateral risk departments, demanding preservation of the vehicle as key evidence. The letter is opened and read by the responsible department. Despite this, the vehicle - a modern EV containing

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

irreplaceable telemetry data - is sold. This pattern provides a framework for alleging how an enterprise's operational-level failures can extend from initial non-compliance to post-dispute evidence management issues.

## Appendix B: Preliminary Damages Modeling Framework
### (For Counsel Use)

**Judicial Framing Note:** This Appendix provides a structured framework for understanding the categories of damages that may arise from the conduct described in the First Amended Complaint. It does not add new claims, expand the scope of relief sought, or present evidence; it simply organizes the types of harm already alleged so that the Court and the parties can evaluate them in a clear and consistent manner.

**Purpose:** This appendix provides a methodological framework for estimating potential class-wide damages. These figures are preliminary, for analytical purposes only, and must be refined by a qualified expert following discovery. They are not presented as fact in the main body of the blueprint.

**Methodology:** The framework multiplies the estimated number of affected class members (derived from NFCU's portfolio size and conservative industry-standard violation rates) by applicable statutory damage ranges and reasonable restitution estimates.

| Subclass | Description | Potential Exposure Model |
|---|---|---|
| A | Unauthorized APR Modification | Restitution of overpaid interest + TILA statutory damages |
| B | Repossession and Notice Failure | UCC statutory damages + compensation for actual harm |
| C | Communication Statements | State/Federal UDAP statutory damages per member |
| D | ADA and Disability Endangerment | ADA compensatory damages + medical harm + other damages |
| E | Post-Repossession Damage and Mishandling | Property damage restitution + diminished value + statutory damages |
| F | Prospective Civil RICO (Reserved) | Trebling of actual damages from predicate acts |

These ranges are preliminary modeling ranges for framework purposes only and are not pled as quantified damages in the operative complaint.

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

### Appendix C: Examples of Evidence Risks in Auto-Loan Litigation

In litigation involving modern vehicles, particularly Electric Vehicles (EVs), the vehicle itself is a critical piece of evidence. An EV is a computer on wheels, containing unique and irreplaceable Electronic Stored Information (ESI), including:

- **Telemetry Data:** Precise GPS location logs showing where a vehicle was stored
- **State of Charge Logs:** Data showing when and how a high-voltage battery was charged or allowed to discharge to critically low levels
- **Key-Pair Authentication Records:** Logs showing whether proper procedures, like "Tow Mode," were engaged during transport
- **Onboard Service History:** Diagnostic trouble codes and internal system health records

The premature sale or disposition of such a vehicle, particularly after a litigation hold has been issued, presents a significant risk of evidence spoliation. The loss of this ESI can permanently impair a party's ability to prove claims related to commercially unreasonable disposition, failure to protect collateral, and vendor misconduct.

### Appendix D: Template Complaint Language

**Purpose:** The following are generalized paragraphs that class counsel can adapt for use in a complaint alleging an enterprise-wide theory of liability against NFCU.

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

**[For Enterprise Allegations]**

Upon information and belief, Defendant NFCU maintains a highly centralized, enterprise-wide system for managing its auto loan portfolio. This system is alleged to rely on uniform policies, automated algorithms, and standardized vendor contracts that are developed at its corporate headquarters and deployed uniformly across its national operations. The misconduct alleged herein is not the result of isolated errors by individual employees, but is alleged to be the direct and foreseeable output of this centralized institutional design. This system is alleged to be structured in such a way that it tends to produce consistent, repeatable violations of state and federal consumer protection laws at significant scale.

**[For Agency Allegations]**

At all relevant times, the third-party repossession, auction, and logistics vendors, including [Vendor Names], acted as NFCU's agents, ostensible agents, and/or contractors. These vendors operated pursuant to standardized master service agreements, followed specific instructions issued by NFCU through its centralized systems, and were subject to NFCU's performance metrics and control. NFCU authorized, directed, controlled, and/or ratified their conduct and is therefore vicariously liable for their acts and omissions.

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

### Appendix E: Proof of Pattern Checklist

**Purpose:** This checklist outlines the key documents and data points class counsel should seek to obtain for representative plaintiffs and a statistical sample of class members to establish the class-wide pattern of misconduct.

**Member-Level Documents:**

- [ ] Executed Loan Agreement and Security Agreement
- [ ] Complete account payment ledger from loan origination to close
- [ ] Copies of all monthly statements received (electronic or paper)
- [ ] Copies of all pre- and post-repossession notices received
- [ ] Photographs or repair invoices documenting any vehicle damage
- [ ] Inventory of personal property lost during repossession
- [ ] Any correspondence with NFCU or its agents

**Evidence of System-Wide Pattern (to be sought in discovery):**

- [ ] NFCU's internal policy and procedure manuals for auto loan servicing and collections
- [ ] The electronic template(s) used for generating monthly account statements
- [ ] Master Service Agreements with key vendors
- [ ] A statistical sample of repossession files to audit for notice compliance
- [ ] Data logs from the APR modification algorithm

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION

**Appendix F: Potential Defense Positions and Corresponding Factual Allegations**

**Purpose:** This section outlines potential defense positions and presents countervailing factual allegations from the framework.

**1. "Isolated Incidents / Rogue Employee"**

**Position:** Any violation was an isolated mistake, not the result of a corporate policy.

**Countervailing Facts:** The alleged harm originates from centralized, automated systems and uniform templates. A single template sent to 100,000 members is a single policy, not 100,000 individual mistakes.

**2. "Individual Issues Predominate"**

**Position:** The unique circumstances of each loan and repossession defeat class certification.

**Countervailing Facts:** The central factual inquiry is the nature of NFCU's uniform policies and systems. Liability for the class can be assessed by examining the master templates and algorithms.

**3. "No Reliance" (for Communication Statements)**

**Position:** Members cannot prove they relied on the "informational only" disclaimer.

**Countervailing Facts:** In many jurisdictions, the focus is on the deceptive nature of the communication itself. Alternatively, reliance may be presumed on a class-wide basis when a material representation is made uniformly to the entire class.

**4. "Vendor is an Independent Contractor"**

**Position:** NFCU is not liable for vehicle damage caused by its repossession agents.

**Countervailing Facts:** The framework alleges a principal-agent relationship based on NFCU's control, as evidenced by its standardized contracts, specific instructions, and performance oversight. NFCU has non-delegable duties (like the duty to not breach the peace) and remains responsible for the foreseeable acts of its agents.

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0
FULL VERSION