**CONFIDENTIAL LITIGATION WORK PRODUCT - NON-EVIDENTIARY FRAMEWORK**

*(Prepared in Anticipation of Litigation and Class Certification Proceedings)*

# EXHIBIT BP-2

**NFCU CLASS ACTION ENTERPRISE BLUEPRINT (CONDENSED VERSION)**

**Prepared by:**
**Jade Riley Burch**
**Date:** November 29th, 2025

---

## NOTICE OF PRIVILEGE AND LIMITATIONS

This Exhibit is designated as **Confidential Litigation Work Product**. It is submitted solely to organize allegations, map systemic structures, and support the pleading and Rule 23 framework contained in the First Amended Complaint.

It is **not offered for the truth of any matter asserted**, does **not expand or modify any claim**, and is **not intended as evidence** for summary judgment or trial. All statements concerning internal policies, workflows, or systems of Navy Federal Credit Union (NFCU) are made on information and belief in accordance with Rule 11(b)(3).

Plaintiff expressly **preserves all privileges and protections**, including attorney-client, attorney work product, and common-interest protections. Nothing in this Exhibit waives any privilege.

Pursuant to **LR IA 10-5** and controlling Ninth Circuit authority, Plaintiff reserves the right to seek sealing or partial sealing of this Exhibit.

---

## LIVING DOCUMENT STATEMENT

This Exhibit is a **living document**.
As discovery progresses, new information may refine, update, or clarify the organizational structures, vendor relationships, and systemic processes described herein. Any such refinements will not alter the causes of action asserted in the operative complaint.

---

**SUBMITTED BY:**
**Jade Riley Burch**
Pro Se Plaintiff

**CONFIDENTIAL LITIGATION WORK PRODUCT**
**NON-EVIDENTIARY FRAMEWORK**

**Prepared in Anticipation of Litigation and Class Certification Proceedings**

**Prepared by:** Jade Riley Burch

**Date:** November 29th, 2025

**EXHIBIT BP-2 (Condensed Enterprise Blueprint)**

*(Litigation analysis and class-structure framework supporting Plaintiff's First Amended Complaint)*

**<u>Purpose and Legal Status of this Exhibit</u>**

This Exhibit provides a Litigation Framework and Proffer of Evidence. It is designed to illustrate, organize, and provide a good-faith factual basis for the complex enterprise allegations contained in the First Amended Complaint. The purpose is to provide the Court with clarity on the interrelationship between the claims, the systemic nature of the alleged misconduct, and the necessity for enterprise-level discovery.

This document is not presented as evidence. It is a detailed roadmap of the evidence Plaintiff intends to seek in discovery to prove the allegations in the First Amended Complaint. This Exhibit does not expand, alter, or add to the causes of action asserted in the First Amended Complaint. It exists solely to organize and explain those allegations.

Much of the information regarding Navy Federal Credit Union's internal policies, computer systems, and operational workflows is, by its nature, in the exclusive possession of the defendant. Where this document describes such internal processes, the allegations are made on information and belief consistent with Rule 11(b)(3). Pleading on this basis is appropriate and necessary under federal procedural standards where a plaintiff has a reasonable, good-faith basis

for the allegation but lacks access to the internal corporate evidence required for absolute proof pre-discovery.

The ultimate burden of proof rests with Plaintiff. This blueprint is designed to meet the pleading requirements of Rule 8 by providing a plausible and detailed account of systemic misconduct, particularly in light of this significant asymmetry of information.

The enterprise structure described herein is intended to guide class litigation and inform certification analysis. All quantitative and organizational estimates in this Exhibit are approximate, based on publicly available sources, and are provided solely as framework-level allegations for pleading and discovery planning purposes.

## Executive Statement of Enterprise Misconduct

Navy Federal Credit Union presents itself as a trusted financial institution serving military members, veterans, and their families.

This litigation framework alleges something different: a coherent enterprise system that produces predictable categories of harm across hundreds of thousands of member accounts. What emerges is not a sequence of isolated errors. It is a coordinated architecture of alleged misconduct.

This framework maps how NFCU's communications, repossession practices, interest-rate adjustments, and disability-related failures operate within a single institutional ecosystem. That ecosystem is built around automated systems, vendor partnerships, and internal policy decisions that produce repeatable legal violations at industrial scale.

This is not a case about a bad repossession. It is not a case about a mistaken APR increase, a deceptive account statement, or a lack of ADA accommodation standing alone.

It is a case about an alleged enterprise pattern of consumer deception, contractual manipulation, and medically dangerous collection practices that can only be addressed at scale, through classwide litigation, federal regulatory action, or both.

What follows is a systematic mapping of Navy Federal's class-action exposure, structured to demonstrate Rule 23 suitability, institutional motive, systemic design, and national impact.

### NFCU Enterprise Scale Snapshot

Navy Federal Credit Union is one of the largest credit unions in the world, with unparalleled reach into the military and veteran communities. Its operational scale is critical to understanding the systemic nature of the alleged misconduct.

When an institution of this magnitude uses uniform templates, centralized algorithms, and standardized vendor contracts, the resulting actions are not isolated incidents. They are alleged to be systematic, predictable, and replicated across the entire membership base.

**Financial and Operational Metrics (2024-2025 Estimates)**

| Metric | Figure |
|---|---|
| Total Assets | $191.8 billion |
| Total Members | 14.9 million |
| Active Branches | 370+ worldwide |
| Digital Channel Users | 8.4 million |
| Annual Member Contacts | 45.5 million |
| Estimated Active Auto Loans | 400,000 to 700,000+ |

At this scale, misconduct becomes architectural. It is allegedly embedded in the technology, protocols, and vendor relationships that define how NFCU operates.

---

**Enterprise Map: The Five Nodes of Systemic Harm**

NFCU's alleged misconduct is not linear. It operates through an interconnected, five-node enterprise network that produces uniform violations at scale. This structure forms the backbone of class commonality and demonstrates institutional knowledge and intent.

**1. Policy Node (The Source)**

**Location:** Corporate Headquarters

**Function:** This node creates the rules of the system. It is responsible for drafting deceptive statement templates, programming APR modification algorithms, and establishing standardized repossession protocols. Policy decisions are top-down and centrally controlled, ensuring uniformity across all operations.

**2. Communications Node (The Broadcast)**

**Scale:** 8.4 million digital users; 45.5 million annual contacts

**Function:** This node deploys deceptive or unlawful communications uniformly. It uses centralized systems to send identical loan statements, collection notices, and online messages to hundreds of thousands of members, creating a verifiable, class-wide pattern of misconduct.

### 3. Operations Node (The Execution)

**Scale:** 22,000+ employees across 370+ branches

**Function:** This node executes the policies on the ground. It uses automated systems and standardized procedures to track delinquencies, trigger repossessions, and coordinate with vendors. The result is that flawed policies are implemented consistently across the national and international branch network.

### 4. Vendor Node (The Shield)

**Actors:** Repossession agents such as Speedy Recovery, auction houses such as ADESA, and regional contractors

**Function:** This node externalizes risk and physical action while operating under NFCU's direction. Vendors execute repossessions, store vehicles, and conduct auctions pursuant to NFCU's contracts and procedures. This creates a chain of agency where NFCU remains liable for systemic vendor misconduct.

### 5. Compliance Node (The Failure)

**Function:** This node systematically fails to correct known, repeating violations. Despite 45.5 million annual member contacts and clear patterns of complaints, it allows deceptive templates, unlawful APR increases, and improper repossession practices to persist for years. Over time, negligence transforms into evidence of institutional intent.

Together, these five nodes form a closed-loop system. Flawed policies are broadcast uniformly, executed systematically, outsourced for action, and left uncorrected. The pattern of harm repeats indefinitely.

## Class and Subclass Architecture

This action is structured around a broad umbrella class and five distinct, independently certifiable subclasses. Together, they capture the full scope of NFCU's enterprise misconduct.

## Umbrella Class Definition

All Navy Federal Credit Union members with auto loans who, between January 1, 2020 and the present, were subjected to any combination of the following: (1) unauthorized interest-rate modifications; (2) deceptive loan statements falsely disclaiming collection activity; (3) unlawful or notice-deficient repossessions; (4) disability-endangering collection actions without reasonable accommodation; or (5) post-repossession vehicle damage or misconduct by NFCU or its agents.

## Subclass Definitions

**Subclass A: Unauthorized APR Modification Class.** All members whose contractually fixed APR was increased, modified, or recalculated without lawful notice, consent, or TILA-compliant disclosure. This harm is generated by centralized, automated risk-adjustment algorithms applied uniformly across the loan portfolio.

**Subclass B: Wrongful Repossession and Notice Failure Class.** All members whose vehicles were repossessed without proper advance cure notice, authenticated notice of disposition, or UCC-compliant post-sale disclosures. This reflects a systemic failure in NFCU's operational protocols, which allegedly omit legally required notices nationwide.

**Subclass C: Deceptive Communication Statement Class.** All members who received monthly statements containing the disclaimer "this account statement is provided for informational purposes only and should not be construed as an attempt to collect a debt" while NFCU simultaneously engaged in collection activity. This claim is based on a single, uniform template deployed to hundreds of thousands of members.

**Subclass D: ADA and Disability Endangerment Class.** All members with documented disabilities whose repossession or collection activities created foreseeable medical or physical danger without reasonable accommodation inquiry or assessment. This subclass targets NFCU's systemic failure to implement disability-aware protocols. Given its military and veteran membership base, this failure carries heightened risk.

**Subclass E: Post-Repossession Damage and Mishandling Class.** All members whose vehicles sustained damage, degradation, or loss due to NFCU or its agents' repossession, towing, storage, or auction practices. This harm arises from standardized but inadequate vendor oversight and protocols, making NFCU liable for its agents' conduct.

## Subclass Architecture Summary

| Subclass | Common Question | Core Proof | Exposure Range |
|---|---|---|---|
| A: APR | Did NFCU use uniform algorithms to unlawfully raise fixed APRs? | Loan agreements compared to account histories; system logs | $180M to $420M |
| B: Repo | Did NFCU's protocols systematically omit required UCC notices? | Absence of notice in member files; vendor contracts | $280M to $650M |
| C: Statements | Was the uniform statement disclaimer deceptive under UDAAP? | The standardized statement template itself | $300M to $750M+ |
| D: ADA | Did NFCU fail to implement any disability accommodation protocols? | Standardized repo procedures; lack of ADA checklists | $75M to $250M |
| E: Damage | Is vendor misconduct a systemic result of NFCU's policies? | Vendor contracts; patterns of documented damage | $150M to $500M |

## Rule 23 Analysis

The enterprise nature of NFCU's operations makes this case well suited for class certification under Federal Rule of Civil Procedure 23.

**Numerosity**

With an auto loan portfolio of 400,000 to 700,000+ members and violation rates affecting tens of thousands, the proposed classes are overwhelmingly numerous. Joinder is impracticable. The scale of NFCU's 14.9 million-member base guarantees this requirement is met for each subclass.

**Commonality**

Common questions of law and fact exist because the alleged harm stems from centralized sources.

Key common evidence includes the following: NFCU's uniform statement templates deployed to 8.4 million digital users; its centralized APR-adjustment algorithms; its standardized repossession protocols used across 370+ branches; and its uniform vendor contracts.

Resolution of these core issues will drive the litigation for all class members simultaneously.

**Predominance and Superiority**

Common questions predominate over individual ones because this case challenges systemic policies, not isolated employee actions. Proving the existence of a deceptive template or a notice-deficient protocol is the same inquiry for every class member.

A class action is superior to thousands of individual lawsuits. It is the only efficient and effective method to adjudicate a pattern of misconduct embedded in the architecture of a $191.8 billion institution.

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0

**Regulatory and Public-Interest Exposure**

This litigation directly implicates major federal regulatory regimes, creating significant parallel risk for NFCU beyond civil damages. The alleged enterprise patterns trigger oversight from multiple agencies and transform this lawsuit into a matter of national public interest.

**CFPB**

The conduct alleged herein constitutes systemic violations of UDAAP (Unfair, Deceptive, or Abusive Acts or Practices). It is subject to the Consumer Financial Protection Bureau's enforcement authority for unauthorized APR increases, deceptive statements, and wrongfully harsh repossession tactics.

**NCUA**

The widespread nature of these practices raises critical safety and soundness concerns regarding vendor oversight and internal controls. These concerns fall under the purview of the National Credit Union Administration.

**DOJ and SCRA**

The systemic disregard for the safety of disabled members, particularly within a military and veteran-focused institution, invites scrutiny from the Department of Justice for violations of the Americans with Disabilities Act. Where applicable, the Servicemembers Civil Relief Act may also apply given NFCU's military-focused membership. Plaintiff reserves the right to amend to add SCRA claims if discovery supports them.

**Damages Summary Table**

The following table summarizes conservative, framework-level estimates of class-wide exposure. These figures are based on statutory damages ranges, estimated portfolio size, and industry-standard violation rates. They are subject to refinement by economic and statistical experts after enterprise-level discovery is conducted.

**Aggregate Exposure Across All Subclasses**

| Subclass Description | Exposure Range |
| --- | --- |
| A: APR Modification | $180,000,000 to $420,000,000 |
| B: Wrongful Repossession | $280,000,000 to $650,000,000 |
| C: Deceptive Statements | $300,000,000 to $750,000,000+ |
| D: ADA and Disability Endangerment | $75,000,000 to $250,000,000 |
| E: Post-Repossession Damage | $150,000,000 to $500,000,000 |
| **TOTAL COMBINED EXPOSURE** | **$1,000,000,000 to $2,500,000,000+** |

CONFIDENTIAL LITIGATION WORK PRODUCT
NAVY FEDERAL CREDIT ENTERPRISE BLUEPRINT 1.0

**Conclusion and Reservation of Rights**
**Privilege and Sealing Notice**

**"This blueprint is a living document. It will be updated as new information surfaces through discovery, regulatory filings, and ongoing litigation."**

This document contains protected litigation work product, internal strategic analysis, and class-architecture models. It was prepared solely in anticipation of litigation. Nothing herein is submitted for the truth of the matter asserted.

Under LR IA 10-5 and controlling Ninth Circuit authority, Plaintiff reserves the right to seek sealing or partial sealing of this Exhibit. No portion of this document shall be deemed a waiver of work-product protection or attorney-client-adjacent privileges.

This blueprint outlines a multi-faceted, enterprise-level system of alleged misconduct by Navy Federal Credit Union.

The harm is not accidental. It is architectural. It stems from centralized policies, automated systems, and uniform practices that impact hundreds of thousands of members in a predictable and repeatable manner.

The class structure is robust. The evidence of commonality is rooted in NFCU's own operational scale. The potential damages reflect the national scope of the alleged violations.

Nothing in this Exhibit is intended to expand the causes of action pled in the First Amended Complaint or to be admitted as evidence at trial. It is provided solely as protected litigation work product to organize allegations and guide discovery and class-certification briefing.